# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | Chapter 11 |
| : | |
| Stream TV Networks, Inc. : | Case No. 21-10433(KBO) |
| : | |
| Debtor. : | **Hearing: March 22, 2021at 10:00 a.m.** |
| : | **Objection Deadline: March 18, 2021 at 4:00 p.m.** |

**DECLARATION OF LAWRENCE G. MCMICHAEL OF DILWORTH PAXSON LLP AND STATEMENT PURSUANT TO BANKRUPTCY RULES 2014 AND 2016(B) AND <u>LOCAL BANKRUPTCY RULES 2014-1 AND 1026-1</u>**

Lawrence G. McMichael hereby deposes and says that:

1. I am an attorney at law, duly admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania and before the United States District Court and Bankruptcy Court for the Eastern, Middle and Western Districts of Pennsylvania. I have been admitted pro hac vice in this case. I am a partner in the law firm of Dilworth Paxson LLP ("Dilworth"), with offices at 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania 19102-2102 and One Customs House, 704 N. King St., Suite 500, P.O. Box 1031, Wilmington, DE 19899-1031.

2. I submit this declaration under penalty of perjury in support of the application of Stream TV Networks, Inc. (the "Debtor"), for an order approving the retention and employment of Dilworth as bankruptcy counsel to the Debtor in the above-captioned case in compliance with the Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b) and Local Rules of Bankruptcy Procedure 2014-1 and 2016-1.

3. Unless otherwise stated in this declaration, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires amendment or

modification upon Dilworth's completion of further analysis, a supplemental Declaration will be submitted to the Court reflecting the same.

4. Neither Dilworth, nor any partner or associate thereof, has received any promises as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code and as disclosed herein. Dilworth has not shared, nor agreed to share, any compensation it has received or may receive with another party or person, other than with the partners and associates of Dilworth, nor has Dilworth agreed to share any compensation received or which may be received by any other person or party.

5. Dilworth was originally approached by Debtor's management on or about January 14, 2020 at the suggestion of Philip M. Darivoff to provide restructuring advice to the Debtor. Mr. Darivoff is an investor in the Debtor and a member of the board of directors of an unaffiliated Dilworth client. Dilworth does not represent management or Mr. Darivoff and made clear to them that Dilworth will only represent the Debtor.

6. On January 28, 2020, Dilworth received $50,000 from Mr. Darivoff as a flat fee retainer (the "Initial Retainer") to provide the Debtor with initial restructuring advice.

7. Between January 28, 2020 and April 30, 2020, Dilworth incurred fees and expenses in the amount of $75,691.50 in connection with providing initial restructuring advice to the Debtor, reviewing financial and corporate documentation, and preparing pleadings in anticipation of a potential Chapter 11 filing, which was satisfied by the flat fee terms of the Initial Retainer. As of April 30, 2020, the Debtor determined not to immediately seek Chapter 11 relief.

2

121330059_4

8. Dilworth provided no services or advice to the Debtor after April 30, 2020 in connection with its engagement, while the Debtor addressed issues with its secured creditors outside of Chapter 11, until November 2020.

9. On November 11, 2020, Mathu Rajan, Chief Executive Officer of the Debtor, contacted Dilworth to revisit a restructuring of the Debtor's operations.

10. Dilworth agreed to update its prior Chapter 11 advice and prepare to file a Chapter 11 on behalf of the Debtor in exchange for an additional retainer of $50,000.

11. On January 20, 2021, Dilworth received one half ($25,000) of the $50,000 retainer from Visual Technologies Inc. ("VTI"), a company formed by Mathu Rajan in January of 2021, (the "Retainer") to provide the Debtor with restructuring advice. Dilworth was informed by Mr. Rajan that the funds comprising the retainer were invested in VTI by a company whose owners are current equity holders in the Debtor and who are interested in increasing their investment in the Debtor once the Debtor has commenced its Chapter 11 Case. Dilworth does not represent VTI, the company that made the investment in VTI or its owners, and was informed that the $25,000 payment from VTI that was paid to Dilworth on behalf of the Debtor was made by VTI in exchange for equity in the Debtor.

12. On December 13, 2020, Dilworth issued an invoice to the Debtor, Invoice No. 333361, in the amount of $5,012.50, for services rendered through November 30, 2020. On January 13, 2021, Dilworth issued an invoice to the Debtor, Invoice No. 388973, in the amount of $3,621.75, for services rendered from December 1, 2020 through December 31, 2020. These invoices were immediately paid from the Retainer.

13. On February 9, 2021, Dilworth received the balance of the Retainer in the amount of $25,000 from MediaTainment Inc., a company incorporated in Delaware and owned by Mathu

3

Rajan that formerly was the controlling shareholder of the Debtor and provided the Debtor with accounting and banking services. MediaTainment is no longer affiliated with the Debtor. Dilworth was informed by Mr. Rajan that the funds comprising the balance of the Retainer paid by MediaTainment Inc. obtained from VTI. VTI, in turn, obtained the funds from another by another of the Debtor's current equity holders. VTI then made an intercompany transfer to MediaTainment. Dilworth does not represent the investor, or MediaTainment and was informed that the $25,000 payment was made by MediaTainment to Dilworth in exchange for equity in the Debtor.

14. Because additional time was needed by the Debtor to continue negotiations with certain potential investors who intend to fund the Debtor's post-petition operations, additional fees were incurred for due diligence and to update and revise the bankruptcy forms and pleadings to prepare to initiate this case. Accordingly, to address certain risks and to cover additional prepetition fees and costs, the Debtor agreed, by obtaining additional investments, to provide Dilworth with an additional retainer of $200,000 (the "Additional Retainer") - $25,000 of which was to be applied to prepetition fees and costs and the balance of which would be held in Dilworth's IOLTA account pending Bankruptcy Court approval of post-petition fees and costs incurred at the outset of the Chapter 11 case. Dilworth agreed that the Debtor could fund the additional retainer by paying $100,000 prior to filing this case and the remaining $100,000 within seven (7) days after filing this case.

15. On February 19, 2021, Dilworth received $25,000 of the Additional Retainer from VTI. Dilworth was informed by Mr. Rajan that the funds comprising this portion of the Additional Retainer were invested in VTI by the same company that made the initial retainer payment on January 20, 2021. Dilworth was informed by the Debtor that the $25,000 payment

4

from VTI that was paid to Dilworth on behalf of the Debtor was made by VTI in exchange for equity in the Debtor. As agreed between the Debtor and Dilworth, Dilworth applied the $25,000 payment to prepetition attorney fees and costs incurred to initiate this case. After application of this payment, the balance of accrued attorney fees was $25,649.

16. On February 22, 2021, Dilworth received an additional $25,000 of the Additional Retainer from an affiliate of the company that made the initial retainer payment on January 20, 2021 as well as the payment on February 19, 2021. Dilworth was informed by Mr. Rajan that the funds comprising this portion of the Additional Retainer were invested in VTI and VTI instructed the investor to send the payment directly to Dilworth. Dilworth does not represent the investor, and was informed that the $25,000 payment that was invested in VTI and paid to Dilworth on behalf of the Debtor was made by VTI in exchange for equity in the Debtor. As agreed between the Debtor and Dilworth, Dilworth is holding this portion of the Additional Retainer in its IOLTA account on the Debtor's behalf, which funds will be applied to post-petition fees and expenses as may be approved by the Bankruptcy Court.

17. On February 23, 2021, Dilworth received an additional $50,000 of the Additional Retainer from VTI. Dilworth was informed by Mr. Rajan that the funds comprising this portion of the Additional Retainer were invested in VTI by six investors, including the investor that made the investment on February 9, 2021, in exchange for equity in VTI. Dilworth does not represent any of the investors who invested in VTI, and Dilworth was informed that the $50,000 payment from VTI was paid to Dilworth on behalf of the Debtor in exchange for VTI receiving equity in the Debtor. As agreed between the Debtor and Dilworth, Dilworth is holding this portion of the Additional Retainer in its IOLTA account on the Debtor's behalf, which funds will be applied to post-petition fees and expenses as may be approved by the Bankruptcy Court.

18. The Debtor has promised to arrange for a deposit of the additional $100,000 of the Additional Retainer into Dilworth's IOLTA account on or before March 5, 2021, which funds will be held in Dilworth's IOLTA account toward payment of its post-petition fees and costs that may be approved by the Bankruptcy Court during this Chapter 11 Case. Dilworth has been informed by Mr. Rajan that the remaining $100,000 of the Additional Retainer will likewise be funded through investments into VTI, with VTI funding the Additional Retainer on the Debtor's behalf in exchange for equity in the Debtor. Dilworth will supplement its disclosures to the extent necessary upon receipt of the remainder of the Additional Retainer.

19. As of February 24, 2021, prior to commencing this Chapter 11 Case and after applying the aforementioned payments, Dilworth had incurred additional fees and costs to prepare forms and pleadings necessary to commence this Chapter 11 Case in the amount of $42,263.00 (the "Additional Prepetition Fees and Costs").

20. On February 24, 2021, prior to commencing this Chapter 11 Case, Dilworth wrote off the Additional Prepetition Fees and Costs, consistent with its agreement to provide prepetition Chapter 11 services for a total payment of $75,000.

21. Accordingly, as of the Petition Date, Dilworth was owed $0 by the Debtor and Dilworth held $75,000 in its IOLTA account that was paid on the Debtor's behalf as a portion of the Additional Retainer.

22. Other than the payments disclosed in the foregoing paragraphs, Dilworth has not received any payment from or on behalf of the Debtor.

23. The standard hourly rates of the attorneys that will be primarily responsible for this representation are as follows:

| | |
|---|---|
| Lawrence G. McMichael | $995.00 |
| Martin J. Weis | $695.00 |
| Anne M. Aaronson | $640.00 |

In addition, Dilworth anticipates utilizing additional attorneys and paraprofessionals, as appropriate. The range of hourly rates for such attorneys and paraprofessionals are as follows:

| | |
|---|---|
| Partners | $400.00 to $975.00 |
| Associates | $300.00 to $375.00 |
| Paralegals: | $240.00 |

Consistent with Dilworth's general policy, these hourly rates are periodically adjusted in the ordinary course of Dilworth's business, typically on January 1st of each calendar year.

24. Consistent with Dilworth's general policy with respect to its clients, Dilworth will continue to charge the Debtor for all other services provided and for all other charges and disbursements including, among other things, telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees relating to trials and hearings.

25. Prior to the execution of this Declaration, attorneys at Dilworth, at my direction, employed two different methods to determine if a conflict exists with respect to the Debtor or any major creditor or party in interest. First, the attorneys ordered searches in Dilworth's electronic client records of the following: (i) the Debtor; (ii) the Debtor's known unsecured creditors, including its current vendors; (iii) the Debtor's secured creditors; and (iv) the Debtor's investors, the "Conflict Check Parties"). In addition, a firm-wide e-mail was sent to all employees of the firm listing the Conflict Check Parties. A list of the Conflict Check Parties is

attached hereto as Exhibit 1.  Dilworth updated its conflict search on February 23, 2021 to ensure no additional relationships had been established prior to initiating this case.

26. Dilworth has completed its conflicts review with respect to the Conflict Check Parties.  Based on this review, Dilworth has determined the following:

    A. Dilworth currently represents the following individuals and/or entities:

        (i) Joseph S. Zuritsky

        (ii) Robert Zuritsky

        (iii) TD Bank

    B. In addition, Dilworth has represented, but no longer represents, the following:

        (i) CSS Industries

        (ii) David Simon

        (iii) Ronald L. Caplan

        (iv) Charles T. Marcum

        (v) CNA Insurance

        (vi) Kleinwort Benson

    C. In addition, Dilworth has connections with the following individuals based on representations of other clients not affiliated with this bankruptcy:

        (i) Etta Einigard

        (ii) Philip M. Darivoff

        (iii) Bernard Stain

        (iv) David Simon

    (v)  Joseph Zuritsky

    (vi)  Robert Zuritsky

    (vii)  The Estate of Harold Sorgenti

  D.  The conflict check has also identified the following individuals who may be possible former clients. Dilworth will make supplemental disclosures in the event it is determined that these individuals were, in fact, former clients:

    (i)  Andrew Kim

    (ii)  David Cohen

    (iii)  David Taylor

    (iv)  Elizabeth Smith

    (v)  John R. Clarke

    (vi)  James Gorman

    (vii)  Larry Evans

None of the representations mentioned in subparagraphs A through D are related in any way to the Debtor's current bankruptcy case and Dilworth will not represent any of these individuals or entities with respect to the Debtor's bankruptcy case.

  27.  Any matters directly adverse to the entities listed in Paragraph 14(A) that arise in this bankruptcy case will be handled by special conflicts counsel, if necessary.

  28.  I submit that Dilworth has complied with Rule 2016(b) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2016-1.

            <u>/s/ Lawrence G. McMichael</u>
            Lawrence G. McMichael

9

121330059_4

# **EXHIBIT 1**