**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Stream TV Networks, Inc., | Case No. 21-10433 (KBO) |
| Debtor. | **Hearing: Mar. 22, 2020 at 10:00 am (EST)**<br>**Re: D.I. Nos. 15, 16, & 30.** |

**OMNIBUS OBJECTION OF SLS HOLDINGS VI, LLC AND SEECUBIC, INC.
TO (A) APPLICATION OF STREAM TV NETWORKS, INC. PURSUANT TO 11 U.S.C.
§ 327(a), FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AND LOCAL
BANKRUPTCY RULE 2014-1 FOR AUTHORITY TO EMPLOY DILWORTH PAXSON
LLP AS BANKRUPTCY COUNSEL (D.I. 15); (B) STREAM TV NETWORKS, INC.
MOTION FOR AUTHORIZATION TO CONTINUE INSURANCE COVERAGE
ENTERED INTO PRE-PETITION AND HONOR OBLIGATIONS RELATED
THERETO (D.I. 16) AND (C) MOTION OF STREAM TV NETWORKS, INC. FOR
ENTRY OF ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION
FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY
CODE, (II) AUTHORIZING IT TO ENTER INTO THE SUPPORT AGREEMENT, AND
(III) GRANTING ADMINISTRATIVE PRIORITY CLAIMS TO LENDER PURSUANT
TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC
STAY TO IMPLEMENT THE TERMS OF THE ORDER (D.I. 30) [AMENDED][1]**

SLS HOLDINGS VI, LLC, ("**SLS**"), the Debtor's senior secured creditor, and SeeCubic,

Inc. ("**SeeCubic**" and, together with SLS, "**Movants**") by and through their undersigned attorneys,

hereby object (this "**Objection**") to (A) the *Application of Stream TV Networks, Inc. Pursuant to*

*11 U.S.C. § 327(a), Federal Rule of Bankruptcy Procedure 2014 and Local Bankruptcy Rule 2014-*

*1 for Authority to Employ Dilworth Paxson LLP as Bankruptcy Counsel* [D.I. 15] (the

"**Employment Application**"), (B) *Stream TV Networks, Inc. Motion for Authorization to Continue*

*Insurance Coverage Entered Into Pre-Petition and Honor Obligations Related Thereto* [D.I. 16]

(the "**Insurance Motion**"), and (C) the *Motion of Stream TV Networks, Inc. for Entry of Order:*

*(I) Authorizing It to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the*

---

[1] This Objection replaces the prior version of the Objection filed at D.I. 56, which is being withdrawn
contemporaneously herewith..

*Bankruptcy Code, (II) Authorizing It to Enter Into the Support Agreement, and (III) Granting Administrative Priority Claims to Lender Pursuant to Section 364 of Bankruptcy Code and Modifying the Automatic Stay to Implement the Terms of the Order* [D.I. 30] (the "**DIP Motion**" and, together with the Employment Application and Insurance Motion, the "**Motions**"), filed by Stream TV Networks, Inc. (the "**Debtor**" or "**Stream**"), and respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

This Chapter 11 case was filed in bad faith and a motion to dismiss[2] the case is currently pending. As set forth in the Motion to Dismiss, substantially all of the Debtor's assets were transferred to SeeCubic more than five months before the commencement of this Chapter 11 case pursuant to the Omnibus Agreement that has been validated by the Delaware court of Chancery as recently as December 8, 2020. Despite the fact that the Debtor has no valuable assets, no employees, no operating business, and nothing whatsoever to reorganize, the Debtor commenced this case and filed the present Motions. In addition to the Motions being wholly unnecessary, as there is nothing for the Debtor to accomplish in a Chapter 11 case, the Motions also seek relief that is inappropriate and impermissible under the Bankruptcy Code and relevant case law.

Among other things, the Motions would allow the Debtor's proposed bankruptcy counsel to be paid an exorbitant postpetition retainer, funded by an insider loan from another entity controlled by the Debtor's CEO. The Debtor contemplates funding its bankruptcy counsel's retainer before the motion to approve that financing is approved, or even considered, by the Court, and before the retention of the Debtor's proposed bankruptcy counsel or any of its fees are

---

[2] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to such terms in the *Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for Entry of An Order Dismissing Debtor's Chapter 11 Case* [D.I. 46] ("**Motion to Dismiss**"). The Motion to Dismiss is attached hereto as **Exhibit A**.

approved. The Motions seek to allow the Debtor to incur up to $1,000,000 in postpetition debt and pay insurance premiums, even though the Debtor has no operations and nothing to insure.

Although Movants maintain that this case should be dismissed, the Debtor's present Motions should also be denied as unnecessary and improper. Alternatively, the Court should delay consideration of the Motions until the Court can hear the Motion to Dismiss at the April 15, 2021 hearing.

## FACTUAL BACKGROUND

The history of the Debtor—including mismanagement by the insiders; default on debts owed to its secured creditors; and post-default transfers of substantially all of the Debtor's assets to SeeCubic—is set forth at length in the Motion to Dismiss and the supporting Stastney Declaration,[3] which are incorporated herein by this reference. The Motion to Dismiss was necessary because the Debtor has no meaningful business assets, employees, or operations to speak of, and this case was filed in bad faith as a litigation tactic. *See* Motion to Dismiss at ¶¶ 4, 6, 29, 45-56. The Chancery Opinion issued on December 8, 2020 by the Delaware Chancery Court found that the Omnibus Agreement is valid and enforceable, and detailed many instances of bad faith conduct by the Rajans. *Id*. at ¶¶ 2, 3. The Debtor filed this case solely to prevent entry of a permanent injunction, which the Chancery Court indicated it would enter. *See id*. at ¶ 4.

Additionally, on March 12, 2021, the Debtor filed the *Declaration of Mathu Rajan in Support of First Day Motions* (D.I. 51) (the "**Rajan Declaration**"). The Rajan Declaration is replete with purported factual and legal assertions that are false, unsupported by the record, and

---

[3] *Declaration of Shadron L. Stastney in Support of Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case* ("**Stastney Declaration**") [D.I. 47]. The Stastney Declaration is attached hereto as **Exhibit B**.

were previously rejected by the Delaware Chancery Court in the Chancery Opinion.[4] Even more telling than the many falsehoods included in the Rajan Declaration is what the Rajan Declaration ignores. Conspicuously, the Rajan Declaration fails to address the Chancery Court's findings in the Chancery Opinion, which directly contradict Mr. Rajan's version of events. At bottom, the Rajan Declaration reflects a failed attempt to muddy the waters that were already clarified by the Chancery Opinion, because the Debtor knows that the Chancery Court's extensive and well-reasoned findings contradict the Debtor's false narrative and support dismissal of this Chapter 11 case.

## OBJECTIONS TO MOTIONS

### A. DIP Motion

In its DIP Motion, the Debtor seeks approval of debtor in possession financing (the "**DIP Facility**") from Visual Technology Innovations, Inc. ("**VTI**"), an entity formed in January 2021 which is controlled by the Debtor's CEO, Mathu Rajan. Accompanying the DIP Motion is a proposed order approving the motion and a Support Agreement between VTI and the Debtor (the "**Support Agreement**"), which purports to document the terms of the loan (apparently in place of a loan agreement). The DIP Facility would provide an initial amount of $200,000, with the option to obtain future disbursements up to $1,000,000 (which amount can be further increased with VTI's consent). *See* DIP Motion at p.1. The DIP Facility would have an interest rate of 6% and would be made on an unsecured basis as a postpetition administrative expense. *See* Support Agreement at p.6. Although the Debtor set the hearing on the DIP Motion for March 22, 2021, the DIP Motion contemplates dispersing the initial $200,000 to the Debtor by March 5, 2021. *See id.*

---

[4] In this Objection, Movants address certain of the Rajan Declaration's misstatements and falsehoods that are directly relevant to the matters set forth herein. Whether or not specifically addressed in this Objection, however, Movants dispute the entirety of the Rajan Declaration and each and every allegation and assertion set forth therein.

at p.5; *see also* DIP Motion at p.2. The DIP Motion claims that the Debtor needs the funds to pay an additional $100,000 retainer to the Debtor's attorney and to have "sufficient cash to continue its operations uninterrupted and preserve going concern value." *See* DIP Motion at p.6. The Debtor further asserts that unless it has access to capital to pay its "ongoing operating expenses" it will "be forced to discontinue any efforts to operate . . . ." *See id.* at p.9.

Generally, a debtor must show that incurring debt postpetition is a prudent exercise of its business judgment. *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994). However, the presence of certain facts may necessitate that debtor in possession financing be scrutinized under an "entire fairness" standard.  For example, where debtor in possession financing would be provided by an insider of the debtor, where the incurrence of debt is unnecessary, or where the debtor's conduct prior to the bankruptcy otherwise makes incurrence of postepetition financing unfair, the court should apply an "entire fairness" standard and deny the requested financing.  *See* Bench Ruling, *In re UCI International, LLC*, Case No. 16-11354-MFW, D.I. 303, (Bankr. D. Del July 13, 2016) (applying entire fairness standard in denying DIP motion after considering the debtor's prepetition conduct, that the lender was an insider of the debtor, and that it was not immediately necessary for the debtor to have access to the DIP facility); *see also In re Los Angeles Dodgers, LLC*, 457 B.R. 308 (Bankr. D. Del. 2011) (finding that proposed DIP financing was not entirely fair because it uniquely benefitted the debtor's controlling shareholder to the bankruptcy estate's detriment).

Here, the Debtor cannot show that incurrence of debt under the DIP Facility is entirely fair. As set forth in the Motion to Dismiss, the Debtor has no operating business, no employees, and no meaningful assets. *See* Motion to Dismiss at ¶¶ 6, 29.  The Debtor contemplates using at least half of the initial distribution from the DIP Facility to fund a postpetition retainer to its bankruptcy

counsel. And, the Debtor contemplates receiving those initial funds weeks before the Court has even considered the DIP Motion. In short, the Debtor seeks to obtain the DIP Facility for improper purposes when, in reality, it has no legitimate business reason to incur postpetition debt.

The Debtor fails to explain why it needs a DIP Facility of up to (or exceeding) $1,000,000. Besides funding a postpetition retainer to the Debtor's bankruptcy counsel, the DIP Motion merely makes vague references to needing capital for the debtor's ongoing operations. But the Debtor has no ongoing business, employees, or significant assets. *See* Motion to Dismiss at ¶¶ 6, 29. There is simply no reason that the Debtor needs to access the DIP Facility, other than the self-interested desire of Mathu Rajan to pay the Debtor's attorneys more money to keep alive this illegitimate Chapter 11 case as a tactic to interfere with the Chancery Court litigation..

Moreover, VTI is controlled by Mathu Rajan, the Debtor's CEO. *See* Motion to Dismiss at ¶¶ 14, 41. Given Mr. Rajan's fraudulent and improper prepetition conduct, the DIP arrangement is highly suspect and it is unlikely that the DIP Facility was negotiated so as to arrive at the terms most advantageous and fair to the Debtor. *See* Motion to Dismiss at ¶¶ 33, 34, 50.

Additionally, the mere fact that the Debtor is not seeking a priming lien for VTI in connection with the DIP Motion does not (i) insulate the proposed DIP Facility from the required scrutiny, (ii) cure the improper contemplated uses of the funds, (iii) change the unnecessary nature of the debt, or (iv) unwind VTI's insider status. Each of these deficiencies alone is enough to render the DIP Facility improper and insufficient to satisfy the entire fairness standard (or any applicable standard). For all of these reasons, the DIP Motion should be denied.

## B. Employment Application

In the Employment Application, the Debtor seeks to retain Dilworth Paxson LLP ("**Dilworth**") as its bankruptcy counsel under Bankruptcy Code § 327(a). The Employment

Application and the declaration of counsel in support of that application (the "**McMichael Declaration**") reveal that Dilworth was initially retained by the Debtor to provide restructuring advice over one year ago, in January 2020, at which time the Debtor paid Dilworth a $50,000 retainer.  *See* McMichael Declaration at p. 2.  Dilworth incurred fees exceeding $75,000 at the beginning of 2020, and claims that it performed no services for the Debtor between April 2020 and November 2020.  *See id.* at 2-3.  Thereafter, Dilworth was re-engaged and paid an additional $50,000 retainer by two of the Debtor's related entities—VTI and MediaTainment Inc.  *See id.* at 3.  In February 2021, the Debtor agreed to pay Dilworth an additional $200,000 retainer, half of which was to be paid prepetition, and the remainder of which was to be paid postpetition by no later than March 5, 2021. *See id* at 4, 6. The McMichael Declaration further states that Dilworth wrote off $42,263.00 of prepetition "fees and costs [incurred] to prepare forms and pleadings necessary to commence [the] Chapter 11 Case . . . ." *See id.* at p. 6.

i.     **Payment of the postpetition retainer requires Court approval under the retention rules of the Bankruptcy Code or as a payment outside the ordinary course**

Bankruptcy Code § 327(a) provides, in pertinent part:

> [The debtor], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Payment of fees to a professional retained under Bankruptcy Code § 327 is subject to a request to and approval from the bankruptcy court. *See* 11 U.S.C. § 330(a). And Bankruptcy Code § 331 provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is

7

provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

Specifically, postpetition payments of retainers are not allowed absent notice and a hearing, both because (i) retention steps are required by the Bankruptcy Code and (ii) payment of a retainer would otherwise be a payment outside the ordinary course that would require court approval.

Courts, including those within the Third Circuit, have found that an attorney's receipt of postpetition retainer payments without prior court approval is not permissible. *In re Stein,* 502 B.R. 81 (Bankr. E.D. Pa. 2013). A postpetition retainer is merely a form of postpetition disbursement, and the terms "disbursement," "payment," and "compensation" as utilized in the relevant authorities quite obviously relate to the transfer from the debtor in possession to counsel in the first instance. *In re Genlime Group,* 167 B.R. 453, 456 (Bankr. N.D. Ohio 1994) (finding postpetition disbursements to professionals subject to Section 331 even where characterized as "retainer" payments); *In re Shah Int'l, Inc.,* 94 B.R. 136, 137 (Bankr. E.D. Wis. 1988) (stating that "an attorney could *not* receive a *postpetition* retainer either in the form of cash or as a mortgage on any property without notice to all creditors and approval of the court." (emphasis in original)).

Here, Dilworth received a postpetition retainer from the DIP Facility **before** the Court approved—or even considered—either the DIP Motion or the Employment Application. Despite the lack of required prior Court approval, according to the Debtor's *Initial Monthly Operating Report*, VTI did, in fact, wire $100,000 to Dilworth on March 9, 2021. *See* D.I. 44 at 7. This is improper. Although a bankruptcy court may enter an order setting forth interim compensation procedures, in the absence of such an order (which the Debtor has not requested), no postpetition funds may be paid from the Debtor to Dilworth prior to the hearing on the Employment Application and entry of interim compensation procedures.

Further, payments outside the ordinary course would require court approval, requiring notice and a hearing. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts recognize that the payment of bankruptcy professionals does not constitute an ordinary-course transaction. *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 464 (Bankr.M.D.Pa.1996) ("payments to professionals are treated separately and specifically under the Bankruptcy Code and are thus without question payments outside the ordinary course of a debtor-in-possession's ordinary financial affairs."). Accordingly, besides disallowance by the Bankruptcy Code retention rules, payment of such a fee outside of the ordinary course requires court approval.

### ii.    Payment of the retainer fails to meet the "Reasonableness" standard

Regarding the merits of the underlying retainer, payment of such a retainer does not meet the "reasonableness" test. Section 329(b) of the Bankruptcy Code governs a "Debtor's Transactions with Attorneys" and provides that "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive." Courts in this district have found what is "reasonable" in regards to a retainer, must be tailored to Bankruptcy Code requirements, including:

> . . . Factors to be considered, include, but are not necessarily limited to (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out.

9

*In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003)

Here, the Debtor also fails to articulate why it is necessary to pay its proposed bankruptcy counsel this hefty postpetition $200,000 retainer.  Many of the factors laid out in *Insilco* cut against the retainer, including opposition by the Debtor's major constituents and the Debtor not demonstrating how a reorganization process is likely to, or will, serve as a benefit to creditors.  As to the relationship between debtor and counsel, Dilworth was retained as the Debtor's restructuring counsel over one year ago, and despite apparently performing significant work prepetition in preparation for filing this bankruptcy case, the Debtor has filed little more than the three bare-bones Motions and a motion to retain a noticing agent. This is not surprising because the Debtor has no employees, no valuable assets, and no operating business to protect. *See* Motion to Dismiss at ¶ 6, 29.  The Debtor has not demonstrated (and cannot demonstrate) why such a large retainer meets the "reasonableness" standard provided for in *Insilco*.

### C.  Insurance Motion

In the Insurance Motion, the Debtor seeks authority to pay (or have paid on its behalf) prepetition and postpetition amounts necessary to maintain two insurance policies. *See* Insurance Motion. One of those policies is a general liability, automobile, and umbrella insurance policy and the other is a workers' compensation and employers' liability policy. *See id*. at p. 3.  Although the Debtor has had no employees and no operating business for quite some time, it contends that maintenance of the insurance policies is "essential to the operations of the Debtor's business" and should be allowed under the "doctrine of necessity" pursuant to Bankruptcy Code § 105. *See id*. at p. 5-6. And, because the Debtor apparently does not have sufficient funds to pay the outstanding

QB\67227474.9

premium balances on the policies in the total amount of $8,209.80, it proposes to have its non-debtor affiliate, MediaTainment, pay those amounts.

The "doctrine of necessity" or "necessity of payment" doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims **if such payment is essential to the continued operation of the debtor.** *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2 n.5 (D. Del. Feb. 10, 2009); *see also Matter of Lehigh & N.E. Ry. Co.,* 657 F.2d 570, 581–82 (3d Cir.1981); *In re Just For Feet, Inc.,* 242 B.R. 821, 824–25 (D. Del. 1999); *Matter of Columbia Gas Sys., Inc.,* 171 B.R. 189, 192 (Bankr. D. Del. 1994). In one case, the court declined to recognize a payment to a government entity on "doctrine of necessity" grounds because the movant did not actually supply the debtors with any postpetition services. *In re Newpage Corp.*, 555 B.R. 444, 452 (Bankr. D. Del. 2016) (declining to use doctrine of necessity to authorize payment of environmental fees to government agency).

While Movants acknowledge that insurance motions are typically approved, this *is not* the typical case. As detailed in the Motion to Dismiss, this Chapter 11 case is a sham; it was not filed in good faith and there is simply no reason to allow the Debtor to pay prepetition insurance premiums. *See* Motion to Dismiss at ¶¶ 4, 7, 45-56. The Debtor has no operating business and no assets to insure under the general liability, automobile, and umbrella insurance policy. *See* Motion to Dismiss at ¶¶ 6, 29. And the workers compensation and employers' liability policy is also useless to the Debtor, as the Debtor has no employees. *See id.* Like the Debtor's other Motions, the Insurance Motion relies on the fantasy that the Debtor is an operating business that needs to protect its going concern value to successfully reorganize in this case. The Debtor makes vague references to its ongoing "operations", or imminently "receiving significant investment revenues", or completing a merger "such that those 9 employees [who previously worked for Stream] would

11

again be employed by Stream . . . ." *See* Insurance Motion at p. 4-5. The reality is just the opposite. The reason the Debtor has no employees and cannot afford to pay $8,209.80 of insurance premiums is the same as why the Debtor did not file any of the ordinary first day motions in this case—the debtor has no ongoing business, no valuable assets, and nothing to reorganize or sell in this case. *See* Motion to Dismiss at ¶¶ 6, 29. Therefore, the Insurance Motion should be denied.

## **RESERVATION OF RIGHTS**

Movants reserve the right to amend or supplement this opposition, to introduce evidence supporting this opposition at any related hearing, and to file additional and supplemental objections.

## **Local Rule 9013-1(h) Statement**

Movants consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

WHEREFORE, for all of the foregoing reasons, Movants respectfully request that the Court deny each of the Motions, and grant such other and further relief as the Court deems just and proper.

QB\67227474.9

Dated:  March 15, 2021
   Wilmington, Delaware

ROBINSON & COLE

By:  */s/ Davis Lee Wright*
Davis Lee Wright (No. 4324)
James F. Lathrop (No. 6492)
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Telephone: (302) 516-1700

-and-

QUARLES & BRADY LLP
Brittany S. Ogden (admitted *pro hac vice*)
33 East Main Street Suite 900
Madison, Wisconsin 53703
Telephone: (608) 251-5000

Brandon M. Krajewski (admitted *pro hac vice*)
411 East Wisconsin Avenue Suite 2400
Milwaukee, Wisconsin 53202
Telephone: (414) 277-5000

Alissa Brice Castañeda (admitted *pro hac vice*)
Gabriel M. Hartsell (admitted *pro hac vice*)
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 229-5200

*Counsel for SLS Holdings VI, LLC*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Joseph O. Larkin*
Joseph O. Larkin (I.D. No. 4883)
Jenness E. Parker (I.D. No. 4659)
Jason M. Liberi (I.D. No. 4425)
920 N. King Street, One Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 651-3000

- and -

Eben P. Colby (*pro hac vice* pending)
Marley Ann Brumme (*pro hac vice* pending)
500 Boylston Street, 23rd Floor
Boston, Massachusetts  02116
Telephone: (617) 573-4800

*Counsel for SeeCubic, Inc.*