**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| STREAM TV NETWORKS, INC., | : | Case No. 21-10433 (KBO) |
| | : | |
| Debtor. | : | Hearing Date:  March 22, 2021 at 10:00 a.m. |
| | : | |
| | : | RE:  D.I. 30, 59 |

**VISUAL TECHNOLOGY INNOVATIONS, INC.'S RESPONSE IN SUPPORT
OF THE MOTION OF STREAM TV NETWORKS, INC. FOR ENTRY OF
ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION FINANCING PURSUANT
TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING IT
TO ENTER INTO THE SUPPORT AGREEMENT, AND (III) GRANTING
ADMINISTRATIVE PRIORITY CLAIMS TO LENDER PURSUANT TO SECTION 364
OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO
IMPLEMENT THE TERMS OF THE ORDER**

Visual Technology Innovations, Inc. ("VTI"), by and through its undersigned counsel, hereby files this response (the "Response") in support of the *Motion of Stream TV Networks, Inc. for Entry of Order: (I) Authorizing It to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code and Modifying the Automatic Stay to Implement the Terms of the Order* [D.I. 30] (the "DIP Financing Motion") filed by Stream TV Networks, Inc. (the "Debtor"). In support of this Response, VTI avers as follows:

**PRELIMINARY STATEMENT**

1.      Contrary to the assertions of SLS Holdings VI, LLC ("SLS") and SeeCubic, Inc. (SeeCubic and, collectively with SLS, the "Objecting Parties"), the Debtor's bankruptcy case filed in good faith and for a proper purpose—reorganization or a sale under title 11 of the United States Code (the "Bankruptcy Code").  The Objecting Parties, through their objection to the DIP Financing Motion, seek to frustrate the Debtor's proper purpose by blocking any funding of the Debtor's bankruptcy case. *See* D.I. 59 (the "Omnibus Objection").  Debtor-in-Possession financing

("DIP Financing"), however, is necessary for the Debtor to achieve its proper goal and the DIP Financing Motion should be approved.

2. The DIP Financing is a proper exercise of the Debtor's business judgment and is beneficial to the estate. First, without the DIP Financing, the Debtor will be unable to meaningfully participate in the bankruptcy process, including defending itself against the Objecting Parties' pending motion to dismiss the entire Chapter 11 case. Second, the DIP Financing is made on an unsecured basis, seeking only administrative expense priority. Third, the DIP Financing is subject to a 6% interest rate, far lower than could be obtained for an unsecured loan on the open market. Finally, the DIP Financing is for an initial amount of only $200,000[1] and will be subject to the oversight of this Court, the United States Trustee, an official committee of unsecured creditors (if one is appointed), and the watchful eyes of the Objecting Parties.

**FACTUAL BACKGROUND**

3. VTI was formed to acquire and develop technology, primarily in the glasses-free 3D technology industry, but also in other visual technologies, as well. VTI is invested in certain technology projects unrelated to the Debtor's Ultra-D technology. Nevertheless, VTI is interested in acquiring the Debtor's Ultra-D technology and has solicited investment from third-parties for the effort of capturing the glasses-free three dimensional screens market. Mathu Rajan, while owning 100% of the voting shares of VTI, owns less than 10% of the Class A stock of VTI. The majority of VTI's Class A shares are owned by third parties who are not investors in the Debtor. VTI's Board currently consists of 6 directors, three of whom were appointed by Mathu Rajan, and three of whom were appointed by Burlington Resources Asia Limited, a third party unrelated to Mr. Rajan, his family or the Debtor.

---

[1] VTI and the Debtor have been in discussions regarding approving the DIP Financing on an interim basis through April; 15, 2021. Those discussions are ongoing.

4. On February 24, 2021 (the "Petition Date), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and mange its property as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No Trustee or examiner has been appointed in this Chapter 11 Case, nor has any official committee of unsecured creditors.

6. Additional detail regarding the Debtor, its business, the events leading to the commencement of the case and the circumstances supporting the relief requested in the DIP Financing Motion are set forth in the DIP Financing Motion and the *Declaration of Mathu Rajan in Support of First Day Motions*, filed on March 12, 2021 (D.I. 51) (the "Rajan Declaration") and is incorporated by reference herein.

7. On March 1, 2021, the Debtor filed the DIP Financing Motion. The DIP Financing Motion seeks approving of DIP Financing in an initial amount of $200,000, up to $1,000,000. *See* DIP Financing Motion at ¶¶ 1, 2.[2] The DIP Financing would be unsecured, subject only to administrative expense priority pursuant to Section 503 of the Bankruptcy Code. *Id.* Interest would accrue only at 6.00% per annum. *Id.*, Ex. B at 6. Funding for the DIP Financing is provided by VTI, a non-Debtor entity whose principal is Mathu Rajan, a principal of the Debtor. *Id.* at ¶ 18.

8. On March 12, 2021, the Objecting Parties filed the *Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case* (D.I. 46) (the "Motion to Dismiss). The Motion to Dismiss alleged, *inter alia*, that the Chapter 11 Case was filed in bad faith because it serves no legitimate bankruptcy purpose. Objections to the Motion to Dismiss are

---

[2] The amount of DIP Financing could be increased by consent of VTI, but would be subject to Court approval.

3

due by March 29, 2021. A hearing to consider the Motion to Dismiss is scheduled for April 15, 2021 at 1:00 p.m.

9. On March 15, 2021, the Objecting Parties filed the Omnibus Objection.

## ARGUMENT

10. The Objecting Parties acknowledge that generally, approving of debtor-in-possession financing is subject to the business judgment rule but argue that here, it should be subject to entire fairness. *See* Omnibus Objection at 5. Under either standard, the DIP Financing Motion should be approved.

11. As set forth in the DIP Financing Motion and the Rajan Affidavit, without post-petition funding, the Debtor lacks sufficient cash to continue its operations and preserve going concern vale. *See* DIP Motion at ¶ 13; Rajan Aff. At ¶¶ 78-80. This includes payment for the Debtor's insurance policies. Nevertheless, the Objecting Parties falsely assert that there is nothing to reorganize. But, as the Rajan Affidavit makes clear, the Debtor has existing contracts with Bosch and Google and is exploring relationships with additional customers and partners. *See* Rajan Aff. at ¶ 22. Additionally, the Debtor has set forth a path towards a restructuring of its existing debt (which includes additional funding from VTI) or a sale of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code. *Id.* at 64.

12. The Debtor has filed a budget with its initial reporting requirements which sets forth the need for the post-petition financing and how it will be used. *See* D.I. 44. Although the Debtor projects that there will be receipts from accounts receivable in the future, the Debtor currently has little to no liquidity and none of the receivables are projected to materialize prior to May 2021. Accordingly, without the post-petition financing, it would be administratively insolvent for at least the first sixty (60) days of the Chapter 11 case.

13. The need for post-petition financing is real and it is immediate.

14. In addition to the basic administration of the Chapter 11 Case, the Debtors face a challenge to the Chapter 11 Case itself from the Objecting Parties. The Objecting Parties have moved to dismiss the Chapter 11 Case. The Debtor's response is due March 29, 2021 and the hearing is scheduled for April 15, 2021. With the Omnibus Objection, the Objecting Parties seek to curtail the Debtor's ability to properly respond to the Motion to Dismiss and defend itself from the Objecting Parties' accusations. Accordingly, the DIP Financing is also necessary for the Debtor to have adequate assistance of competent bankruptcy counsel.

15. Beyond the need for the DIP Financing, the Omnibus Objection does not challenge its terms. Nevertheless, the terms of the DIP Financing are fair and appropriate.

16. As noted, the DIP Financing is unsecured and is subject to a low interest rate of only 6% per annum.

17. Recent debtor-in-possession financing from insiders approved by this Court have been secured, but still have a greater interest rate than that proposed here. *See, e.g., In re Knotel, Inc., et al.*, Case No. 21-10146 (MFW) (Bankr. D. Del.) (D.I. 70, 330) (interim and final orders approving superpriority secured loan to insider at interest rate of 12% per annum); *In re CMC II, Inc. et al.*, Case No. 21-10461 (JTD) (Bankr. D. Del.), Case No. 21-10461 (JTD) (D.I. 37) (interim order approving superpriority secured loan to insider at interest rate of 8% per annum).

18. Secured loans to third parties typically come with even more onerous terms. *See, e.g.*, *In re Klausner Lumber Two, LLC*, Case No. 20-11518 (KBO) (Bankr. D. Del.) (D.I. 480) (second final order approving superpriority secured loan to third party at interest rate of 10.75% plus the greater of (i) the prime rate or (ii) 4.00%, plus commitment fee, underwriting fee, undrawn line fee and legal fees).

19. The Objecting Parties' citation this Court's bench ruling denial of an insider debtor-in-possession facility *In re UCI International, LLC*,³ is inapposite and actually supports approval of the DIP Financing here. In *UCI*, the Debtor was requesting roll-up of an insider debt, and there were various other options for financing. The Court even acknowledged, that if those options did not exist, it may have approved the proposed financing. *See* Bench Ruling, *In re UCI International, LLC*, Case No. 16-11354 (MFW) (Bankr. D. Del.) (D.I. 303) at 200:18-23 ("This is not the case where I think I can approve a roll-up of an insider debt … *I might have been forced to approve that, if there weren't other options*. There are other options here: Use of cash collateral, another DIP proposal, revisions to this DIP.") (emphasis added). Here, there is no roll-up, no requested security, and no other options.

20. Similarly, in *In re Los Angeles Dodgers, LLC*, 457 B.R. 308 (Bankr. D. Del. 2011), while applying the entire fairness standard, the Court denied the debtor's post-petition financing motion because the debtor could not prove that it had attempted to obtain unsecured financing as required by Section 364(b) of the Bankruptcy Code and, in fact, had a potential lender willing to provide financing on an unsecured basis. *Id.* at 312. Here, the DIP Financing is unsecured and there are no other options.

21. Importantly, too, the initial DIP Financing is only $200,000, enough to enable the Debtor to pay its professionals and certain other administrative costs, including insurance coverage.⁴ If a committee is appointed, they, too, will need funding, which at this time can only be provided by post-petition financing. The committee, if appointed will be a main source of oversight. The Debtors use of the DIP Financing is also subject to the oversight of this Court and

---

³ *See* Omnibus Objection at 5.
⁴ VTI and the Debtor are in discussions on extending the DIP Financing on an interim basis through April 15, 2021. Those discussions are ongoing.

the Office of the United States Trustee. The Objecting Parties, too, will likely keep a keen eye on the Debtor's post-petition operations and funding.

22. In short, the DIP Financing is necessary to the Debtor's efforts in this Chapter 11 Case and its terms are more than appropriate.

23. Accordingly, the proposed DIP Financing is well within the Debtor's business judgment, meets the entire fairness standard and should be approved.

WHEREFORE, VTI respectfully requests this Court approve the DIP Financing Motion and such other relief as is just and proper.

Dated: March 17, 2021					**ARMSTRONG TEASDALE LLP**

/s/ *Rafael X. Zahralddin-Arevena*
Rafael X. Zahralddin-Aravena (#4166)
Jonathan M. Stemerman (#4510)
300 Delaware Ave., Suite 210
Wilmington, DE 19801
Telephone:  302-824-7089
Email:	rzahralddin@atllp.com
	jstemerman@atllp.com

*Attorneys for Visual Technologies Innovations, Inc.*