# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Stream TV Networks, Inc. | Case No. 21-10433 (KBO) |
| | **Re: D.I. 16, 30** |
| Debtor. | **Hearing Date: March 22, 2021 at 10:00 a.m. (ET)** |
| | **Objection Deadline: March 18, 2021 at 4:00 p.m. (ET) (For U.S. Trustee)** |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION (A) TO MOTION OF STREAM TV NETWORKS, INC. FOR ENTRY OF ORDER: (I) AUTHORIZING IT TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING IT TO ENTER INTO THE SUPPORT AGREEMENT, AND (III) GRANTING ADMINISTRATIVE PRIORITY CLAIMS TO LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THE ORDER AND (B) STREAM TV NETWORKS, INC. MOTION FOR AUTHORIZATION TO CONTINUE INSURANCE COVERAGE ENTERED INTO PRE-PETITION AND HONOR OBLIGATIONS RELATED THERETO**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), through his undersigned counsel, files this objection and reservations of rights ("Objection") to the *Motion Of Stream Tv Networks, Inc. For Entry Of Order: (I) Authorizing It To Obtain Post-Petition Financing Pursuant To Sections 363 And 364 Of The Bankruptcy Code, (II) Authorizing It To Enter Into The Support Agreement, And (III) Granting Administrative Priority Claims To Lender Pursuant To Section 364 Of Bankruptcy Code And Modifying The Automatic Stay To Implement The Terms Of The Order* ("DIP Financing Motion") filed at D.I. 30 and *Stream TV Networks, Inc. Motion For Authorization To Continue Insurance Coverage Entered Into Pre-Petition And Honor Obligations Related Thereto* ("Insurance Motion") at D.I. 16, and in support of this Objection states as follows:

1

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to the DIP Financing Motion because the Debtor has not demonstrated a need to incur up to $1 million in unsecured, insider debt with administrative priority status. Here, the Debtor appears to no longer own its significant assets, and the entity proposed to provide the financing was formed two months ago by the Debtor's President and CEO and has no purpose other than to fund this case and pay the Debtor's proposed professionals.  The Debtor has not established a sound business justification to saddle this estate with up to $1 million in priority unsecured debt, and it is possible this case should not remain in chapter 11.[1]  The U.S. Trustee likewise objects to the Insurance Motion; the Debtor has not developed a record showing that such payments are presently necessary.

2.      Alternatively, the U.S. Trustee requests that this Court reserve ruling on the DIP Financing Motion and the Insurance Motion until the Court adjudicates the Motion to Dismiss (defined below).

## JURISDICTION

3.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Objection.

4.      The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co*., 315

---

[1] If this Court finds that there is a present need for the Debtor to incur a financing obligation, the U.S. Trustee requests and has discussed with the Debtor that such amount should be limited and the authority to borrow should be granted on an interim basis until this Court rules on the Motion to Dismiss (discussed below).

F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

5.      Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the issues raised in this Objection.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

*Procedural History*

6.      On February 24, 2021 (the "Petition Date"), Stream TV Networks, Inc. (the "Debtor," or the "Company") filed a voluntary petition for relief under chapter 11 of the Code.

7.      The Debtor filed the Application to Retain Dilworth Paxson LLP as Bankruptcy Counsel D.I. 15 and the Insurance Motion D.I. 16 on February 25, 2021.

8.      The Debtor filed the DIP Financing Motion on March 1, 2021.

9.      On March 12, 2021, the Debtor filed the *Declaration of Mathu Rajan In Support of First Day Motions* ("Rajan Declaration") at D.I. 51.

10.     A creditors' meeting under section 341 of the Code is scheduled for March 31, 2021 at 1:00 p.m.

*Debtor's History*

11.     The Debtor was founded in 2009, and as of the date hereof, has never generated revenue.  *See* D.I. 30 at ¶ 1.  Its executive office is in Philadelphia, Pennsylvania and it is

incorporated in Delaware. The Debtor does not have any employees nor operations. As of the Petition Date, the Debtor's sole board member and Chief Executive Officer ("CEO") is Mathu Rajan ("Mr. Rajan"). Mr. Rajan directly and indirectly owns about nine percent of the Debtor's equity. *See* Corporate Ownership Statement (Rule 7007.1) at D.I. 5.

12.    The Debtor expects to launch a technology that "allows TV and tablet manufacturers to convert two dimensional devices into three dimensional ("3D") without the need for viewing glasses." *See* D.I. 30 at ¶ 7.

13.    A visit to "streamtvnetworks.com" reveals a message that says

> Stream TV Networks, along with all subsidiaries and all associated assets, has been acquired by SeeCubic, Inc. The groundbreaking glasses-free 3D technology, UltraD, was developed by SeeCubic BV in the Netherlands and is now the cornerstone of a new & innovative international company, SeeCubic, Inc.

> A new and invigorated management team has been created with industry leading senior executives who have merged their vision with the technology from the core engineers who developed this revolutionary product.

*See* Home Page, www. Streamtvnetworks.com (last visited March 18, 2021 at 5:50 A.M.).

14.    SeeCubic and the Debtor have a significant pre-petition litigation history.

***SeeCubic Dispute***

15.    On December 8, 2020, Vice Chancellor Laster of the Chancery Court of the State of Delaware issued a non-final opinion and order in favor of SeeCubic pertaining to competing motions for preliminary injunctions filed by SeeCubic and the Debtor earlier that year. *See Stream TV Networks, Inc. v. SeeCubic, Inc*., C.A. No. 2020-0766-JTL, Opinion and Order Granting Preliminary Injunction, D.I. 213, 124 (Del. Ch. Dec. 8, 2020) (respectively, "Chancery Court Opinion" and "Chancery Court Order"). The Debtor moved in the Chancery Court for a preliminary injunction preventing SeeCubic from enforcing the Omnibus Agreement (defined

below), whereas SeeCubic argued the opposite.    The competing motions turned on the validity of the Omnibus Agreement (defined below).

16.    In short, the Chancery Court Opinion confirms the validity of a May 2020 agreement ("Omnibus Agreement") between the Debtor, the Debtor's senior secured creditor, SLS Holdings VI, LLC ("SLS"), the Debtor's junior secured creditor, Hawk Investments Holdings Limited ("Hawk"), and fifty-two of the Debtor's stockholders ("Equity Investors").  *See* Chancery Court Opinion, slip. op. at 1-4.  Importantly, the Chancery Court held that, in the Omnibus Agreement,

> [the Debtor] agreed to transfer ***all of*** its assets to SeeCubic, a newly formed entity controlled by its secured creditors.  [The Debtor] also granted its secured creditors a power of attorney to effectuate the transfers.  [The Debtor's] secured creditors already held security interests in all of the [the Debtor's] assets and had the right to foreclose on those assets.  In the Omnibus Agreement, [the Debtor's] secured creditors agreed to release their claims against [the Debtor] upon competition if the transfers of [the Debtor's] assets to SeeCubic.
>
> If [the Debtor's] secured creditors had foreclosed on [the Debtor's] assets, then [the Debtor] and its stockholders would have been left with nothing. Instead, the Omnibus Agreement provided [the Debtor's] minority investors with the right to swap their shares in [the Debtor] for shares in SeeCubic. The Omnibus Agreement also provided for the issuance of one million shares in SeeCubic to [the Debtor].

*See* Chancery Court Opinion, slip. op. at 1 (emphasis added).[2]

17.    The impetus for the execution of the Omnibus Agreement appears to have been the Debtor's financial struggles.  By May 2020, the Debtor "had defaulted on more than $50 million in debt to its secured creditors, owed another $16 million to trade creditors, and could not pay the

---

[2] Notably, the Chancery Court found "[e]veryone agrees that the Omnibus Agreement encompasses ***all of*** [the Debtor's] assets." Chancery Court Opinion, slip. op. at 27 (emphasis added).

bills as they came due." *See id.* The Debtor had also missed payroll at the beginning of 2020 and furloughed some employees. *See id.*

18. Accordingly, the Chancery Court Order preliminarily enjoined Mr. Rajan from taking any action to interfere with the Omnibus Agreement, including, among other specifically enumerated acts:

> (g) Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, licensing, spending, withdrawing, mortgaging, granting a lien or security interest in, or otherwise disposing of the Assets in a manner inconsistent with the Omnibus Agreement.

Chancery Court Order at ¶ 1 (g).

19. Included within the Chancery Court Opinion are many "facts as they appear reasonably likely to be found after trial, based on the current record." *See* Chancery Court Opinion slip. op. at 5. Among those facts are: (i) several outside directors have resigned from their roles between 2015 and 2020; (ii) throughout its existence, the Debtor's "corporate governance practices have been virtually nonexistent"; (iii) the Debtor "has never held annual meeting of the stockholders and has not kept regular minutes of Board meetings"; and (iv) the Debtor "has officers and employees, but their roles are not well defined." *See id.* at 6.

20. As of February 25, 2021, the competing motions appear to have been almost fully briefed by all parties and awaiting final adjudication by the Chancery Court.

21. SeeCubic has appeared in this case, and on March 12, 2021, filed the *Motion Of SeeCubic, Inc. And SLS Holdings VI, LLC For An Order Dismissing Debtor's Chapter 11 Case* ("Motion to Dismiss") filed at D.I. 46. A hearing on the Motion to Dismiss is scheduled for April 15, 2021.

*DIP Financing Motion*

22.     Against this backdrop, shortly after the Petition Date, the Debtor filed the DIP Financing Motion without a supporting declaration nor a projected budget for use of the proposed financing.  *See* D.I. 30.  In sum, the DIP Financing Motion requests authority to borrow up to $1 million ("Financing Obligation") from Visual Technology Innovations, Inc ("VTI").  *See* D.I. 30 at ¶. 2.b.  The Debtor requests that the Financing Obligation, which is unsecured, be afforded administrative expense status under sections 364(b) and 503(b)(1).  *See id*. at ¶ 2.n.

23.     The proceeds of the financing can be used for

> (ii) the payment of any and all costs and expenses of [Debtor] incurred in the normal course of its business (including, without limitation, the payment of any indemnification or other obligations of the [Debtor] owing to any managers or officers of the [Debtor] at any time when there is no Bankruptcy Case pending; (iii) the payment of any and all (a) administrative expenses incurred during the pendency of any Bankruptcy Case that have been allowed by an order of the Bankruptcy Court as well as the payment of an additional retainer of $100,000 to counsel for the Payee in the Bankruptcy Case and (b) other costs and expenses of the Payee incurred during the pendency of any Bankruptcy Case that are necessary or appropriate in the judgment of the Payee's Board, collectively including the costs of administering the Bankruptcy Case and any and all other costs and expenses of the Payee incurred in the normal course of its business during the pendency of the Bankruptcy Case; and (iv) the funding of any amounts necessary to cause the Support Account to contain at least $50,000 at all times prior to the effective date of a Plan[.]

*See id*. at ¶ 2.i.

24.     Mr. Rajan formed VTI in January 2021.  *See Declaration Of Lawrence G. McMichael Of Dilworth Paxson LLP And Statement Pursuant To Bankruptcy Rules 2014 And 2016(B) And Local Bankruptcy Rules 2014-1 And 1026-1* ("McMichael 2014 Declaration") at D.I. 15.1, ¶ 11.  Mr. Rajan is the "principal of both VTI and [the Debtor]," and he "presently owns or controls approximately 11.5% of VTI but anticipates that amount will exceed 98%."  *See* D.I. 30

at fn. 2. Within the last week, VTI has gained at least five more directors, half of which were appointed by Mr. Rajan. *See* VTI's Response in Support of DIP Financing Motion at D.I. 67.[3] In addition to the proposed financing, VTI also appears to have funded the retainer of proposed Debtor's counsel, Dilworth Paxson LLP ("Dilworth"), with equity infusions by various entities, many of which are either associated or affiliated with current equity holders of the Debtor. *See* McMichael 2014 Declaration at ¶. 11; *accord* Supplemental McMichael Declaration at D.I. 60. There is no information in the record about VTI's financial wherewithal to finance this bankruptcy case. The Rajan Declaration states that VTI "intends to be an operating company with no present ties to Stream, although there could potentially be interaction between the two companies in the future, including a potential merger of the two entities. VTI has hired employees that had previously been employed with the Debtor." *See* Rajan Declaration at ¶ 20 b.

25.     The DIP Financing Motion and proposed order thereto requests that this Court grant the protections of section 364(e) of the Code to the Financing Obligation. Additionally, the Debtor also requests that VTI have no exposure to "lender liability . . . for any claims arising from any and all activities by the Debtor in the operation its business in connection with the Debtor's post-petition restructuring efforts." *See* D.I. 30-1 at ¶ 17.

***Insurance Motion***

26.     In the Insurance Motion, the Debtor requests authority to pay pre-petition and post-petition amounts due under a business insurance policy and a workers compensation insurance policy. The amounts due will be paid by non-debtors MediaTainment, Inc. and VTI. The premium balance remaining on the business policy is $6,240.00, and $1,945.80 is due on the workers compensation policy.

---

[3] It is not clear to the U.S. Trustee whether Mr. Rajan has resigned from VTI's board.

**ARGUMENT**

**I.    There is No Need for the Relief Requested in the DIP Financing Motion.**

27.    The Debtor has not established a need for the Financing Obligation nor a justification to burden the Debtor with more debts.  Although the DIP Financing Motion is replete with assertions that the Debtor needs the funds to "pay it current and ongoing expense[s]," and that if those expenses are not paid, "the Debtor will be forced to discontinue any efforts to operate, which would likely result in irreparable harm to its business," the only statements in the record in support of these assertions is that the Debtor "retains title by physical possession of most of its business assets," *see* Rajan Declaration at ¶ 59, and  VTI's Response in Support of DIP Financing Motion.  VTI's statement does not settle the central, threshold question in this case: what assets are there to reorganize in this case?

28.    Unlike the usual custom and practice, the Debtor has not submitted a budget showing its expenses in connection with the DIP Financing Motion.  It seems doubtful that assets of significant value remain in the Debtor's estate in light of the Chancery Court Opinion and Order. Parties in interest, therefore, are in the dark about the alleged need to incur the significant Financing Obligation, which is proposed to have priority over all other general unsecured claims in this case.  Although the Debtor's *Initial Monthly Operating Report* filed at D.I. 44 appears to show some line-item disbursements, the bulk of which, appear to be budgeted for "inventory purchases," in the context of a non-operating, pre-revenue business, where a secured creditor appears to have control and ownership over many of the assets, it is hard to understand why such expenses are necessary and what purpose they serve.

29.     Therefore, the U.S. Trustee respectfully submits that this Court should deny the relief requested in the DIP Financing Motion.

**II.    Incurring the Financing Obligations is Not Entirely Fair.**

30.     Under entire fairness standard often applied in the context of a financing proposal pursuant to section 364 of the Code, the Financing Obligation is improper, and the Debtor should not, at this juncture, be authorized to incur it.

31.     Under section 364(b) of the Code, "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."  Generally, "courts will almost always defer to the business judgment of a debtor in the selection of the lender."  *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (noting that "[t]he business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.").

32.     The business judgement rule, however, does not apply if one of these four elements is established: "(1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent." *Id*. at 313.  If one of these elements is established, then the transaction must be evaluated under the entire fairness standard, which requires: (1) fair dealing; and (2) fair price. *Id*. at 314.

33.     Here, because Mr. Rajan sits on both sides of the proposed Financing Obligation transaction, he is not disinterested.  The decision to choose VTI as lender and the transaction

generally must, therefore, be evaluated under the entire fairness standard. The total amount of the Financing Obligation is $1 million. This is a large sum in the context of a Debtor that is not operating, is pre-revenue, and appears to have lost ownership over many of its assets. This amount is proposed to have priority over all general unsecured claims in this case. It is unclear whether VTI has the financial wherewithal to support this case as it was formed two months ago and "intends to be an operating company" that may merge with the Debtor.

34.      Therefore, the U.S. Trustee submits that this Court should not grant the relief requested in the DIP Financing Motion.

**III.    There Is No Record To Justify The Relief Requested In The Insurance Motion.**

35.      Although the U.S. Trustee agrees that maintaining insurance is necessary to preserve estate value, for the same reasons discussed above concerning the failure to show a need for the DIP Financing, the Debtor likewise has not shown a valid reason to have this court sanctify payments by insiders for insurance policies for the benefit of the Debtor, where the Debtor has no employees, no assets, and no operations.

**REQUEST TO ADJOURN MARCH 22, 2021 HEARING**

36.      Alternatively, the U.S. Trustee respectfully submits that this Court should reserve ruling on the DIP Financing Motion and Insurance Motion until such time after this Court adjudicates *Motion Of SeeCubic, Inc. And SLS Holdings VI, LLC For An Order Dismissing Debtor's Chapter 11 Case* because authorizing the Debtor to incur such a sizable debt might prove futile if this case is ultimately dismissed. The Debtor, nor any other party in interest, will be prejudiced by this adjournment because the Debtor has not articulated an immediate need for this financing, and it appears trade creditors have not been paid since May 2020.

## **RESERVATION OF RIGHTS**

37.    The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee requests that this Court Deny the FIP Financing Motion to the extent set forth above, or in the alternative, adjourn the hearing on the DIP Financing Motion until such time after this Court adjudicates the *Motion Of SeeCubic, Inc. And SLS Holdings VI, LLC For An Order Dismissing Debtor's Chapter 11 Case* filed at D.I. 46.

Dated: March 18, 2021.
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By: <u>/s/ *Rosa Sierra*</u>
      Rosa Sierra
      Trial Attorney
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox35
      Wilmington, Delaware 19801
      Phone: (302) 573-6492
      Fax:    (302) 573-6497
Email: rosa.sierra@usdoj.gov

## CERTIFICATE OF SERVICE

I, Rosa Sierra, hereby attest that on March 18, 2021, I caused to be served a copy of this Omnibus

Objection to DIP Financing Motion and Insurance Motion by electronic service on the registered parties via

the Court's CM/ECF system and upon the following parties:

**Proposed Debtor's Counsel**
DILWORTH PAXSON LLP
Martin J. Weis
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19801
mweis@dilworthlaw.com

Lawrence G. McMichael
Anne M. Aaronson
Yonit A. Caplow
1500 Market St., Suite 3500E
Philadelphia, PA 19102
lmcmichael@dilworthlaw.com
aaaronson@dilworthlaw.com
ycaplow@dilworthlaw.com

***Counsel for SLS***
ROBINSON COLE
Davis Lee Wright (No. 4324)
James F. Lathrop (No. 6492)
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Telephone: (302) 516-1700
dwright@rc.com
jlathrop@rc.com

QUARLES & BRADY LLP
Brittany S. Ogden
33 East Main Street Suite 900
Madison, Wisconsin 53703
Telephone: (608) 251-5000
Brandon M. Krajewski
411 East Wisconsin Avenue Suite 2400
Milwaukee, Wisconsin 53202
Telephone: (414) 277-5000
Alissa Brice Castañeda
Gabriel M. Hartsell

One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 229-5200
brittany.ogden@quarles.com
brandon.krajewski@quarles.com
alissa.castaneda@quarles.com
gabriel.hartsell@quarles.com

***Counsel for SeeCubic***
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Joseph O. Larkin
Jenness E. Parker
Jason M. Liberi
920 N. King Street, One Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Eben P. Colby
Marley Ann Brumme
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Telephone: (617) 573-4800
joseph.larkin@skadden.com
jenness.parker@skadden.com
jason.liberi@skadden.com
eben.colby@skadden.com
marley.brumme@skadden.com

***Counsel for VTI***
ARMSTRONG TEASDALE LLP
Rafael X. Zahralddin-Aravena
Jonathan M. Stemerman
300 Delaware Ave., Suite 210
Wilmington, DE 19801
Telephone: 302-824-7089
rzahralddin@atllp.com
jstemerman@atllp.com

**Counsel for Iinuma Gauge Mfg. Co., Ltd.**
BAYARD
Daniel N. Brogan
dbrogan@bayardlaw.com
600 North King Street, Suite 400
P.O. Box 25130 Wilmington, DE 19899

***Counsel for IMG Media, Ltd.; Trans World International LLC; and other affiliates of Endeavor Operating Company, LLC***
Jennifer R. Hoover, Esq.
John C. Gentile, Esq.
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
1313 N. Market St., Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
jhoover@beneschlaw.com
jgentile@beneschlaw.com