# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Stream TV Networks, Inc.<br><br>                                    Debtor. | Chapter 11<br><br>Case No. 21-10433 (KBO)<br><br>Re: D.I. 15<br><br>Hearing Date: March 22, 2021 at 10:00 a.m. (ET)<br><br>Objection Deadline: March 18, 2021 at 4:00 p.m. (ET) |

### UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION OF STREAM TV NETWORKS, INC. PURSUANT TO 11 U.S.C. § 327(A), FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 AND LOCAL BANKRUPTCY RULE 2014-1 FOR AUTHORITY TO EMPLOY DILWORTH PAXSON LLP AS BANKRUPTCY COUNSEL

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned counsel, files this objection ("Objection") to *Application Of Stream TV Networks, Inc. Pursuant To 11 U.S.C. § 327(a), Federal Rule Of Bankruptcy Procedure 2014 And Local Bankruptcy Rule 2014-1 For Authority To Employ Dilworth Paxson LLP As Bankruptcy Counsel* ("Dilworth Retention Application") filed at D.I. 15, and in support of this Objection states as follows:

### PRELIMINARY STATEMENT

1.     The U.S. Trustee objects to the Dilworth Retention Application because (1) Dilworth has provided insufficient disclosures under Federal Rule of Bankruptcy Procedure 2014 ("Rule 2014") concerning its connections to the insider entity, VTI (defined below), which is funding Dilworth's compensation in this case; and (2) the insufficient disclosure makes it

1

impossible to determine whether the Dilworth Retention Application meets the standard for retention of a professional under section 327(a) of the Code.

2.  Dilworth's disclosures suggest that it may not have an undivided loyalty to the bankruptcy estate and its creditors because it received several direct payments for its services from VTI, an entity formed by the Debtor's principal a few months ago for the apparent purpose of funding Dilworth's services and financing this bankruptcy case. Notably, VTI was formed shortly after an order from the Chancery Court preliminary enjoyed the Debtor and its principal from asserting ownership over assets the Debtor agreed to transfer to its secured creditors in lieu of foreclosure. VTI is not an operating company and has no revenues; it funded Dilworth's legal services to the Debtor with equity infusions from investors, many of which either hold equity in the Debtor or are associated with the Debtor's current equity holders. VTI is also the entity proposed to provide DIP financing in this case. As discussed in the U.S. Trustee's Objection to DIP Financing at D.I. 68, the Debtor has no operations, no employees, no assets, and therefore, has no need for DIP Financing.

3.  Based on these circumstances and the insufficient disclosures about Dilworth's connections to VTI, the U.S. Trustee submits that the Dilworth Retention Application should be denied. Alternatively, the U.S. Trustee requests that this Court reserve ruling on the Dilworth Retention Application until this Court adjudicates the Motion to Dismiss D.I. 46.

## JURISDICTION

4.  Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Objection.

5.     The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

6.     Under 28 U.S.C. § 586(a)(3)(1), the U.S. Trustee is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications."

7.     Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the issues raised in this Objection.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

*Procedural History*

8.     On February 24, 2021 (the "Petition Date"), Stream TV Networks, Inc. (the "Debtor," or the "Company") filed a voluntary petition for relief under chapter 11 of the Code.

3

9. On February 25, 2021, the Debtor filed the Dilworth Retention Application. *See* D.I. 15.

10. On March 1, 2021, the Debtor filed the Motion to Approve Debtor in Possession Financing ("DIP Financing Motion") at D.I. 30.

11. On March 12, 2021, the Debtor filed the *Declaration of Mathu Rajan In Support of First Day Motions* ("Rajan Declaration") at D.I. 51.

12. A creditors' meeting under section 341 of the Code is scheduled for March 31, 2021 at 1:00 p.m.

*Debtor's History and Formation of VTI*

13. The Debtor was founded in 2009, and as of the date hereof, has never generated revenue. *See* D.I. 30 at ¶ 1. It has no employees. As of the Petition Date, the Debtor's sole board member and Chief Executive Officer ("CEO") is Mathu Rajan ("Mr. Rajan"). Mr. Rajan directly and indirectly owns about nine percent of the Debtor's equity. *See* Corporate Ownership Statement (Rule 7007.1) at D.I. 5.

14. Although the Debtor has no operations, it filed the DIP Financing Motion requesting authority to borrow up to $1 million in an unsecured, administrative priority loan from Visual Technology Innovations, Inc ("VTI"). *See* DIP Financing Motion D.I. 30. Mr. Rajan formed VTI a few months prior to the filing of this case, and through March 12, 2021, Mr. Rajan served as sole officer and director. *See* Rajan Declaration at ¶ 20 b. Within the last week, VTI has gained at least five more directors, half of which were appointed by Mr. Rajan. *See* VTI's Response in Support of DIP Financing Motion at D.I. 67.[1] Mr. Rajan "presently owns or controls approximately

---

[1] It is not clear to the U.S. Trustee whether Mr. Rajan has resigned from VTI's board.

11.5% of VTI but anticipates that amount will exceed 98%." *See* Rajan Declaration at para. 20 b. VTI may merge with the Debtor. *See id*.

15. The Debtor expects to launch a technology that "allows TV and tablet manufacturers to convert two dimensional devices into three dimensional ("3D") without the need for viewing glasses." *See* D.I. 30 at ¶ 7.

16. A visit to "streamtvnetworks.com" reveals a message that says

> Stream TV Networks, along with all subsidiaries and all associated assets, has been acquired by SeeCubic, Inc. The groundbreaking glasses-free 3D technology, UltraD, was developed by SeeCubic BV in the Netherlands and is now the cornerstone of a new & innovative international company, SeeCubic, Inc.
>
> A new and invigorated management team has been created with industry leading senior executives who have merged their vision with the technology from the core engineers who developed this revolutionary product.

*See* Home Page, www.streamtvnetworks.com (last visited March 18, 2021 at 10:37 a.m.)

17. SeeCubic and the Debtor have a significant pre-petition litigation history.

*SeeCubic Dispute*

18. On December 8, 2020, the Chancery Court of the State of Delaware issued a non-final preliminary injunction opinion and order confirming the validity of a May 2020 agreement ("Omnibus Agreement") between the Debtor, the Debtor's senior secured creditor, SLS Holdings VI, LLC ("SLS"), the Debtor's junior secured creditor, Hawk Investments Holdings Limited ("Hawk"), and fifty-two of the Debtor's stockholders ("Equity Investors"). *See Stream TV Networks, Inc. v. SeeCubic, Inc*., C.A. No. 2020-0766-JTL, Opinion and Order Granting Preliminary Injunction, D.I. 213, 124 (Del. Ch. Dec. 8, 2020) (respectively, "Chancery Court Opinion" and "Chancery Court Order").

19. Importantly, the Chancery Court held that, in the Omnibus Agreement, the Debtor agreed to transfer all of its assets to SeeCubic (newly created entity controlled by secured creditors holding liens on all of the Debtor's assets). *Id*. In return, the secured creditors agreed to release their claims against the Debtor once the transfer of assets was complete. *Id*.[2]

20. The impetus for the execution of the Omnibus Agreement appears to have been the Debtor's financial struggles. By May 2020, the Debtor "had defaulted on more than $50 million in debt to its secured creditors, owed another $16 million to trade creditors, and could not pay the bills as they came due." *See id.* The Debtor had also missed payroll at the beginning of 2020 and furloughed some employees. *See id.*

21. The Chancery Court Order preliminarily enjoined Mr. Rajan and the Debtor from taking any action to interfere with the Omnibus Agreement, including, but not limited to disputing the validity of the Omnibus Agreement and asserting ownership rights to any of the assets. *See* Chancery Court Order at ¶ 1 (a)-(g).

22. Included within the Chancery Court Opinion are many "facts as they appear reasonably likely to be found after trial, based on the current record." *See* Chancery Court Opinion slip. op. at 5. Among those facts are: (i) several outside directors have resigned from their roles between 2015 and 2020; (ii) throughout its existence, the Debtor's "corporate governance practices have been virtually nonexistent"; (iii) the Debtor "has never held annual meeting of the

---

[2] Additionally, the Chancery Court noted:

> If [the Debtor's] secured creditors had foreclosed on [the Debtor's] assets, then [the Debtor] and its stockholders would have been left with nothing. Instead, the Omnibus Agreement provided [the Debtor's] minority investors with the right to swap their shares in [the Debtor] for shares in SeeCubic. The Omnibus Agreement also provided for the issuance of one million shares in SeeCubic to [the Debtor].

*Id*.

stockholders and has not kept regular minutes of Board meetings"; and (iv) the Debtor "has officers and employees, but their roles are not well defined." *See id*. at 6.

23. As of February 25, 2021, the competing motions appear to have been almost fully briefed by all parties and awaiting final adjudication by the Chancery Court.

24. SeeCubic and SLS filed the *Motion Of SeeCubic, Inc. And SLS Holdings VI, LLC For An Order Dismissing Debtor's Chapter 11 Case* ("Motion to Dismiss") D.I. 46 on March 12, 2021.

*Dilworth Retention Application*

25. Shortly after the Petition Date, the Debtor filed the Dilworth Retention Application, requesting authority under section 327 of the Code to retain Dilworth Paxson LLP ("Dilworth") as Debtor's counsel. To support the Dilworth Retention Application, Dilworth filed two Rule 2014 declarations: (1) McMichael Declaration at D.I. 15-1; and (2) the Supplemental McMichael Declaration at D.I. 60 (together, the "McMichael Declarations").

26. The McMichael Declarations disclose that Philip M. Darivoff owns Vayikra Capital LLC ("Vayikra"), which is an investor and creditor of the Debtor. McMichael Declaration at ¶5; *accord* Top 20 List D.I. 3. Mr. Darivoff and Betsy Darivoff paid Dilworth's initial retainer in January of 2020. *See* McMichael Declarations.

27. The McMichael Declarations reveal a total of seven payments from January 2020 through the filing hereof to Dilworth aggregating $300,000, none of which the Debtor made. *See, generally,* McMichael Declarations. VTI paid most of these payments with contributions of equity it received from investors with connections to the Debtor. *See id*. The McMichael Declarations do

not disclose whether an independent board of directors approved the payments to Dilworth, and it is unclear whether independent counsel represented VTI[3] when Dilworth received these payments.

28. Dilworth resumed providing services to the Debtor in November 2020—a month before entry of the Chancery Court Order. Dilworth invoiced the Debtor twice but did not begin receiving payments for its services until Mr. Rajan formed VTI for the apparent purpose of funding this bankruptcy case and funding Dilworth's payments. From January 20, 2021 to the present, various parties, many of which hold equity in the Debtor, provided equity infusions to VTI, and the proceeds were in turn used to pay Dilworth's fees in this case.

29. The following is a chart illustrating such payments and the application of such payments to pre-petition fees and expenses incurred by the Debtor.

| Date | Amount of Payment to Dilworth | Dilworth Invoice Amount (dates covered) | Balance Due to Dilworth/Retainer Amount Remaining | Entity Making Payment to Dilworth | Explanation of how Entity Derived Funds for Payment to Dilworth |
|---|---|---|---|---|---|
| **January 28, 2020** | $50,000 | | | Mr. Darivoff & Betsy Darivoff (Mr. Darivoff owns Vayikra which is investor and unsecured creditor of Debtor) | None |
| **April 30, 2020** | | ($43,975.75) (1/28/20-04/30/20) | $6,024.25 retainer remaining | | |
| **December 13, 2020** | | ($5,012.50) (11/1/2020-11/30/20) | $1,011.75 retainer remaining | | |
| **January 13, 2021** | | ($3,621.75) (12/1/20-12/31/20) | ($2,609.25) balance due | | |
| **January 20, 2021** | $25,000 | | $22,390.75 retainer remaining | MarJonJac, LLC (company owned by John and Mark Savarese, which are current equity holders in Debtor), **but the true intended source of payment was** Visual Technologies, Inc. ("VTI") (founded in January 2021 | Equity investment of $25,000 by MarJonJac LLC in VTI |

---

[3] The U.S. Trustee understands that as of the filing hereof VTI is represented by Armstrong Teasdale LLP. *See* D.I. 66.

8

| Date | Amount | | Retainer Balance | Source | Notes |
|---|---|---|---|---|---|
| | | | | and controlled by Mr. Rajan; he presently owns 11.5% of VTI but anticipates that amount will exceed 98% and VTI might merge with the Debtor). MarJonJac, LLC made the payment because VTI did not yet have a bank account to fund the payment | |
| **February 9, 2021** | $25,000 | | $47,390.75 retainer remaining | MediaTainment, Inc. ("MediaTainment") (founded in 2009 and controlled by Mr. Rajan; appears to have held Debtor's equity entirely) | Intercompany transfer from VTI, which in turn received money from Patrick Allen (currently holds equity in Debtor) through his company Edinburgh Capital Management Ltd. |
| **February 19, 2021** | $25,000 | | $72,390.75 retainer remaining | VTI | Equity investment of an additional $25,000 by MarJonJac in VTI |
| **February 22, 2021** | $25,000 | | | MFSav LLC (company owned by John and Mark Savarese) **but the true intended source of payment was** VTI | Equity investment of $25,000 by MFSav in VTI |
| **February 23, 2021** | $50,000 | | | VTI | Equity investment of $50,000 by David P. Lamoreaux, MP Tavill Revocable Trust, James Marussich, Patrick Allen, Adolfo Carmona and Walter Avrili in VTI |
| **Petition Date (February 24, 2021)** | | | ($42,472) balance due but written off | | |
| **March 9, 2021** | $100,000 | | | VTI | Equity investment of $1 million by Mark Bunce in VTI |

See McMichael Declaration at ¶1-21; *see, generally* Supplemental McMichael Declaration.

## ARGUMENT

**I.   The McMichael Declarations Provide Insufficient Disclosures Under Federal Rule of Bankruptcy Procedure 2014, And This Insufficiency Makes It Impossible To Determine Whether the Debtor Has Met the Standard For Retention Under Section 327(a).**

30.   Federal Rule of Bankruptcy Procedure 2014(a) provides that an application for employment of professional persons "shall state the specific facts showing the necessity for the employment . . . any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, the creditors, [and] any other party in interest[.]" Fed. R. Bankr. Proc. 2014(a).

31.   Disclosure "'goes to the heart of the integrity of the bankruptcy system.'" *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (quoting *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988)). "[C]omplete and candid disclosure . . . is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment under section 327(a)[.]" *See eToys*, 331 B.R. at 189.

32.   Section 327(a) of the Code permits the retention of professional persons "that do not hold or represent an interest adverse to the estate . . . and that are disinterested persons." Section 101(14)(C) provides, in pertinent part, that a disinterested person "does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason."

33.   In evaluating whether a professional "holds or represents an interest adverse to the interest of the estate with respect to the matter on which such professional is employed," it is clear that actual conflicts of interest are *per se* disqualifying. In addition, while potential conflicts do not disqualify a professional *per se*, they are disfavored. *See In re Marvel Entertainment Group,*

10

*Inc.*, 140 F.3d 463, 476 (3d Cir. 1998) (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991)).

      34.    To determine whether proposed debtor's counsel's payments from insiders creates an actual or potential conflict of interest or whether they entail a lack of disinterestedness, some courts have adopted a five-part test, which includes the following elements:

> 1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;
>
> (2) the debtor must expressly consent to the arrangement;
>
> (3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;
>
> (4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; [and]
>
> (5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*Bergrin v. Eerie World Entm't, LLC*, 03 CIV. 4501 (SAS), 2003 WL 22861948, at *4 (S.D.N.Y. Dec. 2, 2003) (citing *In re Lotus Props. LP*, 200 B.R. 388, 393 (Bankr.C.D.Cal.1996) (quoting *In re Kelton*, 109 B.R. 641, 658 (Bankr.D.Vt.1989))).

      35.    Here, the McMichael Declarations do not provide sufficient disclosure under Rule 2014 about Dilworth's connection to VTI, which is the entity funding its payments. Mr. Rajan formed VTI *after* the Debtor engaged Dilworth, and the McMichael Declarations do not disclose whether Dilworth was involved in VTI's formation. The McMichael Declarations do not include Dilworth's engagement letters, and they do not disclose whether separate, independent legal counsel represented VTI when it provided these payments to Dilworth nor whether a board of independent directors approved these payments. The McMichael declarations only provide

varying disclosures about its connections or lack thereof to the parties that provided equity to VTI to facilitate Dilworth's payments.

36.     The payments to Dilworth from VTI suggest that Dilworth may not be sufficiently independent from VTI's influence, and they create concerns about Dilworth's ability to represent the estate and its creditors with undivided loyalty.  VTI's owners are ultimately entities or individuals that hold equity in the Debtor (or are associated with entities holding equity).  Dilworth, however, has a fiduciary obligation to this estate and all of its stakeholders, not just its equity holders.

37.     Therefore, the U.S. Trustee submits that the Dilworth Retention Application should be denied because the Debtor has not carried its burden under section 327(a) of the Code and Rule 2014.

## **REQUEST TO ADJOURN MARCH 22, 2021 HEARING**

38.     Alternatively, the U.S. Trustee respectfully submits that this Court should reserve ruling on the Dilworth Retention Application until this Court adjudicates the Motion to Dismiss because the Motion to Dismiss implicates whether the filing of the petition in this case was in bad faith and serves a valid bankruptcy purpose.

## **RESERVATION OF RIGHTS**

39.     The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee requests that this Court deny the Dilworth Retention Application to the extent set forth above, or in the alternative, adjourn the hearing on the Dilworth Retention Application until this Court adjudicates the Motion to Dismiss.

Dated: March 18, 2021.
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By: /s/ *Rosa Sierra*
    Rosa Sierra
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox35
    Wilmington, Delaware 19801
    Phone: (302) 573-6492
    Fax:    (302) 573-6497
Email: rosa.sierra@usdoj.gov

## CERTIFICATE OF SERVICE

I, Rosa Sierra, hereby attest that on March 18, 2021, I caused to be served a copy of this Objection to Dilworth's Retention Application by electronic service on the registered parties via the Court's CM/ECF system and upon the following parties:

**Proposed Debtor's Counsel**
DILWORTH PAXSON LLP
Martin J. Weis
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19801
mweis@dilworthlaw.com

Lawrence G. McMichael
Anne M. Aaronson
Yonit A. Caplow
1500 Market St., Suite 3500E
Philadelphia, PA 19102
lmcmichael@dilworthlaw.com
aaaronson@dilworthlaw.com
ycaplow@dilworthlaw.com

*Counsel for SLS*
ROBINSON COLE
Davis Lee Wright (No. 4324)
James F. Lathrop (No. 6492)
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Telephone: (302) 516-1700
dwright@rc.com
jlathrop@rc.com

QUARLES & BRADY LLP
Brittany S. Ogden
33 East Main Street Suite 900
Madison, Wisconsin 53703
Telephone: (608) 251-5000
Brandon M. Krajewski
411 East Wisconsin Avenue Suite 2400
Milwaukee, Wisconsin 53202
Telephone: (414) 277-5000
Alissa Brice Castañeda
Gabriel M. Hartsell

One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 229-5200
brittany.ogden@quarles.com
brandon.krajewski@quarles.com
alissa.castaneda@quarles.com
gabriel.hartsell@quarles.com

*Counsel for SeeCubic*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Joseph O. Larkin
Jenness E. Parker
Jason M. Liberi
920 N. King Street, One Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Eben P. Colby
Marley Ann Brumme
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Telephone: (617) 573-4800
joseph.larkin@skadden.com
jenness.parker@skadden.com
jason.liberi@skadden.com
eben.colby@skadden.com
marley.brumme@skadden.com

*Counsel for VTI*
ARMSTRONG TEASDALE LLP
Rafael X. Zahralddin-Aravena
Jonathan M. Stemerman
300 Delaware Ave., Suite 210
Wilmington, DE 19801
Telephone: 302-824-7089
rzahralddin@atllp.com
jstemerman@atllp.com

**Counsel for Iinuma Gauge Mfg. Co., Ltd.**
BAYARD
Daniel N. Brogan
dbrogan@bayardlaw.com
600 North King Street, Suite 400
P.O. Box 25130 Wilmington, DE 19899

*Counsel for IMG Media, Ltd.; Trans World International LLC; and other affiliates of Endeavor Operating Company, LLC*
Jennifer R. Hoover, Esq.
John C. Gentile, Esq.
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
1313 N. Market St., Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
jhoover@beneschlaw.com
jgentile@beneschlaw.com

                                                                 *\s\Rosa Sierra, Esq*.
                                                                    Rosa Sierra