<pre>
 1                  UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2
                                      .  Chapter 11
 3  IN RE:                            .
                                      .  Case No. 21-10433 (KBO)
 4  STREAM TV NETWORKS, INC.,         .
                                      .
 5                                    .  Courtroom No. 3
                                      .  824 N. Market Street
 6                                    .  Wilmington, Delaware 19801
                                      .
 7                         Debtors.   .  March 22, 2021
 8  . . . . . . . . . . . . . . . . .    10:00 A.M.

 9          TRANSCRIPT OF TELEPHONIC FIRST DAY HEARING
                 BEFORE THE HONORABLE KAREN B. OWENS
10                  UNITED STATES BANKRUPTCY JUDGE

11  TELEPHONIC APPEARANCES:

12  For the Debtors:          Martin J. Weis, Esquire
                              DILWORTH PAXSONLLP
13                            704 N. King Street
                              P.O. Box 1031
14                            Wilmington, DE 19899-1031

15                            - and -

16                            Lawrence G. McMichael, Esquire
17                            Anne M. Aaronson, Esquire
                              Yonit A. Caplow, Esquire
18                            1500 Market Street, Suite 3500E
                              Philadelphia, PA 19102
19

20

21  Audio Operator:           Al Lugano

22  Transcription Company:    Reliable
                              1007 N. Orange Street
23                            Wilmington, Delaware 19801
                              (302)654-8080
24                            Email:  gmatthews@reliable-co.com
25  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
</pre>

```
 1   TELEPHONIC APPEARANCES (Continued):

 2   For the U.S. Trustee:      Rosa Sierra, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
 3                              OFFICE OF THE UNITED STATES TRUSTEE
                                844 King Street, Suite 2207
 4                              Lockbox 35
                                Wilmington, Delaware 19801
 5
     For SeeCubic:             Jason Liberi, Esquire
 6                              SKADDEN, ARPS, SLTATE, MEAGHER
                                  & FLOM LLP
 7                              One Rodney Square
                                920 N. King Street
 8                              Wilmington, Delaware 19801

 9   For SLS Holding:          Jason Lee Wright, Esquire
                                ROBINSON & COLE LLP
10                              1201 N. Market Street, Suite 1406
                                Wilmington, Delaware 19801
11
12                              - and -

13                              Brittany Ogden, Esquire
                                QUARLES & BRADY LLP
14                              33 East Main Street, Suite 900
                                Madison, Wisconsin 53703
15
     For Visual Tech:          Jonathan Stemerman, Esquire
16                              ARMSTRONG TEASDALE LLP
                                300 Delaware Avenue, Suite 210
17                              Wilmington, Delaware 19801

18

19

20

21

22

23

24

25
```

FIRST DAY MATTER GOING FORWARD:

Motion to Dismiss

**Ruling:   28**

1      (Proceedings commence at 10:01 a.m.)

2      THE COURT:  Good morning, parties.  This is Judge

3 Owens.  We're gathered today on Zoom for the first day

4 hearing in Stream TV Networks.

5      Nice to see you all.  Hopefully you can hear me

6 okay and if you can't hear me you can let me know that at the

7 appropriate time.

8      Why don't I turn the podium over to counsel for

9 the debtors and we can begin.

10      MR. WEIS:  Good morning, Your Honor.  Martin Weis

11 on behalf of Stream TV Networks, the debtor.

12      Can Your Honor hear me okay?

13      THE COURT:  I can.  Nice to see you.

14      MR. WEIS:  Nice to see you too, Your Honor.

15      With me today, Your Honor, is my partner, Lawrence

16 McMichael.  We are here today on behalf of Stream TV on the

17 first day hearing in this matter.

18      Before the court there are three motions pending.

19 In terms of today's proceeding and subject to the court's

20 approval the way we would propose to proceed would be to have

21 Mr. McMichael make a brief opening statement about the case

22 and then I would follow that up with dealing with the three

23 motions; first the retention of the Dilworth Firm, second the

24 insurance motion, and then third the DIP funding.

25      THE COURT:  Okay.  That's fine, but why don't I

1   just address the elephant in the room which is the matter --

2   the threshold matter that's before the court which is whether

3   it's appropriate for any of these motions to go forward in

4   light of the pending motion to dismiss.

5          So I think we need to -- I'm happy to entertain

6   opening statements by Mr. McMichael, but I think we need to

7   address that threshold issue before we go forward.  I

8   understand the parties sent me a slew of exhibits prior to

9   the commencement of this hearing.  I assume that they go to

10  the meat of the motions, but I think we need to address the

11  threshold issue first.  And I don't want to waste time

12  putting witnesses on the stand if we're not going to go

13  forward with the motions.

14         So if it's acceptable to the parties, I understand

15  that everyone has their presentations mapped out, but, Mr.

16  McMichael, I am happy to hear from you, but then I want to

17  hear from the parties regarding whether the first day

18  hearings should go forward.

19         MR. WEIS:  Your Honor, then we will defer to Mr.

20  McMichael at this point.

21         THE COURT:  Okay.  Good morning, Mr. McMichael.

22         MR. MCMICHAEL:  Good morning, Your Honor.

23         I will address the elephant in the room first and

24  that is that, as you will see in a few minutes, I am going to

25  walk you through what I think are the major issues that the

1   court will have to confront in this case, and there are a lot

2   of them.   There is a complicated fact pattern that precedes

3   the court being here.

4           Motions to dismiss get filed in cases all the

5   time. I mean it's not unusual to have a motion to dismiss

6   bankruptcy cases.  The law is not that the case comes to a

7   grinding halt because someone files a motion to dismiss.

8   Among other things, the debtor needs counsel. If objections

9   to our retention are sustained the debtor will need time

10  replace us, and that should be ruled upon and not deferred.

11          The same is true with getting insurance in place

12  and getting a limited amount of DIP financing in place so

13  that the debtor an sustain basic operations and not have to,

14  you know, stay out of business during the period of time that

15  the motion to dismiss is pending.

16          I would also note that having read the motion to

17  dismiss and having seen the exhibits that people have

18  submitted today on three very, what I think are, straight

19  forward and benign matters, I think the court can assume that

20  this will take a while to get to a motion to dismiss.  We may

21  not finish in one day.  It could go on for a few days by the

22  time we get all the testimony and all the exhibits.  During

23  that time it is important that the debtor continue to make

24  progress and that the debtor have counsel.

25          So I would respectfully request that we continue

1  today's hearing as scheduled, deal with these preliminary

2  motions.  They are not at all prejudicial to the motion to

3  dismiss.  In fact, ruling on debtor's counsel is very

4  important to the motion to dismiss so that we know who is

5  doing the work to prepare (indiscernible).

6          So with that point let me talk a little bit about

7  the case.  Stream TV has some very interesting technologies,

8  and there are multiple technologies, it's not just one.

9  These technologies all involve being able to view on a video

10  screen just like the court is viewing today and like we're

11  all viewing, but in 3D without any filters, without any

12  glasses.  That technology I will describe in a little bit

13  more detail in a minute.  There are, as I said, several

14  versions of the technology that the debtor has and is using

15  in different applications with different customers.

16          The dispute that we have, which casts a haul over

17  the debtors operations, is a dispute with its senior secured

18  creditor, an insider.  The senior secured creditor is a

19  former chief financial officer and former director of the

20  debtor.  It controls an entity called SLS which is the first

21  lien creditor.  I will get to that dispute in a minute.

22          Let's talk about the technology first because that

23  is more entertaining.  Normally I would have an example of it

24  in a courtroom and be able to demonstrate how it works so

25  that the court can see for itself what this technology looks

1  like.  Because of our remote operations we're unable to do

2  that.  So my oral description will have to suffice for the

3  moment, and I won't take too long or bore the court with

4  technical details which I, myself, do not understand.  So

5  this is a very high level description.

6  Basically, what this technology does -- and the

7  debtor has been working on this for about ten years, this is

8  an evolving and developing project.  The technology does

9  three things.

10  First, it bends light from a regular video monitor

11  to (indiscernible) 140 degree display so that everyone

12  looking at the monitor in a room sees it in what appears to

13  be three dimensions.  That is powered by an algorithm which

14  is, basically, a complex computer program that drives the

15  image.  The algorithm is, and this is a unique part of the

16  technology, adjustable so that you can adjust the amount of

17  3D that you are looking at the same way you would adjust the

18  volume on your television.  You can have more or less 3D.

19  It's very straight forward and very simple to adjust.

20  The other thing that some of these technologies do

21  is that they convert current two dimensional products and

22  former three dimensional products that you would need glasses

23  to see.  They can take those and convert them into three

24  dimensional glasses for you and experiences.  So the

25  technology does each of those three things.  The result of it

1 is it's a very comfortable way of viewing three dimensional

2 activity on a flat video screen.

3       This has tremendously broad applications.  The

4 applications are in all types of video displays for

5 advertising, for gaming, and there is a lot of interest in

6 it.  So that is the technology.

7       I think if the court wants to dive a little deeper

8 the way to do that is to read Mr. Robertson's declaration

9 because he sets it forth in some more detail then I can do in

10 a couple minutes that I have to brief the court.

11       So let's talk about the dispute.  From the

12 debtor's perspective we are dealing with a hostile first lien

13 creditor.  As I said initially, it has a first lien, it is an

14 inside creditor, and it is owed about -- well, it's owed

15 exactly $6 million in principal amount.  With accrued

16 interest it is more than that today.  In the grand scheme of

17 this case it's not that big of an amount.

18       There is a second lien creditor called Hawk.  SLS

19 is the first lien creditor.  The second lien creditor is

20 Hawk, as in the bird.  It is an investment -- it's a family

21 investment firm based in Guernsey.  It has a much larger

22 position in the company, somewhere in the range of $100

23 million.

24       The principal amount of both of these secured

25 claims is $75.6 million.  That is the principal.  I am not --

1 accrued interest can be a little complicated and there is

2 interest on both of them, but the principal amount of $75.6

3 million.  The claims are secured by a pledge of assets by the

4 debtor.  And by March of last year, March of 2020 the debtor

5 had defaulted on those obligations.  That set into motion a

6 series of events which brings us to this court.

7          The first thing that happened, of course, is that

8 the senior secured creditor sued to enforce its rights.  Then

9 through a series of corporate machinations an agreement was

10 entered into by certain members of the board of Stream, and

11 the secured creditors, which purported to turn over the

12 assets of Stream to the creditors.

13          There was litigation over that, that agreement was

14 disputed.  That litigation was resolved adversely to the

15 debtor on a preliminary injunction basis.  (Indiscernible)

16 adjudication.  There is a preliminary injunction entered by

17 the State Court, Delaware Chancery Court, enjoining the

18 debtor from interfering with the rights of the secured

19 creditors to take possession of their collateral.

20          Now the agreement, which the Chancery Court found

21 enforceable and enforced to the point that it awarded a

22 preliminary injunction to the creditors, that agreement today

23 remains executory.  Assets have not been fully delivered.

24 Some assets may have been taken by the secured creditors, but

25 there are lots of assets still in the debtor's possession and

1  control. Most importantly, the agreement provides for the

2  forgiveness of debt upon the delivery of the assets; and, of

3  course, the debt has not been forgiven and there is a pending

4  case in the Delaware Superior Court that remains pending

5  today enforcing the indebtedness.

6         As an executory contract one of the issues that

7  this case will involve is the debtor's intention to reject

8  it. That will be its own proceeding which we will deal with

9  in due course.

10        Another significant issue that the court will

11  confront here is the ownership of the debtor's principal

12  subsidiary, a company called Technovative Media. There is a

13  dispute as to who actually owns and controls that subsidiary

14  at this point. We have looked at the way in which it was

15  allegedly transferred to the secured creditors and we do not

16  believe that it complies with the basic requirements of

17  Article VIII because the shares of the subsidiary are

18  certificated. There is a certificate and Article VIII

19  requires delivery in order to effectuate a transfer.

20        Again, this is not an issue for today. This is

21  just giving the court a preview of some of the complications

22  that the court will face going forward. Whether the --

23        THE COURT: Mr. McMichael, can I just interrupt

24  you because I've read all the documents that have been

25  submitted to date including the Chancery Court's thorough

1   opinion and order.  Are we treading in this territory right

2   here that is in violation of that order by stating purported

3   ownership claims of various assets and the debtor's intention

4   to take control over the omnibus agreement and the debtor's

5   intention to dispute an ownership of various assets that were

6   not turned over to the secured lenders in connection with the

7   omnibus agreement.

8            I'd like us all to be abundantly careful about

9   what we say on the record today because I guess I should just

10  make it clear, yes, it was a State Court order and, yes, it's

11  a preliminary injunction, but it is an order of the State

12  Court which I am going to respect.  So I just want to be very

13  clear I'm not in the business of reconsidering a stayed order

14  that is currently in place and governs the parties here.

15           So I just want to be very careful of what we are

16  saying on the record today.  I am sure you are mindful of

17  what the debtor is permitted to do and not do in light of

18  that order, but I think we're treading into some territory

19  here that seems to be contradictory to that order that is in

20  place.  I am just cautioning you.

21           So I didn't mean to interrupt your presentation

22  today.  And you can continue on with it, but I just want you

23  to be aware that I have read all the papers and I am

24  abundantly aware of what the court said and what the disputes

25  are.

1          MR. MCMICHAEL:  I don't intend to spend a lot of

2     time on it, Your Honor.  I'm just giving you a big overview.

3          By the way, I appreciate the interruption because,

4     actually, it's an important issue and it is something we're

5     keenly aware of.

6          I note two things:

7          One, the debtor is not attempting to "take

8     control" over anything.  The debtor plans to reject the

9     omnibus agreement which is a right the debtor has under the

10    bankruptcy code.  It's not a right that the State Court can

11    take away from the debtor.

12         The second thing is with respect to the contest

13    over ownership of assets that is carved out by the order

14    entered by Vice Chancellor Laster.  If you read the order

15    that is entered the debtor is permitted to contest it in the

16    context of the litigation.  Now that litigation is stayed.

17         So I would think that carries over to this case.

18    The debtor would simply follow that order in this case in

19    terms of contesting the ownership of assets.  That is where

20    the debtor is today, you know, pending further order of this

21    court.

22         So in any event, we are looking to accomplish

23    three basic things through this Chapter 11.

24         One, to get a briefing spell from continued

25    litigation; a basic purpose of bankruptcy.

1       Two, to prevent a further erosion of the debtor's

2   assets through the automatic stay.

3       Three, to attract capital and confirm a plan that

4   results in a better outcome for all constituents then would

5   occur in State Court.  And I will explain a little bit about

6   that strategy now.

7       The debtor and this court are dealing with an

8   estate.  The estate embraces the interest of everybody who

9   has a claim against or an interest in the debtor, not just

10  the litigants in the State Court. The litigants in the State

11  Court are limited to the plaintiffs and the defendants.

12      The debtor has 102 unsecured creditors who are

13  owed $17.3 million.  Those interests are in no way accounted

14  for in the omnibus agreement.  The omnibus agreement is an

15  effort by secured creditors to realize on their collateral.

16  It does not protect the interest of other creditors.  It is

17  not intended to do that.

18      The principal path toward a better result is to

19  bring new capital into the debtor.  That effort is underway.

20  The principal of the debtor has gotten some new capital

21  already that has been funded and has a -- is working on it, I

22  should say.  I don't want to oversell it, but it has a plan

23  to raise a significant amount of capital, at least 30

24  million.

25      The purpose of that would be to fund the exit of

1   this case from a bankruptcy proceeding.  That amount would

2   pay-off in full SLS, so they would be gone.  It would result

3   in a pay down of some other debt and a recovery for unsecured

4   creditors in some amount along with notes and securities.  It

5   would create an outcome that benefits everybody unlike what

6   would happen in a typical State Court foreclosure which is,

7   essentially, what is going on outside of this courtroom.  It

8   is an effort by senior secured creditors to take the

9   collateral for themselves and leave others holding nothing.

10          So that is where we are today and what we are

11  trying to accomplish.  With that, unless the court has other

12  questions, I will stop talking and turn the matter back over

13  to Mr. Weis.

14          THE COURT:  Okay.  Thank you.

15          I have no questions and that was very helpful to

16  understand the debtor's positions.

17          Mr. Weis, I will turn the podium over to you.

18          MR. WEIS:  Thank you, Your Honor.

19          I would propose, Your Honor, that we proceed with

20  the retention application and the objections thereto if that

21  is --

22          THE COURT:  I'd actually like to -- I'd actually

23  disagree.  I want to hear from the other parties in interest

24  on the threshold matter of whether any of the motions should

25  go forward. So I would like some introductory remarks from

1  the various parties.  I know the U.S. Trustee has filed an

2  objection, SLS, and SeeCubic have filed objections as well.

3  So I'd like to hear from those parties.

4          MR. WEIS:  Certainly, Your Honor.

5          THE COURT:  Thank you.

6          MS. SIERRA:  Good morning, Your Honor.  Rosa

7  Sierra on behalf of the United States Trustee.

8          First, I just want to make sure everyone can hear

9  me.

10          THE COURT:  Loud and clear.

11          MS. SIERRA:  Okay.  Perfect.

12          Sorry, I'm having some technical difficulties.  So

13  my camera is under the screen, so I may not be looking the

14  right way at all times.  So I apologize for that, but I am

15  viewing everyone.

16          Your Honor, with respect to whether the matters on

17  the agenda today should proceed the U.S. Trustee submits that

18  they should not and that the court reserve ruling on these

19  motions until the court decides the motion to dismiss filed

20  the secured parties in this case, the SeeCubic entity and

21  SLS.

22          Your Honor, in our view the motion to dismiss

23  presents gating and threshold issues that this court will

24  necessarily have to decide such as whether there are assets

25  in this estate that could underpin a reorganization and

1 whether this bankruptcy filing serves a valid bankruptcy

2 purpose.

3 　　　　I understood Mr. McMichael to say that the law

4 isn't that if there is a motion to dismiss that the case

5 comes to a grinding halt and no other matters can proceed.

6 Where the motion to dismiss necessarily implicates whether

7 there are even assets in the estate that can serve and

8 underpin a reorganization the case should necessarily come to

9 a stop until both issues are decided because, otherwise, what

10 is going to happen today is that parties are going to begin

11 submitting evidence, as you saw from the numerous filings and

12 submissions to Your Honor, that go to these issues.  It would

13 be a waste of judicial economy and resources to litigate

14 these issues today when they will necessarily be the subject

15 of a thorough hearing on the motion to dismiss on April 15th.

16 　　　　To underscore the issue about prejudice there is

17 no prejudice here, Your Honor. It is undisputed that there

18 are no operations, there are no employees, there, you know,

19 are no immediate fulfillments of contracts that need to be

20 made such that the DIP financing is necessary today and we

21 couldn't wait for this motion to dismiss to be decided.

22 　　　　To the point about retention of counsel, Your

23 Honor, I would hope that the Dilworth Paxson Firm took on

24 this engagement understanding the risks involved with

25 receiving party from a non-debtor insider controlled entity

1 to fund its legal services, and that the debtor also

2 understood that risk in the scrutiny that that would entail.

3        Ultimately, even the motion to dismiss if it turns

4 out that this court decides that the case does not serve a

5 valid purpose, that there are no assets in this estate to

6 reorganize then potentially even hiring counsel at this

7 juncture is unnecessary.

8        So, Your Honor, for those reasons the U.S. Trustee

9 submits that all of these motions should be adjourned until

10 the court decides the motion to dismiss.

11        THE COURT:  Okay.  Thank you very much.

12        Is there anyone else that wishes to be heard in

13 connection with the threshold issue today?

14        MR. LIBERI:  Good morning, Your Honor.  Its Jason

15 Liberi at Skadden Arps for SeeCubic, Inc., one of the

16 objections and one of the co-movants on the pending motion to

17 dismiss.

18        Can you hear me okay?

19        THE COURT:  I can, Mr. Liberi.  Good morning.

20        MR. LIBERI:  Thank you.  Good morning, Your Honor.

21        First, I agree with the Office of the U.S.

22 Trustee, everything should be adjourned today.  Among the

23 comments that were made earlier retention applications aren't

24 usually first day hearing applications in any event.

25        With respect to insurance the debtor's motion,

1  itself, indicates insurance is going to be paid by somebody
2  other than the debtor.

3        You know, and most importantly I am glad Your
4  Honor raised the Chancery Court opinion and the preliminary
5  injunction order.  I don't want to go too far down this path,
6  but one of the gating issues here is this sort of bizarre
7  world that we're all working in.  The debtor has none of
8  these assets, the debtor owns none of these assets.
9  Transfers were made pursuant to the omnibus agreement months
10 ago in what was, effectively, as has been raised here, a
11 friendly foreclosure under an omnibus agreement, but was
12 approved by the independent directors of the board.

13        That is where we are and its jarring to see the
14 declarations, for instance, that have been submitted
15 purporting where the debtor purports to own these assets.  I
16 tend to agree with Your Honor whether or not they're direct
17 violations of the preliminary injunction order.  We will find
18 out, I'm sure, going forward.  But that is a gating issue
19 here.

20        Just to tee-up, as I understand and counsel for
21 the debtor can confirm this, as I understand what their plan
22 was for today there was a declaration on file on March 12th
23 from Mr. Rajan who, as I understand, is the CEO of the
24 debtor.  That is the only document on file as far as a
25 declaration goes until this past Friday after five p.m.

1  Friday after five p.m. another declaration was submitted for
2  a Mr. Robertson.

3       Now as I understand what the debtor had intended
4  to do today is not that Mr. Robertson's declaration is
5  supplemental or additional, it's actually a switch-a-roo.
6  Mr. Rajan is no longer contemplated to be testifying and Mr.
7  Robertson was going to, sort of, step into his place.

8       So among other reasons that the hearing today
9  ought to be adjourned until we can get through the motion to
10 dismiss matters are, again, all of the information that would
11 be subject to the testimony of the debtor's witness today is
12 brand new in the last forty-eight hours.  We think that just
13 further supports a continuation of what is going on here.

14      THE COURT:  Okay.  Thank you, Mr. Liberi.

15      For the record do you represent SLS as well or is
16 there another set of counsel that represents SLS?

17      MR. LIBERI:  Your Honor, we do not represent SLS.
18 I believe --

19      THE COURT:  Go ahead.

20      MR. WRIGHT:  Good morning, Your Honor.  This is
21 Davis Wright of Robinson & Cole.  I represent SLS Holdings
22 VI, LLC with my co-counsel.  My co-counsel, whose *pro hac* has
23 been ordered by Your Honor, appearing with today are Brittany
24 Ogden, Alissa Casteneda, and Gabriel Hartsell of Quarles &
25 Brady.

1           Your Honor, with your permission I would turn it

2    over to Ms. Ogden to make the opening remarks for SLS.

3           THE COURT:  Okay.  That would be fine.  Thank you.

4    Welcome everyone.

5           MR. WRIGHT:  Thank you.

6           THE COURT:  I apologize for putting you on the

7    spot.  I just knew there was two sets of different counsel

8    involved with the omnibus objection.  I just wanted to keep

9    everybody straight.

10           So, Ms. Ogden?

11           MS. OGDEN:  Good morning, Your Honor.  Thank you.

12           It is SLS's position that this matter and these

13   matters in the motion pending should be adjourned until the

14   motion to dismiss hearing is heard, and reserve on any

15   decision.

16           These matters -- I think the United States Trustee

17   and counsel for SeeCubic have already pointed out that this

18   is -- there is not a basis to move forward on this until the

19   motion to dismiss is heard.  I think it would be correct to

20   say that there is not a prejudice to the debtors to wait a

21   few more weeks to be heard on this.  And that these normal

22   first day motions aren't being heard until many weeks after

23   the filing of the debtor's petition as it is.

24           In that mind it would be our position that this

25   matter should be adjourned until the motion to dismiss is

1  heard.

2       THE COURT:  Okay.  Thank you very much.

3       Before I turn the podium back to debtor's counsel

4  is there anyone else that wishes to --

5       MR. STEMERMAN:  Thank you, Your Honor.

6       THE COURT:  I'm sorry.

7       MR. STEMERMAN:  Before we return to the debtor,

8  Your Honor, Jonathan Stemerman of Armstrong Teasdale on

9  behalf of the Visual Technology Innovations, Inc., who is the

10 proposed DIP lender in this case.

11      THE COURT:  Good morning.

12      MR. STEMERMAN:  With me today is my colleagues,

13 Raphael Zahralddin as well as John Sten.  Mr. Sten has been

14 admitted *pro hac vice* in this case.

15      Your Honor, I just wanted to point out as a

16 threshold matter is today with the DIP and these other

17 motions, especially the insurance motion, what we're talking

18 about is whether or not the debtor can use money from VTI on

19 an unsecured basis.  There is no prejudice to SeeCubic or SLS

20 if they are, indeed, secured lenders.  There is no prejudice

21 to anyone else.  VTI's money is going to be used and VTI, as

22 we said in our response, we are willing to extend that money

23 on an interim basis through the hearing on the motion to

24 dismiss.

25      We think it's very important that the debtor know

1  that it has counsel and that it has counsel that is available

2  to vigorously defend it on the motion to dismiss as well as

3  all the other things that are going on.  The motion to

4  dismiss, Your Honor, is not actually the only thing that is

5  going to happen between today and that motion to dismiss.

6  There's other motions that are pending.

7          There is a motion, as Your Honor may or may not be

8  aware, with respect to informing parties around the world

9  that the automatic stay is in place.  There is also a motion

10 to set a bar date, I believe, but things are going to be

11 taking place in between this hearing and the motion to

12 dismiss.  Again, all of the risk in terms of expending money

13 in order to fund that, all that risk is on VTI.

14         So we also think that, you know, preserving assets

15 is going to be important.  I will -- SLS and SeeCubic say

16 that all the assets have already been transferred, but if

17 that is the case then what is the purpose of the foreclosure

18 action that is currently pending in Superior Court and was

19 only stayed because of the bankruptcy.

20         So, I think there is, you know, very solid

21 evidence that there are assets still within the debtor.  And

22 because of that, Your Honor, I think that these motions

23 should go forward today.

24         Thank you.

25         THE COURT:  I want to be clear.  I think this is

1  more appropriate for debtor's counsel to ask a question -- to

2  answer this question and not VTI because you are debtor's

3  counsel, although there is a connection.

4      You say that there's assets in the estate, but

5  that is because the asset hadn't been transferred yet.  I

6  think there's two issues that I gleaned from the new

7  declaration which is you claim that there are certain assets

8  that weren't transferred or not governed under the scope of

9  the omnibus agreement.  Then there are assets that hadn't yet

10 been transferred.

11     So is it your position that you are going to use

12 those assets that had not yet been transferred, but are

13 subject to the omnibus agreement, you are going to exert

14 ownership over those assets and you are exerting ownership

15 over those assets currently?

16     MR. MCMICHAEL:  The assets that the debtor retains

17 legal title to and possession of are just the debtor's

18 assets.  They are whatever the debtor still owned on the date

19 of the petition is actually listed in Mr. Robertson's

20 declaration.

21     THE COURT:  I saw that.

22     MR. MCMICHAEL:  Those assets become property of

23 the estate under Section 541.  This court has exclusive

24 jurisdiction over them to the exclusion of a State Court.

25 And what happens with those assets will depend on how this

1  court determines to deal with them which is not an issue for

2  today.

3          THE COURT:  Okay.

4          MR. MCMICHAEL:  Those assets are, as a matter of

5  law, property of the debtor's estate because the debtor had

6  them at the time the petition was field.

7          THE COURT:  Well I take you as you are.  We can

8  debate this, but I take the debtor as you are on the date of

9  the petition date.  So those assets are subject to estate

10  court order.  I take you subject to that.

11          MR. MCMICHAEL:  Right.

12          THE COURT:  Okay.  I want to be abundantly clear.

13          MR. MCMICHAEL:  Yes.  We agree.

14          THE COURT:  Alright.  Why don't I turn the -- I

15  think it makes sense to hear -- you have heard the various

16  party's presentations.  I think I'd like to hear from the

17  debtors on why do we need to hear these motions today. I

18  think you previewed it and if you don't want to supplement --

19  you know, if there's nothing more to say I'd like to take a

20  break, five minute break, and then I will come back with my

21  decision.

22          What is the immediate need for any of these

23  motions to be heard today?

24          MR. MCMICHAEL:  Your Honor, I will address the

25  retention of counsel issue and then I think I will defer to

1  Mr. Weis on the other ones because he is more familiar with

2  those matters then I am.

3          The -- I agree with Mr. Liberi that retention of

4  counsel is not a first day motion, but this isn't the first

5  day.  This is being heard on ordinary notice.  This case has

6  been pending for well over a month.  Parties have objected.

7  We have met with the U.S. Trustee.  We have field two

8  declarations and the matter is scheduled to be heard and

9  should be decided.

10          Debtor having counsel is an important thing.  If

11  counsel is -- you know, look, I understand that there is an

12  issue when counsel is paid by someone other than the debtor.

13  It's not unusual, but there is an issue.  One has to proceed

14  cautiously and we do.  This is not the first time I have been

15  to this rodeo.  And, you know, disclosure is key.  We

16  disclosed everything.  Advice to the debtor is key which we

17  have given repeatedly about our role as debtor's counsel and

18  only debtor's counsel.  That matter should simply be decided.

19  There is no reason to defer it.

20          It has nothing to do with whether the motion to

21  dismiss is granted or not granted.  It doesn't prejudice

22  anyone, but enough time has passed and there is no reason to

23  delay it.  So that is where we are on the issue of retention

24  of counsel.  I'd like to have that decided today one way or

25  the other.  It's in fairness to the debtor.  If the debtor

1  needs to get new counsel it has an opportunity to do that

2  before the 15th.

3          THE COURT:  Okay.  Thank you very much.  I

4  appreciate that.

5          Mr. Weis, what about the other motions?

6          MR. WEIS:  Your Honor, Martin Weis on behalf of

7  Stream TV.

8          Your Honor, if Your Honor considers what is before

9  you in those two motions and goes -- the first motion is

10 whether the debtor can maintain insurance.  I mean if the

11 debtor can't maintain insurance under 1112 that is cause for

12 dismissal or a conversion.

13         I think that -- and then when we get to the

14 question of prejudice, and I'm really previewing my argument

15 down the road there with regard to that motion, is the ask

16 there is for less than $10,000.  So, you know, are we really

17 going to prejudice anyone by having the court enter an order

18 saying, yes, Your Honor -- excuse me, yes, Stream TV, you can

19 maintain your insurance.  So that is prejudice number one

20 which is its grounds for a conversion or dismissal if I don't

21 have insurance.

22         Second thing, DIP funding, there is no real need

23 to mothball this case at this time.  As Mr. Stemerman pointed

24 out the risk is on VTI if the court dismisses and VTI has

25 done things to fund the debtor, you know, and it should be --

1  there is no prejudice to the other creditor to do so.

2          In addition, as Mr. Robertson points out in his

3  declaration it is important for Stream to be taking action

4  with regard to its relationships with these various customer

5  contracting parties so that every time it -- if it's going to

6  lose a month in funding it's going to lose a month or perhaps

7  more in terms of production, getting the product through

8  production into market.  It's also going to cause a hiccup in

9  the confidence -- any confidence that these customers may

10  have, Stream's ability to perform.

11          THE COURT:  Okay.  I'd like to take a five minute

12  break.  So let's come back on, it will be a little bit more

13  than five minutes, but let's all reconvene at quarter of and

14  I'll let you know how we will proceed today.

15          Thank you.

16      (Recess taken at 10:38 a.m.)

17      (Proceedings resumed at 10:49 a.m.)

18          THE COURT:  Good morning, parties.  This is Judge

19  Owens.  We're back on the record.

20          Thank you for the short break so I could collect

21  my thoughts.

22          As I mentioned, prior to taking the bench today, I

23  had the opportunity to review all the documents that were

24  submitted by the various parties including Mr. Robertson's

25  declaration and the declaration of Mr. Rajan, the initial

1   declaration, and the Chancery Court's order.   Upon

2   reflection on those submissions as well as after listening to

3   the parties presentations today I am not going to and I'm not

4   comfortable hearing the three matters that are currently

5   scheduled for hearing today.

6           Given the issues raised in these proceedings, the

7   issues raised in connection with the pending motion to

8   dismiss as well as the proffered purposes of these

9   proceedings, which I mentioned or eluded to seem, at first

10  glance, to be completely contradictory to the Chancery

11  Court's order.  I understand the debtor has contrary

12  positions or has other positions that they will be presented

13  to me in connection with the motion to dismiss and I will

14  hear them at that time.

15          Moreover, I think there is an apparent lack of

16  immediate need for the relief requested.  There is no current

17  employees or operations. The insurance is currently being

18  paid for by a third-party by the debtor's own declaration or

19  submissions, and counsel filed its retention application, its

20  currently in place, its advocating for the debtor and as is

21  typical will be permitted to be retained *nunc pro tunc* to the

22  petition date if the retention is ultimately approved by this

23  court.

24          So right now I think it's important that we move

25  forward with the motion to dismiss and if the motion is

1  decided in favor of the debtor then I am here and I will hear

2  all the pending motions and what other motions have been

3  filed or will be filed in the interim period.

4  To that end I think the parties are going to need

5  to meet and confer and put their heads together on how long

6  they are going to need for the hearing on the motion to

7  dismiss because I currently think you are schedule for only a

8  few hours.  So I need you to meet and confer with the amount

9  of time that you are going to need, and you should reach out

10  to Ms. Lopez.  Let her know the estimated time that you need

11  and we will schedule either another day or you will be

12  scheduled in sequential days depending on what my hearing

13  schedule looks like, but it is definitely getting busier for

14  the month of April.

15  So please do that as soon as possible so I can get

16  you scheduled as soon as possible.  I think it is important

17  for that motion to dismiss to move forward as soon as

18  possible.  And so -- and then you can meet and confer

19  regarding the exhibit submission and the like. If you have

20  any questions regarding the procedures with respect to having

21  an evidentiary hearing before me on Zoom please reach out to

22  Ms. Lopez and we will answer any questions that the parties

23  may have or concerns.  I am happy to have a scheduling

24  conference ahead of time if you need me.

25  So just keep in contact with me as issues develop.

1  Like I said, I'm not going to hear the motions today and I

2  will be prepared to hear the motion to dismiss on the 15th I

3  think it's scheduled for or around that.

4          So with that I am going to adjourn today's

5  proceedings.  Again, reach out to my Chambers and schedule

6  the time for the motion to dismiss.

7          Thank you all very much.  Have a nice rest of your

8  day.

9      (A chorus of "Thank you, Your Honor")

10         THE COURT:  Consider the hearing adjourned.

11     (Proceedings concluded at 10:52 a.m.)

12

13

14                     CERTIFICATE

15

16     I certify that the foregoing is a correct transcript

17 from the electronic sound recording of the proceedings in the

18 above-entitled matter.

19
   /s/Mary Zajaczkowski                March 23, 2021
20 Mary Zajaczkowski, CET**D-531

21

22

23

24

25