## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Stream TV Networks, Inc. | Case No. 21-10433 (KBO) |
| | **Hearing Date: April 15, 2021 at 1:00 p.m. (ET)** |
| Debtor. | **Objection Deadline: April 8, 2021 at 4:00 p.m. (ET)** |

## UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING OR CONVERTING THIS CASE TO CHAPTER 7

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, respectfully moves the Court for an order dismissing this chapter 11 case pursuant to section 1112(b) of the United States Bankruptcy Code (the "Code") or converting this case to one under chapter 7, and states as follows:

## PRELIMINARY STATEMENT

1.      Displeased with a state court order enjoining the Debtor from asserting ownership over its assets, the Debtor appears to have filed this chapter 11 case solely to reap to the benefit of the automatic stay, to gain a tactical advantage, and to collaterally attack the state court order confirming the validity an agreement whereby the Debtor agreed to transfer all its assets to its secured creditors in lieu of foreclosure. The Debtor, therefore, filed this case in bad faith under section 1112(b) of the Code, warranting dismissal of this case.

2.      Alternatively, conversion to a chapter 7 proceeding may be appropriate in the event the Court determines that the Debtor retains ownership over significant assets which can be liquidated, and which are not otherwise contemplated in the asset transfer agreement.

## JURISDICTION

3.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion.

4.      The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co*., 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

5.      Under § 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the issues raised in this Motion.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### I.   Procedural History

6.      On February 24, 2021 (the "Petition Date"), Stream TV Networks, Inc. (the "Debtor," or the "Company") filed a voluntary petition for relief under chapter 11 of the Code.

7.      On February 25, 2021, the Debtor filed the *Application to Retain Dilworth Paxson LLP* ("Dilworth Retention Application") D.I. 15.

8.      On March 1, 2021, the Debtor filed the *Motion to Approve Debtor in Possession Financing* ("DIP Financing Motion") D.I. 30.

9.      On March 12, 2021, the Debtor filed the *Declaration of Mathu Rajan In Support of First Day Motions* ("Rajan Declaration") at D.I. 51, and on that same day, SeeCubic and SLS filed the *Motion Of SeeCubic, Inc. And SLS Holdings VI, LLC For An Order Dismissing Debtor's Chapter 11 Case* ("Motion to Dismiss") D.I. 46.

10.      The Debtor filed an additional declaration in support of the petition on March 19, 2021 (the "Robertson Declaration") at D.I. 77.

11.      On March 22, 2021, this Court adjourned the hearing on the DIP Financing Motion and the Dilworth Retention Application until the Court ruled on the Motion to Dismiss.

### II.   The Debtor's Financial Distress Leads to Prepetition Agreement to Transfer All of the Debtor's Assets to Secured Creditors, And The Chancery Court Confirms The Validity Of The Agreement.

12.      The Debtor was founded in 2009, and as of the date hereof, has never generated revenue.  *See* D.I. 30 at ¶ 1.  As of the Petition Date, the Debtor's sole board member and Chief Executive Officer ("CEO") is Mathu Rajan ("Mr. Rajan").  Mr. Rajan directly and indirectly owns about nine percent of the Debtor's Class A Common Stock, and 71.5% of the Debtor's Class B

Voting Stock. *See* Corporate Ownership Statement (Rule 7007.1) at D.I. 5; *accord* Rajan Declaration at ¶16. a.

13.     Throughout its existence, the Debtor's "corporate governance practices have been virtually nonexistent." *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, C.A. No. 2020-0766-JTL, Opinion and Order Granting Preliminary Injunction, D.I. 213 at 6, 214 (Del. Ch. Dec. 8, 2020) (respectively, "Chancery Court Opinion" and "Chancery Court Order"). The Debtor "has never held annual meeting of the stockholders and has not kept regular minutes of Board meetings." *Id*. The Debtor currently has no employees and no operations.

14.     The Debtor expects to launch a technology that "allows TV and tablet manufacturers to cover two dimensional devices into three dimensional ("3D") without the need for viewing glasses." *See* D.I. 30 at ¶ 7.

15.     A visit to "streamtvnetworks.com" reveals a message that says

> Stream TV Networks, along with all subsidiaries and all associated assets, has been acquired by SeeCubic, Inc. The groundbreaking glasses-free 3D technology, UltraD, was developed by SeeCubic BV in the Netherlands and is now the cornerstone of a new & innovative international company, SeeCubic, Inc.
>
> A new and invigorated management team has been created with industry leading senior executives who have merged their vision with the technology from the core engineers who developed this revolutionary product.

*See* Home Page, www.streamtvnetworks.com (last visited March 24, 2021 at 2:25 p.m.)

16.     SeeCubic and the Debtor have a significant pre-petition litigation history.

17.     On December 8, 2020, the Chancery Court of the State of Delaware issued a nonfinal preliminary injunction opinion and order confirming the validity of a May 2020 agreement ("Omnibus Agreement") between the Debtor, the Debtor's senior secured creditor, SLS Holdings VI, LLC ("SLS"), the Debtor's junior secured creditor, Hawk Investments Holdings

Limited ("Hawk"), and fifty-two of the Debtor's stockholders ("Equity Investors"). *See* Chancery Court Opinion and Order.

18.     The Chancery Court held that, in the Omnibus Agreement, the Debtor agreed to transfer all its assets to SeeCubic (newly created entity controlled by secured creditors holding liens on all of the Debtor's assets). *Id.* In return, the secured creditors agreed to release their claims against the Debtor once the transfer of assets was complete. *Id.*[1]

19.     The impetus for the execution of the Omnibus Agreement appears to have been the Debtor's financial struggles.  By May 2020, the Debtor "had defaulted on more than $50 million in debt to its secured creditors, owed another $16 million to trade creditors, and could not pay the bills as they came due."  *See id.*  The Debtor had also missed payroll at the beginning of 2020 and furloughed some employees.  *See id.* "[The Debtor] even failed to make the payment necessary to maintain the patents on its technology, which are the key to [the Debtor's] potential success." *See id*. at 8.

20.     The Debtor argued that the Omnibus Agreement was unenforceable because (1) the outside directors comprising the resolution committee which approved the Omnibus Agreement were not validly appointed; (2) the outside directors were removed by a stockholder consent before they could approve the Omnibus Agreement; (3) stockholder approval was required for the Omnibus Agreement to be effective because it provided for the sale of all of the Debtor's assets[2];

---

[1] Additionally, the Chancery Court noted:

> If [the Debtor's] secured creditors had foreclosed on [the Debtor's] assets, then [the Debtor] and its stockholders would have been left with nothing. Instead, the Omnibus Agreement provided [the Debtor's] minority investors with the right to swap their shares in [the Debtor] for shares in SeeCubic. The Omnibus Agreement also provided for the issuance of one million shares in SeeCubic to [the Debtor].

*Id.*

[2] Notably, in relation to this argument, the Chancery Court found "[e]veryone agrees that the Omnibus Agreement encompasses ***all of*** [the Debtor's] assets." Chancery Court Opinion, slip. op. at 27 (emphasis added).

and (4) the resolution committee breached its fiduciary duties by approving the Omnibus Agreement. *See* Chancery Court Opinion, slip op. at 16-51.

21.     The Chancery Court Opinion rejected each of the Debtor's arguments. *See id*. the Chancery Court concluded its analysis by noting that "[w]ere it necessary to grant a mandatory injunction to enforce the Omnibus Agreement, then the record would be sufficiently clear to support it." *Id*. at 52.

22.     The Chancery Court Order preliminarily enjoined Mr. Rajan and the Debtor from taking any action to interfere with the Omnibus Agreement, including, but not limited to disputing the validity of the Omnibus Agreement and asserting ownership rights to any of the assets. *See* Chancery Court Order at ¶ 1 (a)-(g).

23.     Included within the Chancery Court Opinion are many "facts as they appear reasonably likely to be found after trial, based on the current record." *See* Chancery Court Opinion slip. op. at 5.   Some of these facts raise serious concerns about the Debtor's pre-petition management.  For instance, the Chancery Court found that Mr. Rajan and his brother backdated a May 2020 stockholder consent, which consent purported to remove the independent directors before they could consent to the Omnibus Agreement; the Chancery Court found this attempt at backdating to be ineffective. *See id*. at 27. During negotiations with SLS and Hawk intended to garner Mr. Rajan's and his brother's support of the Omnibus Agreement, they both "pushed for personal benefits for themselves, including employment, compensation, and indemnification for litigation expenses." *See id*. at 14.

24.     As of February 25, 2021, the competing motions appear to have been almost fully briefed by all parties.

**III.    The Debtor Files the Instant Chapter 11 Case to Attack the Omnibus Agreement.**

25.    Enjoined from taking any further actions to prevent the transfers of all its assets to SeeCubic, and near a final resolution of the Chancery Court litigation in which SeeCubic was likely to prevail, the Debtor filed this chapter 11 case asserting that "it has sufficient confidence in prospective investors," and that it views "a 363 sale as unlikely and unnecessary."  Rajan Declaration at ¶ 6.  One of those "prospective investors" is Visual Technology Innovations, Inc. ("VTI").  *See* DIP Financing Motion D.I. 30.  Mr. Rajan formed VTI a month prior to the filing of this case, and through March 12, 2021, Mr. Rajan served as its sole officer and director.  *See* Rajan Declaration at ¶ 20 b.  Since March 12, 2021, VTI has gained at least five more directors, half of which were appointed by Mr. Rajan.  *See* VTI's Response in Support of DIP Financing Motion at D.I. 67.[3]  Mr. Rajan "presently owns or controls approximately 11.5% of VTI but anticipates that amount will exceed 98%.  Rajan Declaration at ¶ 20 b.  VTI may merge with the Debtor.  *See id*. VTI funded most of proposed Debtor's counsel's prepetition fees, and it is the proposed DIP financier in this case.  *See U.S. Trustee's Objection to Dilworth Retention Application and DIP Financing* at D.I. 68, 69.  VTI and the Debtor are supposed to be separate and independent legal entities, but counsel for VTI in this case was also counsel for the Debtor in the Chancery Court litigation until it withdrew in November of 2020.  *See Stream TV Networks, Inc. v. SeeCubic, Inc*., C.A. No. 2020-0766-JTL, Elliot Greenleaf, P.C.'s Motion to Withdraw (Del. Ch. Nov. 8, 2020).

26.    Although the Chancery Court Opinion gives effect to the Omnibus Agreement and SeeCubic's enforcement of it due to entry of the preliminary injunction, the Debtor nonetheless asserts that it "retains title by physical possession of most of its business assets . . . [and] [i]t intends to deal with its assets for the benefits of all creditors . . . and refinance in this proceeding and

---

[3] It is not clear to the U.S. Trustee whether Mr. Rajan has resigned from VTI's board.

confirm a plan which treats all creditors fairly and equitably." *Id*. at ¶59.  The Robertson Declaration likewise conflicts with Chancery Court Opinion and Order; its lists several assets which the Debtor intends to use in its reorganization efforts because taking those assets to market "requires none of the assets currently held by SeeCubic." *See* Robertson Declaration at ¶¶ 15, 20. In addition to these physical assets, the Debtor alleges it has "relationships" with various entities and a "strategic agreement" to use intellectual property that would allow it to take its products to market.  Robertson Declaration at ¶¶ 28-38.  Absent from any declaration filed in this case, is a statement that these assets, physical or intangible, are *not* subject to the liens of SLS and Hawk or *not* part of the asset transfer contemplated in the Omnibus Agreement.

27.    The Debtor initiated the Chancery Court proceeding to invalidate and prevent enforcement of the Omnibus Agreement, but it failed.  The Debtor now attempts to use the chapter 11 process to get the result it did not achieve in the Chancery Court.  That is not a proper use of the chapter 11 process.

## ARGUMENT

### I.    This Court Should Dismiss This Case or Convert it to Chapter 7 Because the Debtor Filed it in Bad Faith.

28.    Section 1112(b) of the Code provides that, upon a finding of cause, a court shall convert a chapter 11 case to chapter 7 or dismiss the case entirely. 11 U.S.C. § 1112(b).  Section 1112(b)(4) enumerates sixteen examples that constitute cause, but the list is non-exhaustive. 11 U.S.C. 102(3) (instructing courts to interpret the use of "includes" to be not limiting).  As such, this Court has wide discretion in determining whether cause exists for the purposes of Section 1112(b).  *In re SGL Carbon Corp*., 200 F.3d 154, 160 (3d Cir. 1999).

29.     Section 1112(b) imposes a good-faith requirement on all chapter 11 filings.  *Id.* at 162.  When the debtor's good faith is called into question, the debtor bears the burden of showing that good faith is present in its filing.  *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000).

30.     Although the Code does not define good faith, showing good faith rests on two questions: (1) whether the petition serves a valid bankruptcy purpose, such as preserving a going concern or maximizing the value of the debtor's estate; and (2) whether the petition is filed to obtain a tactical advantage. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004).

31.     Upon finding cause, the Court must determine whether conversion or dismissal best serves the interest of the creditors and the estate.  *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012).  Here again, the Court has wide discretion to use its "'equitable powers' to make 'an appropriate' disposition of the case[.]" *Id*. at 163 (quoting *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 798 (E.D. Pa. 2000)).

### A.     The Debtor's chapter 11 case was filed in bad faith because it serves no valid bankruptcy purpose.

32.     A debtor availing itself of the automatic stay of litigation, without more, has not filed a chapter 11 petition for a valid bankruptcy purpose. "'[C]ourts universally demand more of Chapter 11 petitions than a naked desire to stay pending litigation,' and any perceived benefit of the 'automatic stay, without more, cannot convert a bad faith filing to a good faith one." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 620 (3d Cir. 2009) (quoting *Integrated Telecom*, 384 F.3d at 128)).

33.     Here, the Debtor filed this chapter 11 petition to reap the benefit of the automatic stay of the near-final Chancery Court litigation because the Debtor was unlikely to prevail in invalidating the Omnibus Agreement.  Upon the entry of the Chancery Court Opinion and Order,

the Debtor and its principals were enjoined from asserting ownership of the assets. From that moment forward, the Debtor was no longer a going concern, nor did it have any assets the value of which could be maximized. Filing this case only served to stall the Chancery Court's impending final decision. At the hearing on March 22, 2021, the Debtor's professionals suggested that the Debtor would seek to reject the Omnibus Agreement under the applicable provisions of the Code. The Debtor failed to explain, however, how it could accomplish that goal without disregarding and/or violating the Chancery Court's Order. Use of the protections of the Code to undermine or collaterally attack the binding nature of the Chancery Court Order is not a valid bankruptcy purpose. *Cf. In re Van Eck*, 425 B.R. 54, 63 (Bankr. D. Conn. 2010) (noting that chapter 11 cannot be used as a platform to attack final orders of other courts).[4]

### B. The Debtor's chapter 11 case was filed in bad faith because it only serves to gain a tactical litigation advantage.

34.     "Where 'the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being failed in good faith.'" *Bepco*, 589 F.3d at 625 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)).

35.     Here, the Debtor filed the chapter 11 petition primarily to avoid a mandatory injunction against preventing the transfer of assets to SeeCubic because the Debtor filed the petition when briefing was nearly complete in the matter. Indeed, a review of the docket in the Chancery Court litigation reveals that the only outstanding issue as of February 25, 2021 was a motion by SeeCubic to extend the time to file a reply brief.

### C. If Dismissal is Not Proper, This Court Should Convert the Case to Chapter 7.

---

[4] The U.S. Trustee understands that the Chancery Court Order was not a final order, but as indicated above, the Chancery Court noted that the record would also support a mandatory injunction.

36.     Alternatively, if this Court determines that the Debtor retains ownership over significant assets not implicated by the Omnibus Agreement, then the U.S. Trustee submits that conversion to chapter 7 may be in the best interests of the creditors and the estate.

## CONCLUSION

37.     This Court should dismiss this chapter 11 case.  If the Court believes issues prevent dismissal, then the Court should convert this chapter 11 case to a chapter 7 case because the Debtor filed its petition in bad faith.

## RESERVATION OF RIGHTS

38.     The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.[5]

WHEREFORE, the U.S. Trustee request that this Court issue an order granting this Motion, or such other relief as the Court deems appropriate.

---

[5] Specifically, U.S. Trustee reserves the right to move this Court for an order directing the appointment of a trustee under section 1104(a) of the Code if the parties' further development of the record would support such relief. Pursuant to section 305 of the Code, the Court may also suspend this proceeding at any time if "the interests of creditors and the debtor would be better served by such . . . suspension[.]" 11 U.S.C. § 305(a)(1). The U.S. Trustee submits that suspension of this proceedings may be warranted if this case is not dismissed.

Dated:  March 24, 2021.
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By:  _/s/ Rosa Sierra_
      Rosa Sierra
      Trial Attorney
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox35
      Wilmington, Delaware 19801
      Phone: (302) 573-6492
      Fax:    (302) 573-6497
Email: rosa.sierra@usdoj.gov