UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|                        |   |                                |
|------------------------|---|--------------------------------|
|                        | . | Chapter 11                     |
| IN RE:                 | . |                                |
|                        | . | Case No. 21-10433 (KBO)        |
| STREAM TV NETWORKS, INC., | . |                             |
|                        | . |                                |
|                        | . | Courtroom No. 3                |
|                        | . | 824 N. Market Street           |
|                        | . | Wilmington, Delaware 19801     |
|                        | . |                                |
|              Debtors.  | . | April 7, 2021                  |
| . . . . . . . . . . . . . . . | 4:00 P.M.            |

TRANSCRIPT OF TELEPHONIC <u>MOTION HEARING</u>
BEFORE THE HONORABLE KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For the Debtors:          Martin J. Weis, Esquire
                          DILWORTH PAXSON LLP
                          704 N. King Street
                          P.O. Box 1031
                          Wilmington, DE 19899-1031

For SeeCubic:             Joseph Larkin, Esquire
                          SKADDEN, ARPS, SLTATE, MEAGHER
                            & FLOM LLP
                          One Rodney Square
                          920 N. King Street
                          Wilmington, Delaware 19801

For Visual Tech:          Jonathan Stemerman, Esquire
                          ARMSTRONG TEASDALE LLP
                          300 Delaware Avenue, Suite 210
                          Wilmington, Delaware 19801


Audio Operator:           Al Lugano

Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

INDEX

|  | Page |
|---|---|
| COMMENTS BY MR. LARKIN | 3,21 |
| COMMENTS BY MR. STEMERMAN | 8 |
| COMMENTS BY MR. WEIS | 19 |
| RULING | 22 |

1    (Proceedings commence at 4:07:19 p.m.)

2          THE COURT:  Good afternoon, parties.  This is Judge

3    Owens.  We're gathered today for an emergency hearing in

4    SeeCubic.  I apologize for my tardiness.  I just got off

5    another hearing.

6          In the interest of time, let me throw the podium

7    over to counsel for the movants and you can present the topic

8    for today.

9          MR. LARKIN:  Thank you, Your Honor.  Good

10   afternoon, this is Joe Larkin from Skadden Arps on behalf of

11   SeeCubic, Inc.  We very much appreciate Your Honor hearing

12   our motion for emergency relief on such short notice.  It's

13   not a motion we made lightly or without consideration of Your

14   Honor's very busy schedule.  But given the expedited time

15   frame we are on for trial on SeeCubic's motion to dismiss, we

16   really felt it was necessary to seek relief from the Court to

17   avoid real prejudice to our clients as -- as we prepare over

18   the next few weeks.

19         Your Honor, the -- the motion asks for relief on

20   two issues.  Both of which are tied to the objection filed by

21   VTI, which is an entity formed by Mr. Rajan just a few months

22   ago, but we understand is working hand in glove with the

23   debtorit and has been from the outset of this case.

24         First, we're asking the Court to strike or exclude

25   VTI's proposed but not yet disclosed arguments and expert

witnesses, and other evidence with respect to Dutch or

international law as it relates to control of assets over

foreign entities.

And second, we're asking the Court to strike VTI's

opposition or in the alternative, to really give it no weight

as we proceed to trial over the next few weeks.

I think it would be helpful for Your Honor if I

took those one at a time. And I'd like to start with the

issue about the expert testimony because I really think

that's the basis for -- for the emergency relief here.

Your Honor, we had agreed with the debtors and the

other parties on a briefing schedule on our motion to

dismiss. The debtor and VTI filed their opposition to our

motion to dismiss last Friday. We assumed that all of the

arguments that the debtor and VTI or any other interested

party who is opposing the motion to dismiss would have raised

those arguments in their motion -- in their opposition

papers.

We only learned after we received their opposition

briefs that VTI was essentially reserving its rights to call

legal experts on issues of international law and Dutch law

depending on how discovery unfolded. So from our perspective

we're now in a position where our reply brief is due this

Monday, the 12th, and we don't actually know what arguments

the debtors and/or VTI are making in opposition to our motion

1    to dismiss.  And I think just as a matter of funda --

2    fundamental element of fairness here in preparing for any

3    trial, that the parties have to identify their witnesses.

4    And with respect to experts, not only the identities of their

5    experts, but, you know, their credentials and the anticipated

6    subject matter of their testimony.

7         And I certainly would have expected to see any --

8    any arguments that the debtors or VTI believe are -- are

9    credible in opposition to our motion to dismiss in their

10   opposition papers.  But as we sit here today, we still don't

11   know what arguments they're pressing.  They've sort of, you

12   know, have offered these vague overtures that they think

13   there's an issue here with respect to the foreign assets, and

14   we'll sort of see how it goes.

15        Well, that's not really -- you know, my understand

16   is that's -- that's not how -- that's not how it works.  They

17   should have to disclose their experts to us so that we have a

18   fair opportunity to depose them and respond to whatever

19   arguments they want to make with respect to international law

20   issues on the motion to dismiss.

21        So that's really the -- the first issue, Your

22   Honor, I think, in terms of understanding who the -- who the

23   witnesses are going to be at trial in three weeks, and having

24   an opportunity to depose them.  And frankly, having an

25   opportunity if we have to to retain our own expert, you know,

1    to -- to rebut any testimony that comes in from the debtor or

2    VTI on that issue.

3            With respect to the second issue -- and -- and let

4    me -- let me just -- just put a finer point on that.  The --

5    the argument that I understand from VTI is that they're

6    reserving their rights to call an expert on Dutch and

7    international law as it relates to control over the foreign

8    entities to the extent that SeeCubic is claiming it currently

9    owns or controls any of the debtors foreign subsidiaries or

10   foreign assets.  And they're taking the position that they're

11   sort of just sitting on the sidelines and waiting to see if

12   that is in fact the position of SeeCubic.  That's our

13   position, Your Honor.  That's been our position since the

14   outset of this case.  I -- I don't think we could be clearer

15   about it.  We're certainly not hiding it, and so to the

16   extent that the debtors or VTI, you know, have arguments in

17   opposition to that position, we didn't -- you know, we would

18   have expected to see them in their opposition papers.  And if

19   they have an expert, let's have an opportunity to

20   cross-examine that expert.

21           With respect to point number two in -- in our

22   emergency motion, the request to -- to strike VTI's

23   opposition in its entirety, I realize, Your Honor, that that

24   is, you know, unusual relief.  And -- and I understand -- I

25   don't think there's relief, you know, that sort of fits

1    neatly in one box.  But I think the facts and circumstances

2    of this case are -- are unusual in the relationship between

3    VTI and the debtor as we know it today.

4         The -- the brief that was submitted by VTI was

5    essentially a brief that I would have expected to see

6    submitted by a debtor.  I mean, you could have replaced the

7    -- you know, the name and the caption from -- from debtor to

8    VTI and it would have been all of the same arguments that I

9    would have expected the debtor to make.  Except, the debtor

10   isn't making those arguments.  The debtor, from what I can

11   tell, is focused on the two issues that matter at a motion to

12   dismiss.  Which is, you know, was the filing made in good

13   faith, and was it made for a valid bankruptcy purpose.  We

14   disagree with the position taken by the debtor in their

15   opposition, but they seem focused on -- on the issues that

16   are relevant for the motion.

17        With respect to VTI's opposition brief, I -- I

18   think that they are focused on issues and facts, frankly,

19   that have already been litigated and decided against the

20   Rajans, and the debtor in the Delaware Court of Chancery

21   action.  It seem very much an effort to relitigate all of

22   those issues at the motion to dismiss trial in three weeks.

23   And none of which are really relevant for -- for the, you

24   know, the issues that are -- are sailing into the motion to

25   dismiss.

1          And we also don't really understand in what

2     capacity VTI is operating at this point.  Right?  Are they a

3     creditor?  We didn't have any issue with VTI participating as

4     a creditor in our meet and confer process over the last few

5     weeks.  But the opposition that they've made is -- is clearly

6     not the filing of a creditor; right?  I mean, on what basis

7     can VTI argue about whether property is owned by the debtor

8     or SeeCubic.  I mean, these are all arguments that I would

9     have expected the debtor to make.  And again the -- the

10    debtor isn't making them, VTI is making these arguments.  And

11    so, I think, in terms of trying to focus the issues for Your

12    Honor for trial, we would ask Your Honor to really just

13    strike the VTI opposition and -- and -- and let's all remain

14    focus on the issues that have been raised by the debtor and

15    -- and by my clients for trial in the next few weeks.

16          THE COURT:  Okay.  Thank you, Mr. Larkin.  Okay.

17    Why don't I hear from Counsel to VTI first, or counsel to the

18    debtors.  However you wish to proceed.

19          MR. STEMERMAN:  Thank you, Your Honor.  Jonathan

20    Stemerman of Armstrong Teasdale on behalf of VTI.

21          Your Honor, I think I will start where -- where my

22    friend, counsel to the movants left off when he asked on what

23    basis can VTI raise these arguments.  I would turn that

24    around and say on what basis can we not raise these

25    arguments?  There's -- VTI is a part of interest in this

1      case.

2                    THE COURT:  In what --

3                    MR. STEMERMAN:  Eleven --

4                    THE COURT:  In what way?

5                    MR. STEMERMAN:  Your Honor, we have a proposed DIP

6      motion that is pending and it is not going to be heard until

7      the motion to dismiss is heard.  If the motion to dismiss is

8      granted or denied, that's going to effect VTI.  Especially,

9      if the motion to dismiss is -- is -- is denied, then VTI is

10     going to have certain obligations if the DIP motion is

11     granted.  So VTI certainly has a -- a legal interest in this

12     case.

13                   Beyond that, VTI from the get go has been treated

14     as a party of interest in this case by SeeCubic.  The

15     discovery that was propounded upon SeeCubic -- upon VTI by

16     SeeCubic and SLS contemplates, you know, is under Rule 70-34.

17     It's not a third party, it's not a real 30-45 or anything

18     like that.  They've also known that we'd be filing a -- a

19     response in opposition to the motion to dismiss and had no

20     objection to it until they saw it.  And so I'm -- they

21     provide no basis.  No case law, no anything to suggest that

22     VTI cannot make any arguments as -- as a party in interest

23     pursuant to 11-09(b).

24                   If you take what -- what the movants are asking

25     this Court to do on an emergency basis, it's essentially

1   create new law; right? They've -- I -- I don't understand

2   from my friend's arguments what -- what arguments VTI would

3   be allowed to make.  Are -- are -- is VTI not allowed to

4   argue that the bankruptcy was filed in good faith; right?  It

5   -- is VTI not allowed to argue that there's no cause to

6   dismiss the bankruptcy?  Is VTI not allowed to discuss what

7   assets the debtor may have?

8        They -- they provide nothing, Your Honor.  No -- no

9   case law, no basis for -- for Your Honor to strike the entire

10  pleading, which is what they're asking you to do.  They --

11  and they also provide no standard for Your Honor to determine

12  how she should go about, you know, determining whether or not

13  their burden has been met.  And so, Your Honor, I think their

14  request to dismiss the -- the opposition in its entirety

15  should -- should be summarily denied.

16       THE COURT:  Mr. Stemerman, can I ask you one

17  question?  And this just goes to the mechanics of the -- the

18  -- the DIP document.  I'm curious, did VTI or principals of

19  VTI already sign the -- the DIP credit agreement.

20       MR. STAMERMAN:  Your Honor, I -- I am -- I am not

21  sure of that.  I couldn't say for certain.  But I know there

22  have been oral agreements with respect to -- with certain --

23  at least certain of the terms in those documents.

24       THE COURT:  Okay.  Thank you.

25       MR. STAMERMAN:  Turning to the discovery issue,

1   Your Honor, I -- I'm at a loss to understand what it is that

2   the movants believe we have not disclosed with respect to the

3   foreign law issues.  If Your Honor takes a look at paragraphs

4   57 through 59 of the opposition, you will see a full

5   discussion on foreign law.  And specifically, paragraph 59

6   lays out some of the concerns that VTI has with respect to

7   any sort of assertion of transfer or control under foreign

8   law.

9        The issue, Your Honor, is the procedural posture of

10  this case.  There has been no discovery.  There has been no

11  document production.  And so it -- it's impossible for VTI to

12  have and sort of fully formed, you know, fully formed factual

13  or legal basis that it can lay out in its -- in its

14  opposition to the motion to dismiss without seeing what steps

15  it is that the movants claimed that they have taken in order

16  to obtain control over the assets.  And what assets that they

17  actually are asserting control over.

18       Now, they say that they -- right, they have control

19  over all of the assets.  They haven't provided any real

20  evidence of that yet.  Maybe in discovery, those -- those --

21  they will be able to prove that.  We don't know.  And so it's

22  very difficult for us to say in particular, right, this

23  particular expert is going to be who it is that's going to

24  testify on these specific issues.  We just don't know.  We

25  haven't seen the documents.  Moreover, Your Honor, I would

imagine they would be coming to Your Honor if we just said --
if we just named somebody and said they're going to talk
about Dutch law, or if they're going to talk about foreign
law and -- and the transfer of assets.  And they would say,
"Your Honor, this is a contested matter under Rule 90-14,
Rule 76 -- or 726 applies to that.  Any expert witness that
they disclose needs to provide an expert report.  They
haven't provided an expert report.  You've got to strike
this."

But we can't provide an expert report because there
has been no discovery.  And so when we're talking about these
-- these fully formed legal theories and factual basis, that
is what happens after discovery has taken place.  And so they
-- SeeCubic is -- and -- and SLS are putting the car -- the
cou -- sorry, the cart before the horse here.  Additionally,
they haven't really provided Your Honor with any real
prejudice.  There's no discovery schedule in place.  There
are no depositions set at all before anyone.  And I would
anticipate that, you know, there are going to be challenges
with respect to various issues with respect to document
production.

And so all of these issues are going to come up and
there will be a time for -- that they can be addressed.  Now
is not that time to say with certainty that an expert
witness, which I think would benefit this Court, if -- you

1    know, we can determine that an expert witness is appropriate

2    in this case that the -- now is not the time to say that an

3    expert witness should be stricken because, you know, the

4    documents and the evidence is not presently in VTI's

5    possession in order to make those arguments.

6         THE COURT:  Mr. Stemerman, let me interrupt you,

7    actually because I want to make sure I abundantly understand

8    sort of the state at play.  So it's been very clear to me at

9    the outset of these cases, okay, that it's SeeCubic's

10   position that they control or are entitled to control

11   substantially all of the debtor's assets, if not all of the

12   debtor's assets.  That's what -- it's very clear from the

13   Chancery Court's order that that's what their position is and

14   what the Chancery Court said.

15        Of course there's arguments that the parties are

16   making as to why I'm not bound by that order or things to the

17   like.  So what is you argument?  And I have not read -- I'll

18   admit it, I have not had to opportunity to read your

19   opposition papers.  And you referenced numerous paragraphs in

20   which you made arguments as to the foreign assets.  So please

21   give me a summary of the positions that you made in your

22   opposition paper as to the foreign assets here.  And when I

23   saw foreign assets, I assume we're talking about shares in

24   foreign subsidiaries that the debtor currently owns.  Is that

25   -- is my understanding correct?

1    MR. STEMERMAN: That -- that's part of it, Your

2    Honor.

3            THE COURT: Okay.

4            MR. STEMERMAN: It's -- it's shares in the

5    subsidiaries but it's also other assets. So for example,

6    Your Honor, the -- the debtor -- and it -- it's my

7    understanding and based on the sc -- schedules and

8    statements, and in speaking with VTI and also people at the

9    debtor, that the debtor owns -- the debtor directly owns

10   certain machinery that is located in Asia, for example. So

11   that would be direct ownership by the debtor. We haven't

12   seen any documents evidencing transfer of those -- that

13   equipment.

14           THE COURT: Okay.

15           MR. STEMERMAN: With respect to --

16           THE COURT: Oh, I'm sorry. It's a stock and

17   machinery that is sort of the topic of today's conversation.

18   Is there anything else?

19           MR. STEMERMAN: Yes, there's more than that, Your

20   Honor. Because it's not just stock. So there's certain

21   steps that you need to take, even if you are the -- the owner

22   of stock in a -- a foreign entities. This is our

23   understanding. Again, I'm not an expert in Dutch law, but

24   there are certain -- you know, there are certain steps you

25   need to take. And it is not clear to us at all that the

1    movants have taken those steps.

2         THE COURT:  Okay.  Is there -- so is -- so is your

3    argument that -- that you take -- that the -- that the

4    movants have not yet taken the proper steps to take ownership

5    of the various foreign assets, or is it your position in the

6    objection that the ominous agreement did not -- that those

7    assets are outside of the scope of the agreements to transfer

8    assets to the lenders?

9         MR. STEMERMAN:  No, Your Honor.  So -- so our --

10   our position is not that the ominous agreement did not give

11   SLS or SeeCubic the right to take the steps in order to tran

12   -- to have the assets transferred to them.  Our argument is

13   that those steps either were not taken or were not properly

14   taken.  And so that those assets have not in actuality been

15   transferred to SLS or SeeCubic.

16        THE COURT:  Okay.  And so -- was that argument that

17   we just -- thank you, very much for walking me through it in

18   baby steps because I need that today in late hour after my

19   hearings today.  Is it your position -- was that all laid out

20   in the objection?

21        MR. STEMERMAN:  Yes.  So if Your -- Your Honor

22   takes a look at page 9 of our response to SeeCubic's motion

23   to strike.  We highlight one of the paragraphs, and that

24   paragraph specifically discusses Dutch law for the most part.

25   But also notes that there are assets that are owned over

1    seas.  There are assets that are over seas.

2          So that's laid out, and it's -- we have other

3    paragraphs in our motion where we discuss that you can't just

4    have a piece of paper; right, from a U.S. State Court, and go

5    into a foreign country and then all of a sudden you own the

6    asset.  There -- there are steps you need to take.

7          THE COURT:  Okay.  So it sounds as if to me you

8    formulated the topic of -- of your objection.

9          MR. STEMERMAN:  Yes.

10          THE COURT:  We all -- we all know what the ask is.

11    The ask from the movants is, "We have all the assets."  And

12    the ask from you is actually, "You have not done the steps

13    under foreign law to effectuate that transfer."  So why

14    aren't you then able to identify the expert that you want to

15    opine on the steps necessary to transfer those assets?  I'm

16    not saying that you have to provide an expert report at this

17    time.  I don't think that Mr. Larkin's actually asking that.

18    What he wants to know is, who is your witness going to be?

19    Okay.  And then I guess the next step will be when are we

20    going to get a report?  When can we cross-exam -- can depose

21    your expert?  And when -- when do we need a designated

22    rebuttal expert witness.  To the extent that they don't move

23    to exclude --

24          MR. STEMERMAN:  Right. And -- and so -- I'm sorry,

25    Your Honor.  I didn't mean to interrupt.  Continue.

1          THE COURT:  No, but I just want to understand what

2     is -- what is -- explain to me why you can't identify the

3     witness at this point?

4          MR. STEMERMAN:  Well, so one, it might be more than

5     one witness.

6          THE COURT:  Okay.

7          MR. STEMERMAN:  Depending on -- on what assets are

8     located where and what steps we're taking.  Two, we -- we can

9     provide several names if -- if that's what they want.  And

10    say we may call these specific witnesses.  What we were

11    trying to do, Your Honor, is not sandbag them; right?  But to

12    -- to give them advance notice that we may call an expert in

13    these particular topics.  But if they're looking for

14    particular names, we -- we can give them potential names.

15    But I don't know for a matter of fact that, you know, that

16    that witness is one, going to be available on the day from

17    whenever that hearing is.  It's my understanding that the

18    hearing may now be on the 26th.  Two, depending on what the

19    documents say, we don't know what -- what our potential

20    expert's going to say.  And then that brings up the issue,

21    "Well, why didn't you call this expert?"  Right?

22          I don't think we -- we should be forced to disclose

23    the identity of an expert sooner than -- than we need to.  We

24    -- they have the opportunity if they want to go talk to any

25    foreign expert they want.  Any Dutch law expert, anybody

1    else.  They have the documents, they can show the ex -- you

2    know, whoever it is, the documents and -- and talk to that

3    expert.  We don't even have that ability right now to show

4    the witness whatever documents it is that they are claiming

5    give them complete ownership.

6            THE COURT:  Okay.

7            MR. STEMERMAN:  So we're kind of a pickle there.

8    And that goes again, to the idea of when can -- can an expert

9    report be provided.  And -- and I don't know.  I don't know

10   how many documents we're talking about that somebody's going

11   to need to review.  I don't know when we're actually going to

12   get those documents, all of the documents in.  And so it's

13   difficult to say.  I -- I would -- I would imagine that if

14   there's not that many documents and we're looking for, you

15   know, you're not looking for some sort of 30 page expert

16   report, that -- that it can be done, you know, fairly quickly

17   once all of the documents have been produced and, you know,

18   reviewed.

19           THE COURT:  So it sounds like to me that the issue

20   here, putting aside whether you should have a witness or

21   you're not entitled to a witness because the timing of

22   disclosure.  It seems to me as if it's just a standard

23   dispute on timing that you need to work backwards from the

24   hearing date and agree on a schedule.  Is -- is that from you

25   perspective?

1          MR. STEMERMAN:  Ye -- yes, Your Honor.  And that's

2     entirely consistent with what the party's discussions were at

3     the meeting confer, which was we're going to reserve our

4     rights depending -- depending on what gets produced in

5     discovery.  SeeCubic did the same thing.  And we wouldn't be

6     -- if SeeCUbic were after discovery to say, "Well, we want to

7     call so-and-so as a witness."  We wouldn't be coming in and

8     challenging that based on timing.  If it was done soon, you

9     know, relatively soon after within a reasonable time of -- of

10    production.  But there is -- there's no deposition scheduled

11    right now.  There's -- there's no prejudice at this time.

12          THE COURT:  Okay.  Okay.  Thank you very much.

13    Sorry for interrupting you.  I just wanted to make sure that

14    I understood the state of play.  Do the debtors want to jump

15    in here and offer anything?  Or should I turn the podium back

16    to Mr. Larkin.

17          MR. WEIS:  Judge, jus -- Your Honor, good

18    afternoon.  Martin Weis on behave of Stream TV.  Can Your

19    Honor hear me okay?

20          THE COURT:  I can, and good afternoon.

21          MR. WEIS:  Good afternoon.  Just a couple of things

22    just to answer some of the questions that Your Honor had, and

23    -- and to make sure that everybody is dealing with the same

24    set of facts.

25          One, the hearing has be adjourned to the 26th of

1    April.  It was -- however we are keeping the April 15th date

2    on as a -- as a status conference.  But -- but in terms of

3    the actual trial date, that's the -- that's the 26.  That's

4    what the parties coordinated with chambers and scheduled.

5         The second thing, Your Honor, to answer your

6    question.  We looked it up while Your Honor was discussing

7    with counsel for VTI.  The DIP financing agreement was

8    signed.  That's document 30 on the docket, and -- and it's

9    one of the exhibits.  So -- so it's public record.

10        Your Honor, I -- I only -- I do -- I do just want

11   to add that we do agree with VTI.  The mo -- the motion to

12   dismiss, as Your Honor is well aware, is a case dispositive

13   motion.  It's very important that -- that we -- that all

14   parties have the right to be heard on this and -- and have

15   the right to -- to make their arguments.  And that it's quite

16   premature at this time to start excluding evidence and start

17   excluding arguments, particularly when the discovery hasn't

18   taken place.

19        We do agree with Your Honor, this should, -- this

20   is all something that should be worked out among the parties

21   in terms of trying to schedule -- coordinating dates for

22   returns on documents, depositions, and then, you know, if

23   there's going to be an expert, designating the expert and

24   when the reports are due, and if there's a rebut -- if

25   there's a rebuttal that -- that Mr. Larkin wants to put in

1     then we have to give him time to put in his rebuttal. That's

2     all.

3           THE COURT: Okay. Thank you very much.

4           MR. WEIS: Thank you.

5           THE COURT: Mr. Larkin, let me give you the last

6     word, then.

7           MR. LARKIN: Thank you, Your Honor. I'll -- I'll

8     be very brief. I -- I think with respect to the

9     identification of the experts, if I understood Mr. Stemerman

10     correctly. I mean, they have -- VTI has certainly formulated

11     a view at this time about -- about the -- this transfer of --

12     of assets among the foreign subsidiaries; right? They have

13     their view. We provided Mr. Stasee's (ph) declaration which

14     had this doc -- transfer certificate. We're not hiding the

15     ball here. If there are additional documents that go to this

16     issue, we will produce them.

17           But they've form -- they have formulated a view

18     about -- and I heard it for the first time today, that there

19     are other steps that Mr. Stemerman and VTI believe need to be

20     effectuated to transfer those assets. Okay. We disagree

21     with that, but if that's their view that there are other

22     steps in each of the nine jurisdictions, nine foreign

23     countries that they lay out in paragraph 59 of their

24     opposition, it sounds like they have a view on that and

25     they've -- they have an expert who's providing them with --

1    with the insight.  So let's see the arguments, and let's have

2    an opportunity to cross-examine the expert on those views.

3          I -- I think with respect to, you know, the timing

4    and scheduling.  I'm perfectly happy to meet and confer with

5    debtor's counsel, or VTI's counsel.  I think we were actually

6    working pretty productively to get the briefing done and have

7    been in discussions about document production, etcetera.  So

8    I don't -- I don't have any doubt that we'll get all of this

9    done over the next few weeks.  But I can't be in a position

10   where it's, you know, April 23rd, and -- and we hear that

11   there's going to be an expert on Dutch law, or Spanish law,

12   or German law, or Japanese law with respect to asset

13   transfers.  And I'm in a position where I'd have to respond

14   to that over the weekend.

15         So I -- you know, if they have an expert, I think

16   they have to identify him, you know, promptly.  And -- and

17   we'll identify -- or we'll -- we'll have an opportunity to

18   depose that person.  And if we need to put in rebuttal

19   testimony we'll do so.

20         THE COURT:  Okay.  Okay.  Well, thank you all very

21   much for appearing today.  it's such last minute.  I hope you

22   can hear me over whatever is happening in my office right

23   now.  I've had a lot of technology issues this morning, which

24   is why I'm not on the bench.  But I'm -- I'm not going to

25   strike the opposition of VT -- by VTI at this time.  And I'm

not going to refuse to let them participate in the motion to dismiss hearing. I -- I do think it's a slightly unusual request. I'm not saying that alone warrants the denial, but arguably, they do have standing as a contingent creditor in -- in this case. And that is where I was going with whether they signed the DIP credit agreement. And quite frankly, I -- I do think that striking the opposition at this time is premature having even read the opposition papers. And quite frankly, I can and I will determine the weight and the validity and the credibility of the arguments and the evidence that VTI and all the parties proffer after fully being able to consider and hear them.

At the -- at the April 26th hearing, or perhaps earlier if there's cause for a hearing on a motion *in limine*. So I'm not saying there is, I'm just saying that, you know, sometimes those get raised and I'll hear it at that time.

On the Ability of VTI to call an expert witness, or to preclude them from doing so. I'm not going to barr them at this time either. I think it makes sense for the parties to meet and confer as soon as possible regarding a schedule that includes document discovery deadlines, disclosure, of expert witnesses, the timing of the pro -- provision of the report, scheduling of depositions, and the like.

And listen, you're all able bodied, proficient lawyers who practiced in this court as well as other courts,

1    and you certainly understand how expedited litigation works.

2    So this happens all the time, and unfortunately it's an

3    expedited trial.  And so parties are probably going to be

4    working on the weekend unfortunately.  So -- but the good

5    news is, it sounds like, based on the colloquy that we all

6    had today, that we have a much better understanding of what

7    the arguments are going to be to the extent that the parties

8    were confused.

9        To me it seems abundantly clear what the arguments

10   are.  As I said, Mr. Larkin's client believes they have

11   ownership of -- of the debtor's assets, foreign and domestic.

12   And it is now the position or has always been the position of

13   VTI that certain assets have not gone through the steps to

14   effectuate the transfer.  So perhaps there's issues with what

15   those assets are and who needs to opine on that, but it

16   sounds as if we understand what the scope of the issues are.

17       So with that, I think you all should meet and

18   confer as soon as possible.  I also think, based on --

19   although, everyone again is able bodied and experienced

20   practitioners, I think that given the historical dealings

21   between the parties, I'd like to see the scheduling order in

22   writing, and I'd like you to submit it under (indiscernible).

23   And I want to approve it by order.  I don't want any

24   misconceptions or misunderstandings about deadlines.  That

25   may happen on meet and confers and thorough memorialization

1    in emails.  I think it's best, given the relationship between

2    the parties here, that we have it documented in a form of

3    order that I approve; okay?

4           So I think it's important for everyone to be

5    focusing on that as soon as possible.  To the extent that you

6    need to push the hearing back due to agreed upon reasons, you

7    may do so to accommodate the schedule.  But at this point, it

8    sounds as if we're on for the 26th, and that you can all work

9    backwards; okay?

10          And if there's any issues with the scheduling

11   order, you can contact Ms. Lopez, my courtroom deputy.  And

12   let me know that there is an issue and I'm happy to jump on

13   the phone with you to discuss it.  And if I need, like, a

14   letter in advance, I'll tell you at that point through Ms.

15   Lopez; all right?  So don't hesitate to get me on the phone.

16   I don't like these issues languishing.  And I'm available and

17   I'm happy to hear you to walk through these issues; okay?

18          With that, I think we covered all of the bases

19   today.  But let me ask, is there anything else we should

20   discuss before we part ways for the evening?

21          MR. STEMERMAN:  Nothing further, Your Honor.

22          MR. LARKIN:  Nothing from (indiscernible).  Thank

23   you very much for your time.

24          THE COURT:  Okay.  Thank you again for jumping on

25   and I wish you all a good night.  Take care bye bye.

1    MR. WEIS:  Thank you, Your Honor.

2    MR. LARKIN:  Thank you.

3    (proceeding concluded at 4:40:59 p.m.)

4                          * * * * *

5

6

7

8                    CERTIFICATION

9         I certify that the foregoing is a correct

10   transcript from the electronic sound recording of the

11   proceedings in the above-entitled matter of the proceedings

12   in the above-entitled matter.

13

14    /s/ Dara Bartosiewicz                    April 4, 2021

15   Dara Bartosiewicz, Transcriber