**EXHIBIT B**

**OMNIBUS AGREEMENT**

122209797_2

# OMNIBUS AGREEMENT

OMNIBUS AGREEMENT (this "Agreement"), dated as of May 6, 2020, by and among Stream TV Networks, Inc., a Delaware corporation (the "Company"), SLS Holdings VI, LLC, a Delaware limited liability company ("SLS"), Hawk Investment Holdings Limited, an entity registered in Guernsey ("Hawk"), and certain equity investors of the Company listed on Annex I attached hereto (each an "Investor" and collectively, the "Investors").

WHEREAS, certain of the Investors have brought claims against Mathu Rajan, an individual ("MR"), Raja Rajan, an individual ("RR"), Suby Joseph, an individual ("SJ" and together with MR and RR, the "Company Officers"), Mediatainment, Inc., a Delaware corporation ("Mediatainment"), and Akshaya Holding LLC, a Nevada limited liability company ("Akshaya") in an action filed with the Court of Chancery of the State of Delaware (the "Lawsuit");

WHEREAS, the Company and SLS have entered into that certain (i) 5% Senior Secured Note, dated April 8, 2011, in the principal amount of $3,000,000 ("SLS Note 1"); (ii) 5% Senior Secured Note, dated February 8, 2012, in the principal amount of $1,500,000 ("SLS Note 2"); (iii) 5% Senior Secured Note, dated May 1, 2012, in the principal amount of $500,000 ("SLS Note 3"); (iv) 5% Senior Secured Note, dated May 29, 2012, in the principal amount of $500,000 ("SLS Note 4"); and (v) 5% Senior Secured Note, dated July 5, 2012, in the principal amount of $500,000 ("SLS Note 5", together with SLS Note 1, SLS Note 2, SLS Note 3 and SLS Note 4, each as amended through the date hereof, the "SLS Notes"), and SLS has filed a foreclosure action in Delaware Chancery Court to enforce such rights (such lawsuit and any responses or counterclaims related thereto, the "Foreclosure Action");

WHEREAS, the Company and Hawk have entered into that certain (i) Promissory Note, dated March 26, 2014, in the principal amount of £6,000,000 ("Hawk Note 1"); (ii) Promissory Note, dated October 15, 2014, in the principal amount of £3,000,000 ("Hawk Note 2"); (iii) Promissory Note, dated January 2, 2015, in the principal amount of £8,000,000 ("Hawk Note 3"); (iv) Promissory Note, dated August 6, 2015, in the principal amount of £8,000,000 ("Hawk Note 4"); (v) Promissory Note, dated October 12, 2015, in the principal amount of £5,000,000 ("Hawk Note 5"); (vi) Promissory Note, dated February 15, 2016, in the principal amount of £3,000,000 ("Hawk Note 6"); (vii) Promissory Note, dated July 8, 2016, in the principal amount of £3,500,000 ("Hawk Note 7"); (viii) Promissory Note, dated September 27, 2016, in the principal amount of £2,500,000 ("Hawk Note 8"); (ix) Promissory Note, dated May 3, 2017, in the principal amount of £650,000 ("Hawk Note 9"); (x) Promissory Note, dated December 11, 2017, in the principal amount of £3,500,000 ("Hawk Note 10"); (xi) Promissory Note, dated June 26, 2018, in the principal amount of £600,000 ("Hawk Note 11"); (xii) Promissory Note, dated December 6, 2018, in the principal amount of £1,250,000 ("Hawk Note 12"); (xiii) Promissory Note, dated July 2, 2019, in the principal amount of £3,000,000 ("Hawk Note 13"); (xiv) Promissory Note, dated September 18, 2019, in the principal amount of $770,000 ("Hawk Note 14"); (xv) Promissory Note, dated October 3, 2019, in the principal amount of £2,000,000 ("Hawk

Note 15"); (xvi) Promissory Note, dated January 16, 2020, in the principal amount of £600,000 ("Hawk Note 16"); (xvii) Promissory Note, dated February 26, 2020, in the principal amount of $183,601.19 ("Hawk Note 17a"); (xviii) Promissory Note, dated February 26, 2020, in the principal amount of $382,757.14 ("Hawk Note 17b", together with Hawk Note 1, Hawk Note 2, Hawk Note 3, Hawk Note 4, Hawk Note 5, Hawk Note 6, Hawk Note 7, Hawk Note 8, Hawk Note 9, Hawk Note 10, Hawk Note 11, Hawk Note 12, Hawk Note 13, Hawk Note 14, Hawk Note 15, Hawk Note 16, Hawk Note 17a and any other indebtedness of the Company in favor of Hawk, each as amended through the date hereof, the "Hawk Notes", and together with the SLS Notes, the "Notes");

WHEREAS, each of the SLS Notes and each of the Hawk Notes have matured or are in default and immediately due and payable, and the Company is obligated to pay to the holders of the respective notes, the amounts due thereunder (including, without limitation, principal and accrued and unpaid interest thereon) (such amounts, with respect to any such note, the "Applicable Obligations") without the giving of notice or demand by the applicable holder;

WHEREAS, the Company is unable to satisfy and pay the Applicable Obligations as required;

WHEREAS, each of SLS and Hawk has notified the Company that (i) the Applicable Obligations are immediately due and payable, an Event of Default has occurred and is continuing and the default rates of interest and late fees, as applicable, provided thereunder, are in effect and (ii) each of SLS and Hawk intend to exercise all rights and remedies available to them under the SLS Notes and Hawk Notes, and under the Amended and Restated Security Agreement, dated as of February 8, 2012, by and between the Company and SLS (the "SLS Security Agreement") and each Security Agreement and Pledge Agreement, relating to Hawk Notes 1 through 12, entered into by and between the Company and Hawk (the "Hawk Security Agreements", together with the SLS Security Agreement, the "Security Agreements"), as applicable, including foreclosure on all assets of the Company (the "Foreclosure");

WHEREAS, SLS and Hawk have each agreed to stay the Foreclosure and satisfy and extinguish each of the SLS Notes and the Hawk Notes in their entirety subject to the Company assigning all right, title and interest in and to all assets of the Company to a newly-formed holding company ("Newco") established by SLS and Hawk, in satisfaction of the SLS Notes and the Hawk Notes;

WHEREAS, subject to the performance by the Company of its obligations hereunder, the Investors have agreed to forebear from asserting any claims against the Company related to the Lawsuit; and

WHEREAS, the parties desire to memorialize in this Agreement the terms and conditions of certain other actions to be performed by the parties, and this Agreement shall govern the respective rights and obligations of the parties in connection with such actions.

# ARTICLE I

## THE TRANSACTIONS

1.1 <u>Transactions</u>. Subject to the terms and conditions set forth herein, and on the basis of and in reliance upon the representations, warranties, covenants and agreements set forth herein, the parties hereto shall promptly take the actions described in this <u>Section 1.1</u> (each, a "<u>Transaction</u>" and, collectively, the "<u>Transactions</u>"):

(a)     Each of SLS and Hawk shall agree to stay the Foreclosure and satisfy and extinguish, in their entirety, the SLS Notes and the Hawk Notes, respectively (collectively, the "<u>Discharged Indebtedness</u>"), upon the Company's immediate conveyance, transfer, delivery and assignment, of all right, title and interest of the Company in, to or under all of the rights, properties and assets of the Company (including those of any direct or indirect subsidiary of the Company) of every kind and description, wherever located, real, personal, or mixed, tangible or intangible, to the extent owned, leased, licensed, used or held for use in or relating to the business, as the same shall exist on the date hereof, to Newco, including, but not limited to, all right, title and interest of the Company (or any direct or indirect subsidiary of the Company) in, to and under the assets listed or described below (the "<u>Transferred Assets</u>"):

(i)     all accounts receivable (whether current or noncurrent) outstanding as the date hereof;

(ii)     all intercompany accounts receivables as to which any subsidiary is an obligor or is otherwise responsible or liable and which are owed or payable to the Company;

(iii)     all credits, claims for refunds and prepaid expenses and other prepaid items;

(iv)     the contracts listed, described or otherwise identified on <u>Schedule 2.5</u> for transfer to Newco as such schedule may be amended from time to time and the rights thereunder;

(v)     all raw materials, work-in process, prototypes, finished goods, supplies, components, packaging materials, and other inventories to which the Company or any of its subsidiaries have title that are in the possession of the Company or any of its subsidiaries or any third party and used or held for use in connection with the business, including, but not limited to, those items set forth on <u>Schedule 2.9</u>;

(vi)     all machinery, equipment, apparatus, appliances, computers and computer-related hardware, network and internet and information technology systems-related equipment and all other tangible personal property used or held for use in conduct of the business, including, but not limited to, those items set forth on <u>Schedule 2.8</u>;

(vii)    all equity, voting and economic interest in each subsidiary of the Company;

(viii)    all intellectual property (including, but not limited to, patents, trademarks, trade secrets, copyrights, internet domain names and all applications for, and registrations of, any of the foregoing) and all of the rights of the Company or any of its subsidiaries therein, including all rights to sue for and recover and retain damages for present and past infringement thereof, and, in the case of any trademarks, all goodwill appurtenant thereto, including, but not limited to, those items set forth on <u>Schedule 2.10</u>;

(ix)    all rights under non-disclosure or confidentiality, invention and intellectual property assignment covenants executed for the benefit of the Company or any of its subsidiaries with current or former employees, consultants or contractors of the Company, its subsidiaries or with third parties;

(x)    all books and records of the Company and its subsidiaries;

(xi)    to the extent transferable, all permits required for the operation of the business and all pending applications therefor;

(xii)    to the extent transferable, all insurance policies and rights thereunder;

(xiii)    all goodwill associated with the business and the Transferred Assets;

(xiv)    all rights, claims, rebates refunds, causes of action, actions, suits or proceedings, hearings, audits, rights of recovery, rights of setoff, rights of recoupment, rights of reimbursement, rights of indemnity or contribution and other similar rights (known and unknown, matured and unmatured, accrued or contingent, regardless of whether such rights are currently exercisable) against any person, including all warranties, representations, guarantees, indemnities and other contractual claims (express, implied or otherwise) to the extent related to the business or the assets of the Company or any of its subsidiaries (including any claims for past infringement or misappropriation); and

(xv)    any and all insurance proceeds, condemnation awards or other compensation in respect of loss or damage to any of the assets to the extent occurring on or after the date hereof, and all rights and claims of the Company or any of its subsidiaries to any such insurance proceeds, condemnation awards or other compensation not paid by the date hereof.

(b)     Newco shall assume and agree to pay, perform, fulfill and discharge solely those liabilities and obligations of the Company, in each case, to the extent expressly set forth on Schedule 1.1(b), to be provided as promptly as practicable hereafter (the "Assumed Liabilities").

(c)     SLS and Hawk shall form Newco in accordance with the applicable laws of its jurisdiction of formation.  Newco shall issue promissory notes and shares to SLS and to Hawk as decided between them.  The holders of such promissory notes shall jointly determine the size and composition of the initial Board of Directors of Newco, and shall name the initial executive officers of Newco.

(d)     Each holder of shares of Class A Common Stock of the Company (as defined in the Third Amended and Restated Certificate of Incorporation of the Company, dated as of December 17, 2018 (the "Existing Charter"), other than the Company Officers, Mediatainment, Akshaya or their respective affiliates, shall be entitled to exchange their respective shares of Class A Common Stock of the Company for an identical number of the common shares of Newco for no cost, and otherwise on such terms and conditions as will be decided by Newco.

(e)     Each holder of shares of common stock of Mediatainment, other than the Company Officers, Akshaya or their respective affiliates (as such are defined jointly by SLS and Hawk, the "Redeemed Mediatainment Holders"), shall have their respective shares of Mediatainment redeemed by Mediatainment in exchange for their pro rata portion of the shares of Class A Common Stock of the Company held by Mediatainment (the "Redemption").  Immediately following the Redemption, the Redeemed Mediatainment Holders shall be entitled to exchange their respective shares of Class A Common Stock of the Company for an identical number of the common shares of Newco for no cost, and otherwise on such terms and conditions as will be decided by Newco.

(f)     The Company shall be entitled to receive 1,000,000 shares of Class A Common Stock of Newco in respect of any residual interest it may have in the transferred assets (the "Company Issuance"), on the terms and conditions as set forth on Annex II.

(g)     Each holder of shares of Class A Common Stock of the Company that elects to exchange his, her or its respective shares of Class A Common Stock of the Company for a pro rata portion of the common shares or equity of Newco pursuant to Sections 1.1(d), (e), and (f) hereof, shall, in addition to those terms and conditions set by Newco and as a condition to such transfer, irrevocably, unconditionally, and fully release the Company, SLS, Hawk, the Investors and each of their respective affiliates, and shareholders, officers and directors, from any and all, actual or potential, charges, complaints, claims, counterclaims, duties, actions, causes of action in law or in equity, suits, liens, liabilities, debts due, sums of money, demands, obligations, accountings, damages, punitive damages, losses, costs or expenses, attorneys' fees or any nature whatsoever and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, whether arising under state, federal or other law, or based on

common law, statutory law, regulations or otherwise, that such holders of shares of Class A Common Stock of the Company at any time had or claimed to have in respect of their investment in the Company.

(h)     The Company and the Board shall promptly take all action necessary to change the name of the Company to exclude any reference to "Stream TV", "Ultra D" or any similar service or technology.

1.2     Dismissal of Lawsuit and Foreclosure Action.  In consideration of the Transactions contemplated by Section 1.1 of this Agreement and such other agreements as made be made among the parties hereto and upon consummation thereof, (i) the Investors hereby irrevocably agree to forbear from including any claims against the Company or any of the Transferred Assets as part of the Lawsuit, and (ii) each of the SLS and the Company agree to dismiss their applicable claims or responses in the Foreclosure Action.

1.3     Employees.  Effective as of the date of the assignment of the Transferred Assets to Newco, (a) each employee of the Company set forth on Annex II hereto or subsequently identified to the Company in writing shall be released from all of his or her employment obligations to the Company, so that he or she may commence employment with Newco or its subsidiaries, and (b) without limiting the foregoing, the Company shall waive any restrictive covenants between the Company and any such employee solely to the extent such waiver allows such employee to be employed by Newco or its subsidiaries and not be subject to such covenants in connection with his or services to Newco or its subsidiaries.

1.4     Consent to Transactions.  Subject to the last sentence of this Section 1.4, each of the parties hereto, and their respective directors, officers, employees and representatives, shall use best efforts to (i) execute and deliver such other instruments of conveyance, transfer or assumption, as the case may be, and take such other action as may be reasonably requested to implement more effectively the conveyance and transfer of the Transferred Assets to Newco and (ii) effect, or cause to be effected, to the extent within its control, each of the Transactions.  In furtherance of the foregoing, each of the Company and its subsidiaries hereby grants to Shad Stastney an irrevocable power of attorney to take all action necessary or advisable to effect the delivery, conveyance, transfer and assignment to Newco of the Transferred Assets.  If, following the date hereof, the Company receives or becomes aware that it holds any asset, property or right which constitutes a Transferred Asset, then the Company shall transfer such asset, property or right to Newco and/or, as applicable, one or more designees of Newco as promptly as practicable for no additional consideration.  In furtherance and without limitation of the foregoing, the Company shall use its best efforts and shall take all action necessary to solicit and obtain any approvals, consents, or waivers that may be necessary or appropriate in order to effect the Transactions contemplated hereby.  Each of SLS, Hawk and the Investors hereby irrevocably agrees to execute any written consent and to vote, and to cause their respective affiliates to execute any written consent and to vote, in each case to the extent necessary or requested by the Company or the Investors, all of the

shares of capital stock of the Company over which each has voting control in favor of the Transactions contemplated hereby.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

2.1     Representations and Warranties.  Each party hereto hereby represents and warrants to all of the other parties hereto as follows:

(a)     The execution, delivery and performance by such party of this Agreement and of the other documents contemplated hereby, to the extent a party thereto, has been duly authorized by all necessary action (subject to receipt by the Company of all of the applicable approvals).  If such party is not an individual, such party is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization or incorporation.

(b)     Such party has the requisite power, authority, legal right and, if such party is an individual, legal capacity, to execute and deliver this Agreement and each of the other documents contemplated hereby, to the extent a party thereto, and to consummate the transactions contemplated hereby and thereby, as the case may be.

(c)     This Agreement and each of the other documents contemplated hereby, to the extent a party thereto, has been duly executed and delivered by such party and constitutes the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally and (ii) general equitable principles (whether considered in a proceeding in equity or at law).

(d)     Neither the execution, delivery and performance by such party of this Agreement and the other documents contemplated hereby, to the extent a party thereto, nor the consummation by such party of the transactions contemplated hereby, nor compliance by such party with the terms and provisions hereof, will, directly or indirectly (with or without notice or lapse of time or both), (i) if such party is not an individual, contravene or conflict with, or result in a breach or termination of, or constitute a default under (or with notice or lapse of time or both, result in the breach or termination of or constitute a default under) the organizational documents of such party, (ii) constitute a violation by such party of any existing requirement of law applicable to such party or any of its properties, rights or assets or (iii) require the consent or approval of any person or entity, except, in the case of clauses (ii) and (iii), as would not reasonably be expected to be material to the ability of such party to consummate the transactions contemplated by this Agreement.

2.2     Except for the Lawsuit, the Investors represent and warrant to the Company that the Investors have not filed and will not file any complaints, claims, or

actions against the Company or any Released Party (as defined in Section **Error! Reference source not found.** below) with any state, federal, or local agency or court.

2.3     Except for the Foreclosure Action, each of SLS, the Company and Hawk represent and warrant to each other party hereto that it has not filed and will not file any complaints, claims, or actions against such other party or any Released Party (as defined in Section **Error! Reference source not found.** below) with any state, federal, or local agency or court.

2.4     The Company represents and warrant to the Investors that it has not filed and will not file any complaints, claims, or actions against the Investors or any Released Party (as defined in Section 3.1 below) with any state, federal, or local agency or court. The Company covenants and agrees that it shall not file any complaints, claims, or actions against the Investors or any Released Party with respect to a claim released pursuant to Section 3.1 below at any time hereafter.

2.5     The Company represents and warrants  that Schedule 2.5 of this Agreement sets forth a true, complete and correct capitalization table of the Company including (a) the number and class of shares of capital stock or other equity interests (including, all warrants, options, convertible securities or other similar interests) that are (i) authorized and (ii) issued and outstanding, (b) the class and number of such equity interests held by each record holder thereof, and (c) the identity of each record holder thereof. Except as set forth in Schedule 2.5, there are not issued, reserved for issuance or outstanding, and there are not any outstanding obligations of the Company to issue, deliver or sell, or cause to be issued, delivered or sold, (x) any capital stock or any securities of the Company convertible into or exchangeable or exercisable for shares of capital stock or voting securities of, or other equity interests in, the Company, (y) any warrants, calls, options, phantom stock, stock appreciation rights or other rights to acquire from the Company, or any other obligation of the Company to issue, deliver or sell, or cause to be issued, delivered or sold, any capital stock or voting securities of, or other equity interests in, the Company or (z) any rights issued by, or other obligations of, the Company that are linked in any way to the price of any class of Company capital stock, the value of the Company or any part of the Company or any dividends or other distributions declared or paid on any shares of capital stock of the Company.

2.6     The Company represents and warrants to the Investors, SLS and Hawk that true, complete and correct copies of all contracts material to the business of the Company or any of its subsidiaries or their respective assets, liabilities, operations or prospects, including all amendments, modifications, and supplements thereto have been made available to the Investors, SLS and  Hawk as are listed on Schedule 2.6 hereto. Each such material contract is valid, binding, enforceable and in full force and effect in all material respects in accordance with its terms with respect to the Company, and to the knowledge of the Company, each other party to such material contracts.

2.7     The Company represents and warrants to the Investors that Schedule 2.7 of this Agreement sets forth a true, complete and correct list of (i) all of the

creditors of the Company or any of its subsidiaries and (ii) the outstanding obligations owed to each such creditor.

2.8     The Company represents and warrants to the Investors that Schedule 2.8 of this Agreement sets forth the addresses of all of the real property owned, leased (as lessor or lessee), subleased (as sublessor or sublessee), licensed (as licensor or licensee) by the Company or any of its subsidiaries and a true, complete and correct list of all of the leases relating thereto (including all amendments and modifications thereof) as in effect on the date hereof.

2.9     The Company represents and warrants to the Investors that Schedule 2.9 of this Agreement sets forth of all of a true, complete and correct list of all of the machinery, equipment, apparatus, appliances, computers and computer-related hardware, network and internet and information technology systems-related equipment and all other tangible personal property owned or leased by the Company or any of its subsidiaries.

2.10     The Company represents and warrants to the Investors that Schedule 2.10 of this Agreement sets forth a true, complete and correct list of all of the raw materials, work-in process, prototypes, finished goods, supplies, components, packaging materials, and other inventories to which the Company or any of its subsidiaries have title that are in the possession of the Company or any of its subsidiaries or any third party and used or held for use in connection with the business.

2.11     The Company represents and warrants to the Investors that Schedule 2.11 of this Agreement sets forth a true, complete and correct list of all of the intellectual property (including, but not limited to, patents, trademarks, trade secrets, copyrights, internet domain names and all applications for, and registrations of, any of the foregoing) of the Company or any of its subsidiaries.

## ARTICLE III

## RELEASE OF CLAIMS

3.1     Company Release of Claims. In consideration for the promises and obligations set forth in this Agreement, and subject to the consummation of the Transactions contemplated by Section 1.1 of this Agreement, the Company and each of its subsidiaries (the "Releasing Parties"), on behalf of themselves and the Released Parties, hereby irrevocably, unconditionally and fully release the Investors, SLS, Hawk and each of their respective heirs, family, and affiliates, and all trusts established by the Investors and the trustees thereof, whether or not such individuals are acting as trustees as of the date hereof, and each of their respective agents, trustees, trust beneficiaries, employees, officers, directors, attorneys, executors, successors, assigns and administrators (the "Released Parties"), from any and all, actual or potential, charges, complaints, claims, counterclaims, actions, causes of action in law or in equity, suits, liens, liabilities, debts due, sums of money, demands, obligations, accountings, damages, punitive damages, losses, costs or expenses, attorneys' fees of any nature whatsoever and liabilities of any kind or nature whatsoever, known or unknown, suspected or

unsuspected, whether arising under state, federal or other law, or based on common law, statutory law, regulations or otherwise (hereinafter referred to as "claim" or "claims"), that the Releasing Parties or any Released Party at any time had or claimed to have or that the Releasing Parties or any Released Party may have or claim to have regarding any matter from the beginning of time up to and including the date of this Agreement and any matter related to the Lawsuit.

#### 3.2    No Admission of Liability.

(a)    *No Admission of Liability by the Releasing Parties or any Released Party*. This Agreement and compliance with this Agreement shall not be construed as an admission by the Releasing Parties or any Released Party of any liability whatsoever, or as an admission by the Releasing Parties or any Released Party of any violations of the rights of the Investors or any person or violation of any order, law, statute, duty, or contract whatsoever against the Investor or any person.

(b)    *No Admission of Liability by the SLS, Hawk or the Investors*. This Agreement and compliance with this Agreement shall not be construed as an admission by the Investors or any Investor Released Party of any liability whatsoever, or as an admission by the Investors or any Investor Released Party of any violations of the rights of the Releasing Parties or any person or violation of any order, law, statute, duty, or contract whatsoever against the Releasing Parties or any person.

3.2    Communication with Government Agency. Nothing in this Agreement in any way interferes with an Investor's or the Company's right and responsibility to give truthful testimony under oath. The releases set forth in this Article III are effective except to the extent prohibited by law.

### ARTICLE IV

### INDEMNIFICATION

4.1    Indemnification. From and after the date hereof, except for the Assumed Liabilities, the Company shall indemnify (on a full indemnity basis), defend and hold harmless SLS, Hawk, the Investors, Newco and each of their affiliates, and each such party's directors, officers, managers, employees, stockholders, representatives, successors and assigns (each, an "Indemnified Party") from and against any and all losses, liabilities, expenses, costs, claims, suits, actions, penalties, judgments, fines and damages resulting from, imposed upon or suffered by any Newco Indemnified Party, arising out of or related to:

(a)    any claims against or liabilities or obligations of the Company or its affiliates and subsidiaries not explicitly assumed hereunder;

(b)    any claims, liabilities or obligations arising out of the Transferred Assets not explicitly assumed hereunder; and

(c)     any claims, liabilities or obligations brought against the Company, its affiliates and subsidiaries or any Indemnified Party by any equity investor or creditor of the Company and its affiliates and subsidiaries.

## ARTICLE V

## MISCELLANEOUS

5.1     <u>Amendments and Waivers</u>.  This Agreement may be modified, amended or waived only with the written approval of each of the parties hereto.  The failure of any party to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of such provisions and shall not affect the right of such party thereafter or any other party hereto to enforce each and every provision of this Agreement in accordance with its terms.

5.2     <u>Successors and Assigns</u>.  This Agreement shall bind and inure to the benefit of and be enforceable by the parties hereto and their respective successors and permitted assigns.  No rights or obligations under this Agreement may be assigned by any party hereto without the prior written consent of each other party hereto.

5.3     <u>Notices</u>.  All notices, requests and other communications to any party hereunder shall be in writing (including electronic mail ("e-mail") transmission, so long as a receipt of such e-mail is requested and not received by automated response or notice is given on the next business day by alternative means permitted by this <u>Section 5.3</u>).  All such notices, requests, and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. on a business day in the place of receipt.  Otherwise, any such notice, request or communication shall be deemed to have been received on the next succeeding business day in the place of receipt.  All such notices, requests and other communications to any party hereunder shall be given to such party as follows:

If to the Company and the Company Officers:

Stream TV Networks, Inc.
2009 Chestnut Street
Philadelphia, Pennsylvania 19103
Attention: Raja Rajan
Email: raja@streamtvnetworks.com

with a copy (which shall not constitute notice) by email to:

[●]

If to the Investors:

Alastair Crawford

11

c/o Adams & Remers LLP
55-58 Pall Mall
London, United Kingdom SW1Y 5JH
Attention: Alastair Crawford
Email: alastair.crawford@gmail.com

with a copy (which shall not constitute notice) by email to:

Skadden, Arps, Slate, Meagher & Flom LLP
920 North King Street
Wilmington, Delaware 19801
Attention: Faiz Ahmad
Email: faiz.ahmad@skadden.com

If to SLS:

SLS Holdings VI, LLC
392 Taylor Mills Road
Marlboro, New Jersey 07746
Attention: Shad Stastney
Email: slstastney@hotmail.com

with a copy (which shall not constitute notice) by email to:

Quarles & Brady
411 E. Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53202-4426
Attention: Jonathan Hackbarth, Esq.
Email: jon.hackbarth@quarles.com

If to Hawk:

Hawk Investment Holdings Limited
Newport House
15 The Grange
St. Peter Port, Guernsey GY1 2QL, Channel Islands
Attention: [●]
Email:a.holt@albanytrustee.com; r.maunder@albanytrustee.com

with a copy (which shall not constitute notice) by email to:

First Sentinel
Attention: Colin Maltby
Email: colin@first-sentinel.com

5.4     Entire Agreement. Except as otherwise expressly set forth herein, this Agreement, together with the other documents contemplated hereby, embodies the complete agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements, or representations by or among the parties, written or oral, that may have related to the subject matter hereof in any way. Each party acknowledges that it is not entering into this Agreement on the basis of or in reliance upon any promise, representation, or warranty other than as explicitly contained in this Agreement. This Agreement shall be valid, binding and enforceable among the parties that have executed this Agreement as between such parties, notwithstanding the failure of any other person expected to be a party to this Agreement to so execute.

5.5     No Third Party Beneficiary. Nothing in this Agreement shall confer any rights, remedies or claims upon any creditors of a party hereto or any other natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, joint venture, business enterprise, trust, or other legal entity not a party or a permitted assignee of a party to this Agreement.

5.6     Governing Law; Jurisdiction; Enforceability. This Agreement shall be governed in all respects by the laws of the State of Delaware, without regard to the conflicts of law rules of such State that would result in the application of the laws of any other State. Each party hereby agrees and consents to be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware in any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby. Each of the parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of or in connection with this Agreement in the Court of Chancery of the State of Delaware or, if the Court of Chancery lacks subject matter jurisdiction, any court of the State of Delaware situated in New Castle County or the United States District Court for the District of Delaware and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit, or proceeding brought in any such court has been brought in an inconvenient forum, and agrees not to raise any other objection to venue in any such court. It is agreed and understood that monetary damages would not adequately compensate an injured party for the breach of this Agreement, that this Agreement shall be specifically enforceable, and that any breach or threatened breach of this Agreement shall be the proper subject of a temporary or permanent injunction or restraining order. Further, each party hereto waives any claim or defense that there is an adequate remedy at law for such breach or threatened breach.

5.7     WAIVER OF JURY TRIAL. FOR THE AVOIDANCE OF DOUBT, EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

5.8　Counterparts; Facsimile Signatures. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. This Agreement may be executed by facsimile, e-mail or .pdf format signature(s).

5.9　Other Definitional and Interpretative Provisions. The words "hereof", "herein" and "hereunder" and words of like import used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. References to Sections and Exhibits are to Sections and Exhibits of this Agreement unless otherwise specified. All Exhibits annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Exhibit but not otherwise defined therein shall have the meaning as defined in this Agreement. Any singular term in this Agreement shall be deemed to include the plural, and any plural term the singular. Whenever the words "include", "includes", or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import. "Writing", "written", and comparable terms refer to printing, typing, and other means of reproducing words (including electronic media) in a visible form. References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder. References to any agreement or contract are to that agreement or contract as amended, modified, or supplemented from time to time in accordance with the terms hereof and thereof. References to any person or entity include the successors and permitted assigns of that person or entity. References from or through any date mean, unless otherwise specified, from and including or through and including, respectively. This Agreement is being entered into between sophisticated parties, each of which or whom has reviewed the Agreement, had the opportunity to discuss it with its, his or her counsel, and is fully knowledgeable about its terms and conditions. The parties therefore agree that this Agreement shall be construed without regard to the authorship of the language and without any presumption or rule of construction in favor of any of them.

5.10　Expenses. Each party shall bear its own expenses in connection with the Transactions contemplated by this Agreement, including costs of their respective attorneys, accountants, investment bankers, brokers, and other representatives.

5.11　Non-Disparagement. In consideration of the transactions contemplated hereunder, each party hereto agrees that, as long as the other parties comply with each of their respective obligations under this Agreement, such party shall not, directly or indirectly, (i) make any public statement concerning the circumstances resulting in the execution of this Agreement or (ii) make comments which are intended to disparage any other party hereto.

5.12　Confidentiality. All information contained herein or related to the contents of this Agreement, including the terms and existence of this Agreement, is

confidential, and shall not be disclosed to anyone including to any stockholder or investor of the Company not a party hereto, other than the parties hereto and their legal or financial advisors who (a) need to know the information to evaluate the Transactions or perform their respective obligations hereunder and (b) are bound to keep such information confidential, unless disclosure is expressly required in order to comply with, law, regulatory authority or judicial, legal or regulatory process, or in order to enforce a party's rights hereunder, in which case the other parties shall be notified in advance to the extent practicable and permitted by law.

[Signature Page to Follow.]

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

**STREAM TV NETWORKS, INC.**

By: _____

Name: Asaf Gola

Title: Authorized Signatory

By: _____

Name:

Title:

**SLS HOLDINGS VI, LLC**

By: _____

Name: Shad L. Stastney

Title: Managing Member

**HAWK INVESTMENT HOLDINGS LIMITED**

By: _____

Name:

Title:

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

**STREAM TV NETWORKS, INC.**

By: _____
      Name:
      Title:

By: _____
      Name: KEVIN JOHN GOLLOP
      Title: AUTHORIZED SIGNATORY.

**SLS HOLDINGS VI, LLC**

By: _____
      Name:
      Title:

**HAWK INVESTMENT HOLDINGS LIMITED**

By: _____
      Name:
      Title:

IN WITNESS WHEREOF, the parties hereto have executed this Omnibus Agreement as of the date first above written.

**STREAM TV NETWORKS, INC.**

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**SLS HOLDINGS VI, LLC**

By: _____
    Name:
    Title:

**HAWK INVESTMENT HOLDINGS LIMITED**

By: _~~Emma~~_____
    Name: EMMA MCINTOSH & LEE MEARING
    Title: AUTHORISED SIGNATORIES FOR
    ALBANY DIRECTORS LIMITED AS SOLE
    DIRECTOR OF HAWK INVESTMENT
    HOLDINGS LIMITED

**Signed for and behalf of the Investors listed in Annex I**


_(signature)_

Alastair Crawford

_(signature)_

Robert Petch

_(signature)_

Patrick Miles

## ANNEX I

## INVESTORS

Adam Bidwell
Adrian Conrad Holmes
Alan Wood
Alastair Duncan Hadfield Crawford
Amlin Investments Ltd.
Andrew Charles Finnemore Capon
Andrew Mark Slinger
Anthony Wigram
Batten Trustee Ltd. As Trustee of the Arrow Trust
Broughton Ltd.
Charles J. Caminada
Charles William David Birchall
David Taylor
DEAR SPA
Keith Owen Claude Merrick
Eamonn Manson
Edward Napier Tremayne Miles
Framse Holding GmbH
Guy Henry Toller
Reyker Nominees Limited
Hadron Master Fund
Hallfield Holdings SA
Hanson Holdings Lux S.a.r.l.
Guy H.A. Chisenhale-Marsh
Jacopo Franzan
Keith Gordon Marsden
Keith Young
Lapis Ventures SAC Limited
Leman Management Nominees Limited
Leonardo Zampatti
Londer Securities S.A.
Mark Andrew Vully De Candole
Mark Dyer
Joel Pace Kallan
Michael Haggiag Family Trust u/a dtd 1/6/2014
Hugh Rokeby Holland
Nicholas P Wentworth-Stanley
Oliroma Holdings SRL
Patrick Miles
Pepper Grove Holdings Limited
Kathryn Toller
Pershing Nominees Ltd. a/c CCCLT

Puddles 2 Limited
Richard F.B. Milligan-Manby
Rupert Corfield
S F Booth
Tarlton Parsons
Timothy D.K. Simond
Tracy Anne Pernice
Victoria Alice Slinger
Walmer Capital Limited
Windsor International Corporation

**ANNEX II**

## RELEASED EMPLOYEES

To be provided