IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Stream TV Networks, Inc. | : | Case No. 21-10433 (KBO) |
| | : | |
| Debtor. | : | **Objection Deadline: TBD** |
| | : | **Hearing Date: TBD** |
| | : | **Related D.I. 138** |

## MATHU RAJAN'S EMERGENCY MOTION TO REQUEST CONTINUANCE AND PRELIMINARY RESPONSE IN OPPOSITION TO THE MOTION OF SEECUBIC, INC. FOR AN ORDER PERMITTING MOVANT TO ENFORCE CHANCERY COURT'S PRELIMINARY INJUNCTION ORDER AGAINST MATHU RAJAN

Mathu Rajan ("**Mr. Rajan**"), *pro se*, hereby provides this preliminary response in opposition to the *Motion of SeeCubic, Inc.* (the "**Movant**") *for an Order Permitting Movant to Enforce Chancery Court's Preliminary Injunction Order Against Mathu Rajan* (the "**Motion**") [D.I. 138] notwithstanding the potential application of section 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). In support of this motion for a continuance and preliminary response, I respectfully represent the following:

### PRELIMINARY STATEMENT

1. I originally filed on **May 27, 2020** before the Pennsylvania Court of Common Pleas an action against Alastair Crawford and Patrick Miles for defamation and various other civil torts. On March 26, 2021, during the above captioned bankruptcy and close to a year after I filed the original actions, defendants Alastair Crawford and Patrick Miles through Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") and local counsel Pietragallo Gordon Alfano Bosick & Raspanti, LLP ("**Pietragallo**"), removed a civil action from the Pennsylvania Court of Common Pleas by filing a *Notice*

*of Removal* of the action to the US District Court for the Eastern District of Pennsylvania (the "**District Court Action**"). On April 2, 2021, Skadden and Pietragallo filed a motion to dismiss (the "**Motion to Dismiss**") the action.

2.    On April 15, 2021, I filed a *pro se* First Amended Complaint in the Eastern District of Pennsylvania (the "**First Amended Complaint**") against certain of the Omnibus Agreement's signatories and certain of the investor group representatives so that the action was now against Alastair Crawford, Patrick Miles, Kevin Gollop, Kristoff Kabacinski, Asaf Gola, and Shadron Stastney (the "**Defendants**" in the District Court Action). I simply reviewed what the Defendants had done to my brother, Raja Rajan, and his complaint and followed suit as Judge Savage had also dismissed their attempt to dismiss his case after he amended the complaint.

3.    After I amended the complaint, Judge Savage dismissed the Crawford Motion to Dismiss as moot. No other action has taken place in the District Court Action since the dismissal of the motion to dismiss the bankruptcy which is on an expedited schedule.

4.    I do not understand why **the Motion inexplicably omitted these circumstances related to my District Court Action.**

5.    SeeCubic, Inc., SLS Holdings VI, LLC, Hawk Investment Holdings Limited, and the Debtor are NOT parties to my District Court case and the validity of directors or their ability to settle away all the assets in the company without shareholder approval is not the subject of this District Court case.

6.    I would be willing to stay the action if the Defendants would agree to a mutual stay as opposed to continuing to litigate through further motions to dismiss, which I believe are to be filed any day now. The Omnibus Agreement does not settle or release actions held by me in my individual capacity (*See* Omnibus Agreement, Art. 3.1), since I am not a party to the agreement,

and was kept in the dark about several key terms which are still open items to this day. I have only acted to preserve the cause of action I filed over a year ago.

7. I request an emergency continuance to allow me to secure personal counsel and to allow either myself as a *pro se* party, if I can't get counsel to assist me, to prepare properly or to have my counsel prepare properly because the Motion is to be heard in the middle of the expedited schedule to the Motion to Dismiss the bankruptcy. I would request that the response and objection deadline be set at a time that allows me to properly respond and defend the motion whether it is *pro se* or through counsel. I also reserve the right to further respond but include information to provide the Court with context that shows that I will be greatly prejudiced, as will the Debtor, and the Debtor's estate, under the current schedule.

### I.   The Movant improperly set the objection deadline and hearing date.

8. I am very concerned because I have been unable to find personal counsel on such a short time frame and have been up 24 hours a day in some instances dealing with issues with both the assets of the Debtor and preserving them as well as preserving relationships with vendors and people in our supply chain, all of which are in multiple time zones spanning from China, to the US, to Europe and the Middle East. All of these parties are patiently waiting for some sort of resolution in this bankruptcy.

9. The lawyers for the Debtor have alerted me to the fact that the Movant filed the Motion on April 22, 2021, which was served to me the same day via e-mail and first-class mail (*See* Certificate of Service, [D.I. 138-6]). Following Del. Bankr. L.R. 9006-1(c)(i) and (ii), the Movant set the objection deadline on April 29, 2021 at 4:00 pm (Eastern) and the hearing date on May 6, 2021 at 1:00 pm (Eastern). I have been told and have reviewed the rules, though I am not a lawyer, that this is not enough time, under Fed. R. Bankr. P. 9006(f) *Additional Time After*

*Service by Mail or Under Rule 5(b)(2)(D) or (F) F. R. Civ. P.*, which requires the addition of three days after service by mail. I understand from speaking to others that action in the Bankruptcy Court requires proper notice under normal circumstances. I barely have enough time to keep up with my operational responsibilities in the Debtor and my bankruptcy responsibilities, which includes negotiating for DIP financing and exit financing and being deposed and addressing issues from our lawyers in the Debtor.

10. Three days in the context of my responsibilities in this very quick litigation of the Motion to Dismiss filed by the Movant is really harmful to our efforts and to our case. I have literally less than a few days to try and find Delaware counsel, or appear *pro se*, in which case I have to prepare myself, prepare for that deposition, be deposed, and handle everything else in the bankruptcy. The only reason I even paid attention to the Philadelphia action was because my brother filed a similar action and motions to dismiss were filed against him by Skadden and I didn't want to lose my rights by being neglectful.

II. **I have not attacked the Chancery Opinion and the PI Order through the First Amended Complaint**

11. The Movant claims I am attacking the Delaware Chancery Court's December 8, 2020 Opinion and Order (the "**Chancery Opinion**" and the "**PI Order**"), and I am violating the PI Order (Motion, at ¶ 2). I have been very careful to avoid the Chancery Opinion and the PI Order, and had not been actively pursuing the Philadelphia action, but my action in Pennsylvania is not focused on governance issues and whether a board can foreclose on assets under the Omnibus Agreement. It is my understanding that the Chancery Court Opinion addressed (a) whether the directors were (i) appointed validly, or (ii) were acting as de facto directors, or (iii) whether they were removed before approving the Omnibus Agreement; and (b) whether the Omnibus Agreement required shareholder approval. (*See Visual Technology Innovations, Inc.'s Response*

4

*in Opposition to the Motion of Seecubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case* [# 101 at 20]).  None of those points are disputed in this chapter 11 case, and none of those points are disputed in the District Court Action.

12.  The fall-out from the agreement resulted in serious ramifications for vendors and employees which include me and my family.  Nothing in my allegations refutes any finding in the PI, and the causes of action in the District Court Action were never litigated before the Chancery Court, which as was explained to me multiple times was an action limited in scope and related to the seizure of equipment prior to the litigation of a pending foreclosure action, and I don't understand how that relates to the action I have filed, but I am willing to stay that action so I can properly focus on the Motion to Dismiss.

13.  Movant alleges that I called into question the validity of the Omnibus Agreement in three places in my complaint:

- Mr. Rajan alleges that the independent directors who signed the Omnibus Agreement on behalf of the Debtor were merely "advisors," implying that they lacked the authority to bind the Debtor, see Compl. ¶¶ 128-29;

- Mr. Rajan alleges that Movant "allege[s]" it now owns the assets of Debtor that are the subject of the Omnibus Agreement, see Compl. ¶ 134; and

- Mr. Rajan alleges that "Kevin Gollop and Asaf Gola executed *allegedly on behalf of Mathu's employer* an agreement called the 'Omnibus Agreement'" (emphasis added), Compl. ¶ 149.

14.  In the first example, I refer to the parties in question as advisors, but I acknowledge that they were directors.  I do not imply that these individuals were "mere advisors" as Movant claims and the quote is taken completely out of context.  I directly state that the individuals were directors subsequent to their initial hiring as advisors. Krzysztof Kabacinski, Kevin Gollop, and Asaf Gola were originally engaged by Stream TV as advisors and asked to sign board services agreements. Despite the fact that some of these individuals executed their agreements, they

5

performed director duties and their status as directors was confirmed by the Chancery Court. I state nothing in the First Amended Complaint to suggest otherwise and in no way or manner imply that the directors lacked the authority to bind the Debtor.

15. It is my understanding that the dispute over the assets is one of the main issues that is the subject of a pending motion to dismiss this case. I further understand that the Debtor has asserted that it has several assets and SeeCubic has asserted it has all the assets. The Debtor's lawyers have also explained that the Debtors' assets that might be outside of the Debtor's control are subject to potential recovery through preferences, fraudulent conveyances, and turnover actions. The Debtor's lawyers have told me in briefings, and I have read multiple documents and assisted in multiple filings and disclosure that show the assets are either in the Debtor's possession or subject to future litigation. The automatic stay, it has been explained to me, is supposed to protect the Debtor and is a final, automatic federal court injunction.

16. I could be more clear in the language of the last point made by the Movants. I will change that language if it will resolve this issue. In the First Amended Complaint at ¶ 149, in no way or manner did I imply that Messrs. Gollop and Gola lacked the authority to execute the Omnibus Agreement or bind the Debtor. At the heart of the First Amended Complaint is an allegation of civil conspiracy, and whether the directors acted on behalf of (in the best interest of) the Debtor, its unsecured creditors, and shareholders as they allege they have done, which has come into question based on evidence not argued in the Chancery Court and actions taken after the PI was entered. Allegations of fraud and civil conspiracy were not before the Chancery Court.

17. Since the execution of the Omnibus Agreement, a number of serious events have come to light. Some of these facts have been substantiated by evidence that was not relevant or undeveloped due to limited resources in the context of the limited scope of the preliminary

injunction stage of the Chancery Court action, while others have been revealed by various sources. The revealed facts are relevant to the causes of action in the Mathu District Court Action and in potential avoidance actions and turnover actions in the above captioned bankruptcy case and were not litigated in the Chancery Court action.

18. Movant asserts the PI Order, the Chancery Opinion and the Omnibus Agreement as universal defenses to all and any infraction by the parties who signed the agreement in their capacity as parties resolving pending litigation for all and any potential issues related to these factual circumstances. There is no legal basis to support this expansive interpretation of the Chancery Court Opinion, the PI Order, nor the Omnibus Agreement by the Movant.

19. In its Motion at ¶ 14, Movant asserts that the circulation of the First Amended Complaint to Debtor's shareholders and past employees, many of whom are its unsecured creditors, and all of whom are parties in interest, is the "sort of conduct [that] is consistent with his actions over the previous months." The comment is yet another vague allegation meant to color the Court's opinion of me unfavorably. The employees and vendors who were left in the wake of the Omnibus Agreement, as un-assumed liabilities, are people with whom I worked for years and who hold out hope that the company will move forward and that they might be able to recover something and keep a future customer and employer.

### III. The Motion is intended to disparage Debtor's management and associates before this Court

20. Movant's purpose in filing its Motion is to levy dramatic assertions concerning the Debtor and myself, in an attempt to distract the Court's attention from the main proceedings by claiming implied intentions and motives which are non-existent.

21. There is nothing in the Chancery Opinion nor in the PI Order that prohibits me from pursuing legal remedies for damages I have suffered. Similarly, there is nothing in the PI Order

7

that prohibits me from sharing publicly filed documents with parties in interest who may be impacted by the adjudication of the legal claims that have been filed. Movant merely seeks to restrict the flow of information and "control the narrative" in a public relations effort to stop the flow of investment to the Debtor and to VTI.

22. The effort to mischaracterize Debtor, its management, and even the Chancery Opinion to achieve its desired messaging seems to have no limit.

23. Nowhere in the Chancery Opinion or PI Order does Vice Chancellor Laster accuse the Debtor or me of having committed "fraud," a highly charged word with significant negative connotations. Yet Movant states in its Motion at ¶ 9 "The Chancery Opinion documents some, but not all, of the actions taken by the Rajans ... the Rajan brothers *fraudulently* backdated a stockholder consent..." (emphasis added). This false representation of the Chancery Opinion was previously stated in Movant's Motion to Dismiss (D.I. 46 ¶ 2): "Vice Chancellor Laster found based on a substantial evidentiary record, as follows: The Rajan brothers *fraudulently backdated a stockholder consent...*" (emphasis added by Movant).

24. Although relegated to a footnote in its Motion at ¶ 13, footnote 8, the intent by Movant to use vague and irrelevant facts to imply improper behavior and paint Debtor and me in a negative light is clear. The fact that Debtor changed counsel during the course of the Chancery Court litigation is not "worth noting" as Movant claims, and its assertion that Debtor's principal lawyers withdrew "under unusual circumstances" is a purely subjective opinion offered as fact solely to disparage the Debtor. The imposition of an order, called the status quo order, at the beginning of the PI schedule stopped Stream TV from being able to raise money during the proceeding and the litigation exhausted its resources. The Movant goes further and implies that the Debtor and its proposed DIP financier, Visual Technology Innovations, Inc. ("**VTI**"), are

engaged in a relationship that is somehow unethical or disreputable because two attorneys who previously worked at the firm which withdrew have now accepted new employment at Armstrong Teasdale LLP, which has now been hired by VTI to assist with Debtor's reorganization under Chapter 11. The personal connections and trust in the abilities of these lawyers, and personal trust developed between me and these lawyers led to a referral to VTI. After the experiences I have had in the life of this company I have grown to value relationships where I believe I can trust the people around me.

25.     Movant continues to assert that Debtor filed Chapter 11 "two days before the Chancery Court would have been in a position to grant final summary judgment in favor of SeeCubic," as if it can predict both the outcome of the Chancery Court litigation and the timing of any such ruling. It offers this crystal-ball prediction to imply that Debtor is merely "hiding in bankruptcy" to avoid the inevitable judgment against it. In truth, the timing of the Chapter 11 filing was directly related to Debtor's ability to secure DIP financing through VTI and review potential legal firms specializing in corporate reorganization to oversee its bankruptcy filing. It is my understanding that it is very typical to file bankruptcy after a litigation threatens the continued existence of a company. Faced with a preliminary injunction that allowed the company's assets to be taken out of the company, and leaving about $20 million in liabilities NOT including any of the founders and other shareholders, and dozens of business partners who were on the verge of commercializing this technology, the Debtors were left with little or no option other than to file for chapter 11 once DIP financing was offered and secured.

## CONCLUSION

26. Accordingly, for all these reasons, the Motion must be denied. In the alternative and on an emergency basis I would like to speak to the Court to ask for a continuance to find counsel and/or to properly prepare for this Motion at a time after the Motion to Dismiss is heard.

WHEREFORE, I respectfully request that the Court deny the Motion and grant such other and further relief that the Court deems just and proper.

Dated   April 26, 2021                             /s/ Mathu Rajan
                                                   **MATHU RAJAN**
                                                   *Pro se*
                                                   1105 William Penn Drive
                                                   Bensalem, PA 19020
                                                   Email: Mattrajan1471@gmail.com

**DILWORTH PAXSON LLP**
Martin J. Weis, Esq.
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899-1031
Email: mweis@dilworthlaw.com

**DILWORTH PAXSON LLP**
Lawrence G. McMichael, Esq.
Anne M. Aaronson, Esq.
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Email: lmcmichael@dilworthlaw.com
Email: aaaronson@dilworthlaw.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Jason M. Liberi, Esq.
Joseph O. Larkin, Esq.
920 N. King Street, One Rodney Square
Wilmington, DE 19801
Email: Jason.liberi@skadden.com
Email: joseph.larkin@skadde.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Eben P. Colby, Esq.
Marley Ann Brumme, Esq.
500 Boylston Street, 23rd Floor
Boston, MA 02116
Email: eben.colby@skadden.com
Email: marley.brumme@skadden.com

**ROBINSON & COLE LLP**
Davis Lee Wright, Esq.
James F. Lathrop, Esq.
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Email: dwright@rc.com
Email:jlathrop@rc.com

**QUARLES & BRADY LLP**
Brittany S. Ogden, Esq.
33 East Main Street Suite 900
Madison, WI 53703
Email: Brittany.ogden@quarles.com

**QUARLES & BRADY LLP**
Alissa Brice Castañeda, Esq.
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
Email: Alissa.castaneda@quarles.com

Rosa Sierra, Esq.
Office of the United States Trustee
844 North King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Email: rosa.sierra@usdoj.gov

**POTTER ANDERSON & CORROON LLP**
Christopher M. Samis, Esq.
L. Katherine Good, Esq.
Aaron H. Stulman, Esq.
1313 N. Market Street, 6th Floor
Wilmington, DE Delaware 19801-3700
Email: csamis@potteranderson.com
kgood@potteranderson.com
astulman@potteranderson.com

2