# EXPERT REPORTOF BARBARA F.H. RUMORA-SCHELTEMA, Esq.

<u>Introduction and qualifications</u>

1.   I am Barbara F.H. Rumora-Scheltema. I advise and represent Visual Technology Innovations, Inc. ("**VTI**") and Stream TV Networks, Inc. ("**Stream Inc**") (as represented by Mr. M. Rajan) concerning matters of Dutch law and I make this declaration to aid the Delaware court in establishing what the extraterritorial effect is of U.S. orders under Dutch law.

2.   I have an LL.M. from the University of Amsterdam, the Netherlands. I have been a lawyer since 2005. Before that time I was the owner of various businesses, primarily in the field of event organization and e-commerce. I am a duly licensed member of the Dutch bar and a partner in the Dutch law firm NautaDutilh N.V. in Amsterdam, the Netherlands. I am individually ranked in Chambers Europe, Chambers Global, the Legal 500 and IFLR 1000. I have acted as a counsel in many high profile litigations and insolvencies. Several of these cases have led to ground-breaking decisions from the Dutch Supreme Court and European Court of Justice. The large majority of cases that I work on are cross-border cases.

3.   I have completed a post-doc specialization course in insolvency law at the Radboud University in Nijmegen, the Netherlands (Grotius Insolvency Law) and I am a member of the Dutch association of insolvency lawyers INSOLAD. Between 2012 and 2017, I was the European Regional Director on the International Board of IWIRC. Since 2018, I am a member of the Council of the Amsterdam Bar.

4.   I attach as Exhibit A to this report a list of the publications I have authored in the past ten years.

5. I confirm that I have not testified as an expert at trial or by deposition over the past four years.

Assignment

6. I have been informed that the case at hand involves the control over certain Dutch legal entities, namely Ultra-D Coöperatief U.A. ("**Coop**"), SeeCubic B.V. and Stream TV International B.V. (jointly: the "**BV's**") and the effect of a decision of the Court of Chancery of the State of Delaware dated 8 December 2020 (*[C.A. No. 2020-0766-JTL]*) (the "**Order**") on such control as a matter of Dutch law. In this declaration, I shall discuss the effect of the Order under Dutch law and the rules governing the control of Coop and the BV's under Dutch law.

7. In doing so, I shall assume that "control" of these entities relates to the manner in which these entities can take part in legal acts. A legal entity being an abstract concept, it can only take part in legal acts through representation. The issue of "control" thus boils down to the question who can lawfully represent these entities towards third parties, for example when entering into agreements, buying or selling assets, etcetera.

8. I attach as Exhibit B to this Report a list of all documents I have considered in preparing this Report.

9. I continue to review materials and documents related to this case and reserve the right to supplement this expert report based on any additional work that I may be asked to do.

10. NautaDutilh is being compensated for this matter at my rate of EUR 675 per hour to be increased with 6% office disbursements.

The Order and its effects in the Netherlands

11. There is no treaty or similar international instrument in place between the United States and the Netherlands, which provides for the recognition and enforcement of court

2

judgments in civil and commercial matters. As a result, the Order is not automatically recognized and cannot be directly enforced or be declared enforceable in the Netherlands.

12. In order to obtain an enforceable title in the Netherlands, the plaintiffs under the Order would be required to initiate new, adversarial proceedings against the defendants in a Dutch Court. A specific provision in the Dutch Code of Civil Proceedings ("**DCCP**") provides a basis for such new proceedings: Article 431 (2) DCCP. Pursuant to this article, new substantive proceedings will take place before the Dutch Court.

13. A Dutch Court – on the basis of standard case law of the Dutch Supreme Court – has the discretion to assess, in order to avoid a full retrial, whether and to what extent authority can be granted to the factual and legal findings rendered in a U.S. judgment within the limits of Dutch public order. In this respect, the Dutch Court will apply a four-prong test (the "**Legal est**"):

> (i) the foreign court accepted jurisdiction on the basis of generally accepted grounds of jurisdiction according to international standards;
>
> (ii) the foreign judgment was rendered after due process, in which the defendant's procedural rights were safeguarded;
>
> (iii) recognition of the foreign judgment is not contrary to Dutch public policy; and
>
> (iv) the foreign judgment is not incompatible with a previous Dutch or recognizable foreign judgment.
>
> See: Dutch Supreme Court 14 September 1924, NJ 1925, p. 91 (*Bontmantel*); Dutch Supreme Court 17 December 1993, NJ 1994, 348 (*Esmil v. Enka Arabia*); Dutch Supreme Court 17 December 1993, NJ

3

1994, 350 (*Esmil v. Persian Gulf Shipyard Project*); and Dutch Supreme Court 26 September 2014, JOR 2014, 350 (*Gazprombank*).

14. If the Order meets the Legal Test, the factual and legal decisions rendered by the U.S. court will be adopted by the Dutch Court, and used as a basis for a new, condemnatory judgment. However, if the Dutch Court holds that the Order does not meet the Legal Test, the Dutch Court may rehear the case on the merits.

15. Insofar as the Order is declared enforceable following proceedings under article 431 DCCP, the judgment of the Dutch Court will only result in an enforceable title against the parties to such judgment.

16. I am not aware of any proceedings in the Netherlands seeking to obtain recognition and enforcement of the Order. As far as I am aware the defendants under the Order have also not been notified, which notification would be mandatory, about the initiation of such proceedings in the Netherlands.

<u>Legal action regarding the appointment/dismissal of directors</u>

17. There is no treaty or international regulation in place between the Netherlands and the United States regarding the appointment or dismissal of directors of a Dutch legal entity. As a result, the applicable law to such acts under Dutch law is determined by Dutch international private law.

18. It follows from article 118 in conjunction with 119 of Book 10 of the Dutch Civil Code ("**DCC**") that the internal order of a legal entity and all related topics are governed by Dutch law if the legal entity was incorporated under Dutch law and had its registered seat in the Netherlands under its deed of incorporation; which is the case for the Coop and the BV's. The internal order of a legal entity includes the issue of appointment and dismissal of directors.

50115199 M 31610656

19. If an interested party believes that an act performed by a body of a legal entity, such as the appointment or dismissal of a director, is void, then it may ask the court for an order finding that act void on the basis of Article 14 and/or 15 of Book 2 DCC. An interested party in this sense could be a director who is dismissed in relation to the decision to dismiss him. Consequently, Mr. Rajan may ask the Dutch court to render an order finding a decision whereby he was allegedly dismissed void. In such proceedings, Mr. Rajan could argue that the persons representing the body dismissing him were not lawfully authorized to represent such body. The Dutch court would then have to establish on the basis of the arguments of the parties whether or not the corporate resolutions for each of the respective entities were taken by the proper entities in accordance with the law. In doing so, the rules as described above concerning recognition and enforcement of US court decisions apply.

<u>Appointment and dismissal of directors of Coop and the BV's</u>

20. Coop and the BV's are legal entities under Dutch law.

21. Coop is a "*coöperatieve vereniging U.A.*" (translated: cooperative association with exclusion of liability). Historically, cooperative associations were used in agriculture, where such an association would, for example, process and sell milk products for several farmers. The farmers/members would thus enter into an agreement with the association whereby they would contribute their products to the association and share the costs and profits of the activities of the association. A *coöperatieve vereniging* has no shareholders but at least two members.

22. Under the articles of association of Coop the board of Coop should consist of at least two directors.[1] The Coop is represented by all directors acting jointly, or by a director A

---

[1] Article 9 (1) articles of association Coop.

50115199 M 31610656

acting jointly with a director B.[2] The articles of association further provide that directors of Coop are appointed and dismissed by the members through a resolution adopted by the general meeting of members.[3] A members resolution must be taken at a members meeting (for which certain formalities with respect to notification and convocation apply), but it can also be taken outside of a meeting, provided all parties who have the right to attend a members meeting agree to a resolution outside of a meeting <u>and</u> provided the resolution is unanimous (i.e. supported by each individual member).[4]

23.     Likewise, a BV is a limited liability company. It is the most common form for a commercial enterprise; it is characterized by legal personality and limited liability for its directors and shareholders. A BV will have one or more shareholders.

24.     Under the articles of association of both the BV's, the boards of the BV's should consist of at least two directors.[5] The BV's are represented by all directors acting jointly, or by a director A acting jointly with a director B.[6] The articles of association further provide that the directors are appointed and dismissed through a resolution adopted by the general meeting of shareholders.[7] A shareholders resolution must be taken at a shareholders meeting (for which certain formalities with respect to notification and convocation apply), but it can also be taken

---

[2] Article 12 (1) articles of association Coop. The board of Coop is also authorized to validly represent Coop in case there are fewer than two directors. Article 11 (6) articles of association Coop. The same principle applies to the BV's. Article 10 (8) articles of association of each of the BV's.

[3] Article 10 (1) articles of association Coop.

[4] Article 21 (9) articles of association Coop.

[5] Article 10 (1) articles of association of each of the BV's.

[6] Article 12 (1) articles of association of each of the BV's.

[7] Article 10 (4) articles of association of each of the BV's.

outside of a meeting, provided all parties that have the right to attend a shareholders meeting agree to a resolution outside of a meeting.[8]

25.   Prior to shareholders in a BV or members in a cooperative association taking a resolution, either inside or outside a general meeting, including a resolution appointing or dismissing a director, the directors of the relevant entity are to have an opportunity to be heard on the intended resolution. This applies even if the intended resolution entails the dismissal of the very director who is being requested to render his advice. In this respect, the articles of association of the BV's also explicitly determine that a director has the right to bring legal counsel in case there is a resolution before the general meeting which purports to dismiss that director.[9] Failure to comply with these requirements renders the decision voidable.

26.   I understand that the members of Coop are the Curaçao-entity Ultra-D Ventures C.V. ("**Ultra-D CV**") and the Delaware-entity Technology Holdings Delaware, LLC ("**Technology Holdings, LLC**"). Thus, the directors of Coop are appointed and dismissed by Ultra-D CV and Technology Holdings, LLC.

27.   I further understand that Coop is the sole shareholder of the BV's. Accordingly, directors of the BV's are appointed and dismissed by Coop as shareholder of each of the BV's.

28.   A director, once appointed, will remain a director until he/she is either dismissed by decision of the appointing body, or if he/she resigns as director. Additionally, the articles may contain specific situations where a director ceases to be a director. In the case of Coop and the BV's, the articles of association do not contain such situations.

29.   The Trade Register of the Dutch Chamber of Commerce registers all companies with their seat in the Netherlands. The information in the Trade Register is included on the basis

---

[8] Article 15 (5) articles of association of each of the BV's.

of information provided either by the directors of a company, or by a civil-law notary. In the former case, the directors will have to file a form describing the information to be added or amended, along with documents substantiating such information. The Trade Register will check whether the person filing a form to change a specific registration has the authority to do so, can ask for additional substantiation of such authority and can refuse to register certain information if it is not convinced that the filing is made by a person authorized to do so (Articles 4 and 5 of the Trade Register Decree (*Handelsregisterbesluit*)).

30. In practice, if a change of a company's information is made on the basis of a filing of a civil-law notary, then no such substantiating documentation will be required as the Trade Register will rely on the civil-law notary having checked whether the requested amendment is in accordance with the law. A Dutch civil-law notary (*notaris*) is a lawyer entrusted with certain specific acts provided by law, mostly in the area of corporate, real estate and family law. Unlike a lawyer (*advocaat*), who represents a specific party and has an obligation to be partial and act in the interest of his client, a civil-law notary has an obligation to perform his services in independence, thereby satisfying the interests of all parties involved in the relevant legal act in an impartial manner and with the greatest possible care (Article 17(1) of the Civil-law Notary's Act (*Wet op het Notarisambt*)). There are several examples in Dutch disciplinary case law in which it is established that if a civil-law notary is aware of a dispute potentially affecting the company or the amendment for which registration is requested, he should act especially carefully and refrain from rendering his assistance if the interests of all of the parties are not properly safeguarded. Specifically, this case law includes instances where a civil-law notary registered a director with the Trade Registry where the authority to appoint such director was the subject of a dispute; in

---

[9] Article 10 (6) articles of association of each of the BV's.

those cases the Disciplinary Court found that the civil-law notary had not acted in accordance with the applicable rules.[10]

31.     Third parties in good faith may rely on the information in the Trade Registry. However, registration of a director's appointment or dismissal in the Trade Registry is not a constitutive requirement for the director's authority (or lack thereof). In other words, a director does not become a director as a result of registration in the Trade Registry.

32.     Indeed, Coop as well as the BV's are registered with the Trade Register.

33.     According to the Trade Register, Vistra B.V. ("**Vistra**"), Mr. Mathu Rajan and Mr. Adrianus Cornelis Lucia Maria Luijks were directors of Coop until 24 July 2020, 23 December 2020 and 14 December 2020 respectively. According to the Trade Register, Mr. Mathu Rajan was suspended on 14 December 2020 and subsequently ceased to be a director on 23 December 2020. On 15 December 2020, Mr. Shad Stastney and Mr. Hans Zuidema were registered as directors of Coop as per 14 December 2020.

34.     According to the Trade Register, Mr. Mathu Rajan was a director of SeeCubic B.V. until 14 December 2020, when he was suspended and subsequently ceased to be a director on 23 December 2020. Additionally, Mr. Laurentius Ireneus Winfridus Klein was a director until 29 July 2020, and Mr. Adrianus Cornelis Lucia Maria Luijks was a director until 14 December 2020. On 15 December 2020, Mr. Shad Stastney and Mr. Hans Zuidema were registered as directors of SeeCubic B.V. as per 14 December 2020.

35.     According to the Trade Register, Vistra, Mr. Mathu Rajan and Mr. Adrianus Cornelis Lucia Maria Luijks were directors of Stream TV International B.V. until 29 July 2020, 23 December 2020 and 14 December 2020 respectively. On 15 December 2020, Mr. Shad

---

[10] See, for example: Court of Appeals Amsterdam (Notary Chamber), 10 May 2011, ECLI:NL:GHAMS:2011:BQ5599.

Stastney and Mr. Hans Zuidema were registered as directors of Stream TV International B.V. as per 14 December 2020.

36. It is my understanding that Vistra and Mr. Luijks resigned as directors of the relevant entities, and consequently termination of their registration as directors appears to be valid.

37. A cooperative association or BV would normally have written records of resolutions taken by its members or shareholders. I have not seen any documents purporting that the members of Coop and/or the shareholders of the BV's have resolved to dismiss Mr. Rajan as director of Coop and the BV's, or to appoint Messrs. Stastney and Zuidema as directors of these entities: neither notifications or invitations for members or shareholders meetings, nor requests for resolutions outside of meetings, minutes of such meetings or recorded resolutions of the members or shareholders. Minutes of decisions taken by members or shareholders meetings are required for both Coop and the BV's,[11] whereas a shareholders resolution taken outside a meeting for the BV's will also be in writing.[12] The absence of such minutes or written resolutions thus strongly suggest that no such resolutions were taken. I have also not seen any form or other communication with the Trade Register regarding the purported dismissal of Mr. Rajan or the appointment of Messrs. Stastney and Zuidema.

38. However, even if such evidence would exist, and even if all formalities prescribed by Dutch law in taking these resolutions have been complied with, my understanding is that there is a dispute as to who is the ultimate shareholder of the Dutch entities resulting in uncertainty as to who can validly represent the members of Coop – being Ultra-D CV and Technology

---

[11] Article 20 (2) articles of association Coop and article 16 (7) articles of association of each of the BV's.

[12] As the votes on such resolution are, under article 15 (5) articles of association of each of the BV's, required to be cast in writing and it will need to be clear which (proposed) resolution this vote regards.

50115199 M 31610656

Holdings, LLC (see above under 26). If ultimately it is established that these members of Coop were not validly represented, then the resolutions whereby Mr. Rajan was dismissed and Messrs. Stastney and Zuidema were appointed as directors are void. Consequently, their de-registration and registration as directors in the Trade Register would not be based on a valid appointment decision by the appointing body of the Coop. Similarly, Coop will not lawfully have resolved to dismiss Mr. Rajan and to appoint Messrs. Stastney and Zuidema as directors of the BV's. To the extent Messrs. Stastney and Zuidema purported to represent Coop they were unable to do so in view of the absence of a valid appointment. For the same reason, Coop could not dismiss any of BV's directors.

39. In respect of the preceding, I also point out that it follows from a letter dated 7 August 2020 from Dutch counsel of SeeCubic, Inc. ("**SeeCubic US**") to Stream Inc's former counsel[13] that SeeCubic US was aware of the fact that the dispute about the ownership of the ultimate shareholder of Coop (and thereby of the BV's) could affect the validity of appointments and dismissals of directors of Coop and the BV's. However, and not surprisingly yet inaccurately, SeeCubic US's Dutch counsel comes to the conclusion that the issue of ownership has been resolved, pointing to Vistra having investigated the matter and concluding that SeeCubic were the rightful owner. I would note that Vistra is a trust company and not a court of law, and its finding as part of a due diligence investigation based on information provided to it by SeeCubic is hardly conclusive for the matter at hand. As explained, this is not altered by the handing down of the Order in December 2020, as there is no automatic recognition of direct enforcement of the Order under Dutch law.

---

[13] SLS-BKR-000577.

11

40. To the extent that the members of Coop were not properly represented it is therefore my view that as a matter of Dutch law Mr. Mathu Rajan is the sole lawful director of both Coop as well as the BV's.

41. I should mention that theoretically, it is possible that an order of the Dutch court could be put in place of a resolution of the appointing body dismissing and/or appointing a director of Coop and the BV's.[14] However, I am not aware that any such order was in fact given. If Messrs. Stastney and Zuidema would have requested such an order, they would have had to do so in adversarial proceedings against Coop and the BV's (as represented by their formal directors) and their shareholders. As far as I know, none of the relevant entities were notified about litigation before the Dutch court with respect to a request for such an order.

I declare on this 16th day of April, 2021, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

_____
Barbara F. H. Rumora-Scheltema

---

[14] Such order could be based on several provisions under Dutch law, including Article 223 or 254 DCCP in connection with Article 2:8 or 6:162 DCC, or Article 2:349a or 2:355 DCC.

50115199 M 31610656

**EXHIBIT A - Publications B.F.H. Rumora-Scheltema 2011-2021**

- WPNR 2011/6894, 'Reactie op: Is dit nieuw beleid van de tuchtkamer van het Hof Amsterdam?' (co-author: G.P. Oosterhoff) – July 2011

- Bb 2011/16, 'Bedrieglijke bankbreuk nader bekeken' - April 2011

- IER 2012/40: Case note under Rb Breda 23 November 2011 (Converse/Sporttrading) (co-author: A.M.E. Verschuur) - 2012

- Contribution to Praktijkboek Insolventierecht, 'Ongeoorloofde gedragingen' (co-authors: S.A.H.J. Warringa and H. de Coninck-Smolders) - December 2013

- International Law Office Blog, 'Features of universality principle introduced in the Netherlands' (co-authors: R.J. van Galen and T.H.D. Struycken) – February 2014

- International Corporate Rescue, Vol. 11, No. 1, 'Dutch Pre-Pack Alternatives on the Rise' - 2014

- Kluwer Arbitration Blog, 'The New Dutch Arbitration Act 2015' (co-author: B.R. Hoebeke) - February 2015

- International Corporate Rescue, Vol. 12, No. 2, 'The Dutch Supreme Court Yukos Rulings: From Territoriality to Universality' - February 2015

- Financieel Dagblad, 'Reactie op: 'Wetgeving rond internationale faillissementen is verouderd' - July 2018

- Insolvency and Restructuring International, Vol 14. No. 2, 'The Dutch scheme - a new European restructuring tool' - September 2020

- Toolkit on Insolvency and Arbitration, IBA Arbitration Committee, as National Reporter for the Netherlands (co-author: V. Lazic) – March 2021

1

**EXHIBIT B - Reviewed Documents**

1. Articles of Association of Ultra-D Coöperatief U.A. dated 22 November 2011

2. Articles of Association of SeeCubic B.V. dated 4 January 2016

3. Articles of Association Stream TV International B.V. dated 30 December 2015

4. **SLS-BKR-000433**
   Exhibit A: letter Vistra (Mr. Mahabier and Mr. Van Spall) to Stream TV Networks, Inc. dated 24 July 2020

5. **SLS-BKR-000551**
   Exhibit B: letter DBBW to Mr. Luijks dated 6 August 2020

6. **SLS-BKR-000557**
   Exhibit D: letter DBBW to Boels Zanders Advocaten dated 7 August 2020

7. **SEECUBIC-BKR-00000750-00000762**
   E-mail correspondence between Shad Stastney and Margot Musschoot (Vistra) from 30 June 2020 to 8 July 2020

8. **SEECUBIC-BKR-00000742-00000746**
   E-mail correspondence between Shad Stastney and Vistra and Stream Networks of 27 and 28 July 2020

9. **SEECUBIC-BKR-00000730-00000731**
   E-mails between Shad Stastney and Marleen De Wit-Dassen (Vistra) dated 28 July 2020

10. **SEECUBIC-BKR-00000715-00000729**
    E-mail correspondence between Shad Stastney, Margot Musschoot (Vistra) and Colin Maltby (First-Sentinel) from 9 July 2020 to 20 July 2020

11. **SEECUBIC-BKR-00000712-00000713 and SEECUBIC-BKR-00000589-00000590**
    Resolution of the extraordinary meeting of members of Ultra-D Coöperatief U.A. dated 24 July 2020

12. **SEECUBIC-BKR-00000711**
    Letter of dismissal dated 24 July 2020 from Mathu Rajan to Vistra B.V.

13. **SEECUBIC-BKR-00000710**
    E-mail from Mathu Rajan to the Ultra-D Coöperatief Board members dated 24 July 2020

14. **SEECUBIC-BKR-00000598-00000600**
    Letter from DBBW to Lexence (Mr. Craemer) dated 6 August 2020

15. **SEECUBIC-BKR-00000596-00000597**
    Letter from DBBW to SeeCubic (Mr. Robertson) dated 6 August 2020

2

16. **SEECUBIC-BKR-00000593-00000595**
    Letter from DBBW to Mr. Luijks dated 6 August 2020

17. **SEECUBIC-BKR-00000591-00000592**
    Letter from Vistra (Mr. Mahabier and Mr. Van Spall) to Stream TV Networks, Inc. dated 24 July 2020

18. **SEECUBIC-BKR-00000566-00000570**
    Note from Ultra-D Coöperatief U.A. to Stream TV Networks, Inc. dated and signed December 31, 2016 and Amendment and modification agreement to that certain Note from Ultra-D Coöperatief U.A. to Stream TV Networks, Inc. dated December 31, 2016 in an original principal amount of USD 16,190,550.40 (signed on 24 December 2020)

19. **SEECUBIC-BKR-00000486-00000490**
    Note from SeeCubic B.V. to Stream TV Networks, Inc. (signed on 25 April 2017) and Amendment and modification agreement to that certain Note from SeeCubic B.V. to Stream TV Networks, Inc. dated January 1, 2016 in an original principal amount of USD 1,313,425.46 (signed on 24 December 2020)

20. **SEECUBIC-BKR-00000453**
    E-mail from Shad Stastney and Hans Zuidema to Mathu Rajan dated 24 December 2020

21. **SEECUBIC-BKR-00000169-00000171**
    E-mail correspondence between DBBW and Mr. Luijks and Mr. Rajan and between DBBW and Mr. Stastney and Mr. Zuidema dated 14 December 2020

22. **SEECUBIC-BKR-00000005-00000006**
    Register extract Chamber of Commerce in respect of Ultra-D Coöperatief U.A. dated 24 December 2020

23. **SEECUBIC-BKR-00000003-00000004**
    Register extract Chamber of Commerce in respect of Stream TV International B.V. dated 24 December 2020

24. **SEECUBIC-BKR-00000001-00000002**
    Register extract Chamber of Commerce in respect of SeeCubic B.V. dated 24 December 2020